Steven R. Weinmann (SBN 190956)
Steven.Weinmann@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi, (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:     (310) 556-4811
Facsimile:     (310) 943-0396

Russell D. Paul (*pro hac vice* to be sought)
Amey J. Park (*pro hac vice* to be sought)
Abigail J. Gertner (*pro hac vice* to be sought)
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONDA ANN BROWNING, DIVINA PAPPAS, BRIAN PAPPAS, KALI WESCOTT, and ERIC WESCOTT, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC., a California corporation, and HONDA MOTOR COMPANY LTD., a Japanese corporation,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violation of Florida Deceptive and Unfair Trade Practices Act<br>(2)  Breach of Implied Warranty Pursuant to F.S.A. §§672.314, 680.212<br>(3)  Violation of the Ohio Consumer Sales Practices Act<br>(4)  Breach of Implied Warranty Pursuant to Ohio Rev. Code § 1345.01 *et seq*.<br>(5)  Violation of the Michigan Consumer Protection Act<br>(6)  Breach of Express Warranty Pursuant to Mich. Comp. Laws §§ 440.2313 and 440.2860<br>(7)  Breach of Implied Warranty Pursuant to Mich. Comp. Laws §§ 440.2314 and 440.2860<br>(8)  Viol. of Cal. Unfair Competition Law<br>(9)  Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      Plaintiffs Ronda Ann Browning, Divina Pappas, Brian Pappas, Kali Wescott, and Eric Wescott bring this action for themselves and on behalf of all Class Members, *i.e.*, all current and former owners or lessees who purchased or leased : any 2018-2019 Honda Odyssey equipped with a 9-speed automatic transmission ("ZF 9HP Automatic Transmission") (collectively, "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by American Honda Motor Co., Inc., ("AHMC") and Honda Motor Company Ltd. ("HMC")  (collectively "Defendants"). Plaintiffs alleges as follows:

2.      This is a consumer class action concerning a failure to disclose material facts and a safety concern to consumers.

3.      In 2014, faced with increasing United States Corporate Average Fuel Economy standards, Honda began equipping select vehicle models with a 9-speed "automatic" transmission designed to increase fuel economy. Unfortunately, the improved fuel economy came at a significant and undisclosed cost: rough and delayed shifting, loud noises during shifting, harsh engagement of gears, sudden, harsh accelerations and decelerations, and sudden loss of power.

4.      "Instinctively responsive," "firmly planted," and "incredibly nimble" is how Mike Accavitti, a former vice president at Honda, characterized the ZF 9HP Transmission when it was first released in vehicles distributed, marketed, and sold by American Honda Motor Company, Inc., in 2014. However, the 2015 vehicles hit the market with reviews critical of the ZF 9HP Transmission. A journalist from Road & Track Magazine noted that the ZF 9HP Transmission "uses an electronic shifter…[that] takes an eternity to engage drive, its shifts are clunky, and it's painfully slow to react to manual commands."[1]

5.      The ZF 9HP Automatic Transmission's unique 9.8 ratio spread and computer-controlled shifting were marketed as a significant technological advancement from previously

_____

[1]Jason Cammisa, *11 things you need to know about the 2015 Acura TLX*, Road & Track Magazine (Aug. 5, 2015), http://www.roadandtrack.com/new-cars/news/a6338/2015-acura-tlx-first-drive-review/ (last visited May 5, 2016).

CLASS ACTION COMPLAINT

1   employed six-speed automatic transmissions and were claimed to have better performance and

2   fuel economy while maintaining the ease of use of traditional automatic transmissions.[2]

3       6.      Defendants failed to disclose to future owners and lessees that the ZF 9HP

4   transmission contained one or more design and/or manufacturing defects that render the 2018

5   through 2019 Honda Odyssey unsafe.

6       7.      Plaintiffs are informed and believe, and based thereon allege, that the Class

7   Vehicles equipped with the ZF 9HP Automatic Transmission contain design defects that cause

8   the transmission to exhibit the following: rough, delayed, or sudden shifting or failure to shift;

9   grinding or other loud noises during shifting; harsh engagement of gears; sudden or harsh

10  accelerations/decelerations; and sudden loss of power (the "Transmission Defect").

11      8.      Traditional automatic transmissions use a set of gears that provides a given

12  number of ratios. The transmission shifts between gears to provide the most appropriate ratio for

13  a given situation. Normally, that means the transmission will automatically shift into lower

14  gears for starting, middle gears for acceleration and passing, and higher gears for more fuel-

15  efficient cruising.  The ZF 9HP Automatic Transmission differs from traditional automatic

16  transmissions in that it employs a 9.8 ratio spread, as opposed to 6, ideally allowing for shorter

17  shifts between gears keeping the engine in a narrow, optimal band of RPMs for as long as

18  possible, and contributing to greater fuel-efficiency. Additionally, the ZF 9HP Automatic

19  Transmission borrows characteristics typically seen in manual transmissions, such as "dog

20  clutches," which use less power to shift than the friction clutches normally utilized in automatic

21  transmissions. However, in contrast to manual transmissions, the ZF 9HP Automatic

22  Transmission engages the dog clutches with computer software commands from an electronic

23  control unit in order to save space and ensure that the complex transmission actually fits inside

24  the vehicles. Automotive journalist Alex L. Dykes clearly explained the result of employing the

25

26      [2] "The new 9-speed is substantially lighter…with a wider overall ratio range and more
    closely spaced individual gear ratios to enhance both performance and fuel efficiency." Acura,
27  *2015 Acura TLX: Overview Press Release* (Aug. 4, 2014),
    http://www.acura.com/PressReleaseArticle.aspx?category=tlx&year=2014&id=7884-
28  en#~pKn3TC4Wn3qMMY (last visited May 5, 2016).

software, writing:

> The 9HP's software…[unlike other automatics] responds by cutting power initially, then diving as far down the gear-ladder as it can, engaging the dog clutches and then reinstating your throttle command.  The result is a somewhat odd delay between the pedal on the floor and the car taking off like a bat out of hell.[3]

9.      A vehicle equipped with an automatic transmission should function in a manner that the driver expects; i.e., it should start, accelerate, decelerate, and stop immediately in response to the driver's input. In practice, however, the Class Vehicles equipped with the ZF 9HP transmission operate erratically, causing numerous safety concerns.

10.     The Transmission Defect causes unsafe conditions, including, but not limited to, delayed acceleration, abrupt forward propulsion, and sudden loss of power, which are hazardous because they severely affect the driver's ability to control the car. For example, these conditions may make it difficult to change lanes safely, make turns, merge into traffic, and accelerate from stop at intersections, because Class Members' vehicles can fail to respond correctly to driver's input during these normal traffic conditions.

11.     On information and belief, Defendants' corporate officers, directors, or managers knew about the Transmission Defect and failed to disclose it to Plaintiffs and Class Members at the time of sale, lease, repair, and thereafter.

12.     On information and belief, the Class Vehicles utilize the same or substantially identical ZF 9HP Automatic Transmissions, and the Transmission Defect is the same for all Class Vehicles.

13.     As a result of the Transmission Defect, Honda issued a service campaign and multiple Technical Service Bulletins ("TSBs") to its dealers in the United States, acknowledging defects in the ZF 9HP Automatic Transmission and attempting to address them. These service

---

[3] *See* Alex L. Dykes, *ZF's 9-Speed 9HP Transmission Puts Dog Clutches On The Leash,* The Truth About Cars (Feb. 8, 2014), http://www.thetruthaboutcars.com/2014/02/zfs-9-speed-9hp-transmission-puts-dog-clutches-on-the-leash/ (last visited May 5, 2016).

CLASS ACTION COMPLAINT

1    bulletins are discussed more fully *infra*.

2        14.    However, in the 2018-2019 Honda Odyssey vehicles, on information and belief,

3    consumers continue to experience problems with their vehicles, despite the purported fixes,

4    including: rough, delayed, or sudden shifting or failure to shift; grinding or other loud noises

5    during shifting; harsh engagement of gears; sudden or harsh accelerations/decelerations; and

6    sudden loss of power.

7        15.    On information and belief, despite knowledge from numerous consumer

8    complaints, dealership repair orders, and TSBs, Honda has not issued a warranty extension for

9    the Class Vehicles, has not recalled the Class Vehicles to repair the defects, and has not offered

10    its customers a suitable repair or replacement free of charge.

11        16.    Because Honda will not notify Class Members that the ZF 9HP Automatic

12    Transmission is defective, Plaintiffs and Class Members (as well as members of the general

13    public) are subjected to potentially dangerous driving conditions that can occur without

14    warning.

15        17.    The alleged Transmission Defect was inherent in each Class Vehicle and was

16    present in each Class Vehicle at the time of sale.

17        18.    Honda knew about and concealed the Transmission Defect present in every Class

18    Vehicle, along with the attendant dangerous safety problems, from Plaintiffs and Class

19    Members, prior to the time of sale, lease, repair, and thereafter. In fact, instead of repairing the

20    defects in the ZF 9HP Automatic Transmission, Honda performed work, such as software

21    updates, that simply masked the defects.

22        19.    For instance, the Transmission Defect has plagued the Fiat Chrysler 2014 Jeep

23    Cherokee equipped with the ZF 9HP Automatic Transmission since it was first introduced to the

24    U.S. market. In fact, after several transmission-related delays of the Cherokee's release, Sergio

25    Marchionne, CEO of FCA US, told Automotive News that "[w]e have had to do an inordinate

26    amount of intervention" on  the ZF 9HP Automatic Transmission to correct problems with the

27

28

transmission software.[4] Before Honda's release of the Class Vehicles, over a hundred Jeep Cherokee owners filed complaints with the National Highway Traffic Safety Administration ("NHTSA"),[5] and FCA had already issued three TSBs relating to problems with the ZF 9HP Automatic Transmission.[6]  On information and belief, Honda was aware of the Transmission Defect through its analysis of the ZF 9HP Automatic Transmission's prior application and use by other manufacturers, and by Honda's own use of the ZF 9HP Automatic Transmission in predecessor vehicles, including the Acura TLX, beginning with the 2015 model year, and the Honda Pilot, beginning with the 2016 model year.

20.     If they had known about these defects at the time of sale or lease, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less for them.

21.     As a result of their reliance on Defendants' omissions, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and value of their Class Vehicles.  Additionally, as a result of the Transmission Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail or require replacement or repair, before their expected useful life has run.

**PARTIES**

**PLAINTIFF RONDA BROWNING**

22.     Plaintiff Ronda Ann Browning ("Browning") is a Florida citizen who resides in Lake Alfred, Florida.

---

[4] *See* Larry P. Vellequette, *Another fix for Jeep's troubled 9-speed,* Automotive News (Feb. 2, 2015, 12:01AM), http://www.autonews.com/article/20150202/OEM01/30202 9930/another-fix-for-jeeps-troubled-9-speed (last visited May 18, 2016).

[5] *Id*.

[6] FCA issued TSB 21-013-13 on or around November 14, 2013, instructing dealers to evaluate and identify "poor shift quality" if 2014 Jeep Cherokee owners "indicate that their transmission shift quality does not meet their expectations."  FCA then issued TSB 21-014-13 on or around December 19, 2013, instructing dealers to reprogram the TCM to cure "Inconsistent and/or harsh" 1-2 and 2-3 upshifts. Further, FCA issued TSB 21-018-14 on or around May 15, 2014, which superseded the previous TSB and instructed dealers to perform a software update to cure a number of transmission malfunctions.

23.    On July 3, 2018 Browning purchased a new 2019 Honda Odyssey from Coggin Honda of Orlando, an authorized Honda dealership in Orlando, Florida.

24.    Browning purchased her vehicle primarily for personal, family, or household use. Honda manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

25.    Passenger safety and reliability were important factors in Browning's decision to purchase her vehicle. Before purchasing her vehicle, Browning spent time researching the Honda Odyssey online. Specifically, prior to purchase Browning researched the vehicle on Google, visited both the dealership and manufacturer's websites, researched owner reviews online, and reviewed the window sticker.  Additionally, at Coggin Honda of Orlando Browning test drive the Odyssey vehicle with a sales representative, and during the test drive they discussed the vehicle. Based on her research and her interaction with American Honda Motor Co. and its authorized dealership, Browning believed that the Honda Odyssey would be a safe and reliable vehicle.

26.    Had Honda disclosed its knowledge of the Transmission Defect before Browning purchased her vehicle, Browning would have seen such disclosures and been aware of them. Indeed, Honda's omissions were material to Browning.  Like all members of the Class, Browning would not have purchased her Class Vehicle, or would have paid less for the vehicle, had she known of the Transmission Defect.

27.    Within the first few months after purchasing her Honda Odyssey, Browning's vehicle was exhibiting harsh or delayed shifting and engagement, delayed accelerations, banging into gear, hesitation, jerking, shuddering, lurching, and lack of power. Despite repair attempts, these problems continue at present. Browning feels unsafe in the vehicle. Moreover, the delayed acceleration presents a safety defect at intersections, because, for example, Browning cannot predictably accelerate her vehicle when turning left across oncoming traffic. These symptoms worry Browning, particularly at intersections.

28.    Ms. Browning returned the vehicle to the dealership on multiple occasions, complaining that the vehicle suffered from the acceleration and shifting problems, particularly delayed accelerations followed by banging into gear.

29.    Specifically, at 8,447 miles, Plaintiff Browning delivered her vehicle to an authorized repair facility complaining that "WHEN ACCELERATING BELOW 40 MPH THE VAN IS JERKING IN BETWEEN." The technician claimed to have "TEST DROVE THE VEHICLE AND IS WORKING AS DESIGNED." The vehicle was returned to Plaintiff Browning without any repairs.

30.    Plaintiff again returned her vehicle to an authorized repair facility at 9,746 miles complaining that "CUSTOMER STATES WHEN TAKING OFF THE TRANSMISSION JERKS…." In response the technician claims that the vehicle was "WORKING AS DESIGNED." The vehicle was returned to Plaintiff Browning without any repairs.

31.    During one service visit, Ms. Browning drove the vehicle accompanied by a service technician to demonstrate the problem. During the drive, the vehicle exhibited delayed acceleration followed by a bang, which the service technician acknowledged he heard. In response, the service technician kept the vehicle for further inspection and a software update.

32.    However, after each visit, Ms. Browning's vehicle was returned to her with no permanent repair.

33.    Accordingly, despite these repair attempts, Browning continued to experience the Transmission Defect, including rough shifting, jumping, lunging, shaking, hesitation and delayed acceleration, until trading it in on a replacement vehicle at a large monetary loss.

34.    At all times, Plaintiffs, like all Class Members, has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**PLAINTIFFS DIVINA AND BRIAN PAPPAS**

35.    Plaintiffs Divina and Brian Pappas ("Pappases") are Ohio citizens who reside in Maumee, Ohio.

36.    On March 6, 2018 the Pappases purchased a new 2018 Honda Odyssey from Jim White Honda, an authorized Honda dealership in Maumee, Ohio.

37.    The Pappases purchased their vehicle primarily for personal, family, or household use. Honda manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

38.     Passenger safety and reliability were important factors in the Pappases' decision to purchase their vehicle. Before purchasing their vehicle, the Pappases spent time researching the Honda Odyssey, and also relied on their years of ownership of prior Honda models. Specifically, prior to purchase the Pappases researched the vehicle on online and reviewed the window sticker.  Additionally, at Jim White Honda the Pappases test drove the Odyssey vehicle with a sales representative, and during the test drive they discussed the vehicle, and specifically the Pappases asked the salesman about the Transmission. Based on her research and their interaction with American Honda Motor Co. and its authorized dealership, the Pappases believed that the Honda Odyssey would be a safe and reliable vehicle.

39.     Had Honda disclosed its knowledge of the Transmission Defect before the Pappases purchased their vehicle, the Pappases would have seen such disclosures and been aware of them. Indeed, Honda's omissions were material to the Pappases.  Like all members of the Class, the Pappases would not have purchased their Class Vehicle, or would have paid less for the vehicle, had they known of the Transmission Defect.

40.     Within the first day after purchasing their Honda Odyssey, the Pappases vehicle was exhibiting harsh or delayed shifting and engagement, delayed accelerations, banging into gear, hesitation, jerking, shuddering, lurching, and lack of power, sometimes feeling like it was going to stall. Despite repair attempts, these problems continue at present. The Pappases feels unsafe in the vehicle. Moreover, the delayed acceleration and feeling of imminent stall, present a safety defect at intersections, because, for example, the Pappases cannot predictably accelerate their vehicle when turning left across oncoming traffic. These symptoms worry the Pappases, particularly at intersections.

41.     On July 1, 2019 and at 21,294 miles the Pappases returned the vehicle to Jim White Honda complaining that the vehicle suffers from a vibration at 25-35 miles per hour when shifting. In response, the dealership "PERFORMED ROAD FORCE UPDATE" and returned the vehicle to the Pappases claiming, "VEHICLE OPERATING AS DESIGNED."

42.     As recently as August 1, 2020 and at just under 36,000 miles, after waiting at a stop light to turn left, Mrs. Pappas pressed the accelerator and the vehicle started shaking

1    violently for an elongated period and felt like it was stalling.

2        43.    Accordingly, despite these repair attempts, the Pappases continues to experience

3    the Transmission Defect, including rough shifting, hesitation, and feelings of imminent stalling.

4        44.    At all times, the Pappases, like all Class Members, has driven their vehicle in a

5    foreseeable manner and in the manner in which it was intended to be used.

6    **PLAINTIFFS KALI AND ERIC WESCOTT**

7        45.    Plaintiffs Kali and Eric Wescott ("Wescotts") are Michigan citizens who reside

8    in Grand Haven, Michigan.

9        46.    On December 28, 2018 the Wescotts purchased a new 2019 Honda Odyssey from

10    Betten Baker Honda, an authorized Honda dealership in Muskegon, Michigan.

11        47.    The Wescotts purchased their vehicle primarily for personal, family, or

12    household use. Honda manufactured, sold, distributed, advertised, marketed, and warranted the

13    vehicle.

14        48.    Passenger safety and reliability were important factors in the Wescotts' decision

15    to purchase their vehicle. Before purchasing their vehicle, the Wescotts spent time researching

16    the Honda Odyssey, and also relied on their years of ownership of prior Honda models.

17    Specifically, prior to purchase the Wescotts researched the vehicle on google and reviewed the

18    window sticker.  Additionally, at Betten Baker Honda the Wescotts test drive the Odyssey

19    vehicle with a sales representative. Further, in discussing the vehicle with dealership personnel

20    prior to purchase, the Wescotts were informed that the Honda Odyssey was top rated for safety

21    and that it came with a top-of-the-line nine-speed transmission. Based on their research and her

22    interaction with American Honda Motor Co. and its authorized dealership, the Wescotts

23    believed that the Honda Odyssey would be a safe and reliable vehicle.

24        49.    Had Honda disclosed its knowledge of the Transmission Defect before the

25    Wescotts purchased their vehicle, the Wescotts would have seen such disclosures and been

26    aware of them. Indeed, Honda's omissions were material to the Wescotts.  Like all members of

27    the Class, the Wescotts would not have purchased their Class Vehicle, or would have paid less

28    for the vehicle, had they known of the Transmission Defect.

1     50.     Within the first couple of months after purchasing their Honda Odyssey, the

2   Wescotts vehicle was stuck in second gear and would not shift. Thereafter, and within the first

3   six months of ownership, the vehicle was exhibiting harsh or delayed shifting and engagement,

4   delayed accelerations, hesitation, jerking, shuddering, lurching, and lack of power. Despite

5   repair attempts, these problems continue at present. The Wescotts feels unsafe in the vehicle.

6   Moreover, the delayed acceleration and feeling of imminent stall, present a safety defect at

7   intersections, because, for example, the Wescotts cannot predictably accelerate their vehicle

8   when turning left across oncoming traffic. These symptoms worry the Wescotts, particularly at

9   intersections.

10    51.     On February 27, 2019 and at 4,744 miles, the Wescotts returned the vehicle to

11  Betten Baker Honda complaining that "TRANSMISSION PROBLEM DETECTED MESSAGE

12  CAME ON." The technician found the cause to be "INTERNAL SWITCH DEFECT."

13  Specifically, the technician "INSTALLED SCAN TOOL AND CHECKED FOR STORED

14  DTC'S. FOUND TRANSMISSION CODE U12AA STORED FOR LOST

15  COMMUNICATION WITH THE SHIFTER. INSPECTED SHIFTER ASSEMBLY.

16  CHECKED FOR PROPER HARNESS CONNECTION TO THE SHIFTER. ALSO CHECKED

17  ALL CONNECTIONS AT THE TRANSMISSION CONTROL MODULE. ALL CHECK OK.

18  REPLACED GEAR SELECTOR ASSEMBLY. CLEARED ALL CODES. ROAD TESTED

19  VEHCILE MULTIPLE TIMES, AN SEVERAL MILES TO VERIFY REPAIRS." The vehicle

20  as then returned to the Wescotts.

21    52.     On August 13, 2019 and at 12,559 miles, the Wescotts returned to Batten Baker

22  Honda complaining that "BETWEEN 2ND AND 3RD GEARS THE TRANSMISSION FEELS

23  LIKE IT SLIPS, THEN IT SLAMS INTO GEAR, DOESNT (sp) DO IT ALL THE TIME,

24  GOES DAYS INBETEEN (sp) DOING TRASNMISSION SHIFTING THING, SOME DAYS

25  IT DOES IT 12 TIMES A DAY." In response the technician "ROAD TESTED VEHICLE

26  SEVERAL MILES AND CHECKED TRANSMISISON OPERATION THROUGH ALL THE

27  GEARS. I DID NOT NOTICE ANY ABNORMAL TRANSMISSION SHIFTING DURING

28  ROAD TEST. I INSTALLED THE SCAN TOOL AND PERFORMED CHECKS. NO

1   TRANSMISSION MALFUNCTIONS WERE FOUND. THESE 9 SPEED TRANSMISSIONS

2   CAN SHIFT A LOT DIFFERENTLY THAN EXPECTED DUE TO HOW THE

3   TRANSMISSION IS SET UP. **ACCORDING TO HONDA THIS IS A NORMAL**

4   **CHARACTERISTIC OF THESE TRANSMISSIONS. I DID RELEARN ALL THE**

5   **SHIFT POINTS TO SEE IF THAT CHANGES THE SHIFT QUALITY. THIS MAY**

6   **ONLY BE A TEMPORARY REPAIR. THERE IS NO PERMANENT FIX FOR THIS**

7   **CONCERN AT THIS TIME**." (emphasis added.) The vehicle was returned to the Wescotts

8   with no permanent repair.

9        53.    On August 19, 2019 and at 12,559 miles, the Wescotts returned to Batten Baker

10   Honda requesting that the dealership "CHECK OPERATION OF 9 SPEED TRANSMISSION

11   FOR SMOOTHNESS OF SHIFTING."  In response the technician "ROAD TESTED

12   VEHICLE SEVERAL MILES WHILE CHECKING THE TRANSMISISON OPERATION.

13   ACCORDING TO HONDA THIS TRANSMISSION CAN SHIFT HARDER AT LOWER

14   SPEED DUE TO THE THROTTLE INPUT FROM THE CUSTOMER. AND IF THE

15   CUSTOMER ACCELERATES CONSISTANTLY (sp) THROUGH ALL THE GEARS THE

16   TRANSMISSION WILL SHIFT SMOOTH. I WAS ABLE TO DUPLICATE HARDER

17   SHIFTS WHEN I ACCELERATED FROM A STOP AND THEN LET OFF THE THROTTLE

18   A LITTLE AND THEN ACCELERATED AGAIN, OR WHEN SLOWING DOWN TO TURN

19   A CORNER AND THEN ACCELERATING AGAIN. BUT IF I ACCELERATED THE

20   VEHICLE FROM A STOP AND DID NOT CHANGE THE THROTTLE INPUT UNTIL I

21   REACHED HIGHER SPEEDS THE TRANSMISSION SHIFTED SMOOTH. THIS IS A

22   NORMAL CHARACTERISTIC OF THIS TRANSMISSION." The vehicle was returned to the

23   Wescotts with no permanent repair.

24        54.    Accordingly, despite these repair attempts, the Wescotts continues to experience

25   the Transmission Defect, including rough shifting, hesitation, and feelings of imminent stalling.

26        55.    At all times, the Wescotts, like all Class Members, has driven their vehicle in a

27   foreseeable manner and in the manner in which it was intended to be used.

28

1    **DEFENDANTS**

2       56.    Defendant American Honda Motor Co., Inc. is a corporation organized and in

3   existence under the laws of the State of California and registered to do business in the State of

4   California. On information and belief, at all relevant times herein, American Honda Motor Co.,

5   Inc. was engaged in the business of designing, manufacturing, marketing, distributing, and

6   selling automobiles and other motor vehicles and motor vehicle components in California,

7   Florida, Michigan, Ohio and throughout the United States of America.

8       57.    Defendant Honda Motor Company, Ltd. is a corporation founded in 1958 under

9   the laws of Japan and headquartered in Tokyo, Japan. HMC manufacturers and distributes

10  automobiles, as well as parts for Honda and Acura branded vehicles, and is the parent company

11  of AHMC and all other Honda-branded corporations headquartered California.  Upon

12  information and belief, the design and manufacture of Class Vehicles, including their

13  component systems and any repairs or service necessary, is the primary focus of HMC.

14      58.    At all relevant times, Defendants were and are engaged in the business of

15  designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling

16  automobiles and motor vehicle components in California and throughout the United States.

17                              **JURISDICTION**

18      59.    This is a class action.

19      60.    Members of the proposed Class are citizens of states different from the home

20  state of Defendants.

21      61.    On information and belief, aggregate claims of individual Class Members exceed

22  $5,000,000.00 in value, exclusive of interest and costs.

23      62.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

24                                  **VENUE**

25      63.    Honda, through its business of distributing, selling, and leasing the Class

26  Vehicles, has established sufficient contacts in this district such that personal jurisdiction is

27  appropriate.  Defendants is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

28      64.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because

1  Defendants American Honda Motor Co., Inc. and Honda North America, Inc. are incorporated

2  and headquartered in the state of California and maintain the Honda Research& Developments

3  Innovations in Mountain View, California. In addition, a substantial part of the events or

4  omissions giving rise to the claims alleged herein occurred, or a substantial part of property that

5  is the subject of this action, is situated in California.

6  **FACTUAL ALLEGATIONS**

7  65.    In 2014, Honda released the first Honda-made vehicle equipped with a 9-speed

8  transmission.  "Instinctively responsive," "firmly planted," and "incredibly nimble" is how

9  Mike Accavitti, a former vice president at Honda, characterized the ZF 9HP Transmission when

10  it was first released in vehicles distributed, marketed, and sold by American Honda Motor

11  Company, Inc., in 2014. As discussed above, however, the 2015 Acura TLX 3.5-liter vehicles

12  hit the market with reviews critical of the ZF 9HP Transmission. Journalist Jason Cammisa

13  noted that the TLX's ZF 9HP Transmission "uses an electronic shifter…[that] takes an eternity

14  to engage drive, its shifts are clunky, and it's painfully slow to react to manual commands."[7]

15  66.    As early as December 2014, through TSBs, consumer complaints, and dealership

16  repair orders, among other internal sources, Defendants knew or should have known that the ZF

17  9 HP Automatic Transmissions contained design defects that cause safety hazards. Despite this

18  knowledge, Defendants chose to equip the Class Vehicles with the ZF 9HP Transmission, and

19  Defendants has actively concealed and failed to disclose this defect to Plaintiffs and Class

20  Members prior to the time of purchase or lease and thereafter. As a result of this failure,

21  Plaintiffs and Class Members have been damaged.

22  **Honda Had Superior and Exclusive Knowledge of the Transmission Defect**

23  67.    Honda had superior and exclusive knowledge of the Transmission Defect and

24  knew or should have known that the defect was not known or reasonably discoverable by

25  Plaintiffs and Class Members before they purchased or leased the Class Vehicles.

26  68.    Plaintiffs are informed and believe and based thereon alleges that before

27  ────────────────

28  [7] Jason Cammisa, *11 things you need to know about the 2015 Acura TLX*, Road & Track Magazine (Aug. 5, 2015), http://www.roadandtrack.com/new-cars/news/a6338/2015-acura-tlx-first-drive-review/ (last visited May 5, 2016).

Plaintiffs purchased their Class Vehicle, and well before the first class vehicle was sold, Honda knew about the Transmission Defect through sources not available to consumers, including: data from Honda's own predecessor vehicles equipped with the 9-speed transmission dating back to 2014 and other pre-release testing data; consumer complaints about the Transmission Defect to Defendants' dealers who are their agents for vehicle repairs; aggregate data from Honda's dealers; consumer complaints to and resulting notice from NHTSA; early consumer complaints on websites and internet forums; dealership repair orders; TSBs applicable to the Class Vehicles; and other internal sources of information about the problem. Publicly available facts set forth *infra* further confirm Honda's knowledge.

69.      Honda is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Honda conducts tests, including pre-sale durability testing, on incoming components, including the subject Transmissions, to verify the parts are free from defect and align with Honda's specifications. Thus, Honda knew or should have known that the subject Transmissions were defective and prone to put drivers in a dangerous position due to the inherent risk of the defect.

70.      Additionally, Honda should have learned of this widespread defect from the sheer number of reports received from dealerships and from customer complaints directly to Honda. Honda's customer relations department collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

71.      Honda's warranty department similarly analyzes and collects data submitted by its dealerships in order to identify trends in its vehicles. It is Honda's policy that when a repair is made under warranty the dealership must provide Honda with detailed documentation of the problem and the fix employed to correct it in order to be reimbursed. Dealerships have an incentive to provide detailed information to Honda, because they will not be reimbursed for any repairs unless the justification is sufficiently detailed.

**Technical Service Bulletins**

72.    As a result of the Transmission Defect, Honda issued a service campaign and multiple Technical Service Bulletins ("TSBs") to its dealers in the United States, acknowledging defects in the ZF 9HP Automatic Transmission and attempting to address them.

73.    On or around August 21, 2015, Honda issued TSB 15-041 covering 2015 Acura TLX vehicles and informing dealers as to circumstances where the "the transmission is stuck in 4th gear, and temporary DTC P0714 is stored (ATF Temperature Sensor (Intermittent failure))." Dealers were advised to update the TCM software in affected vehicles.  Then, in or around September 2015, Honda issued TSB 15-034, which covered 2015 Acura TLX and 2016 Acura MDX vehicles and informed dealers that that "[w]hile driving, the vehicle may shift into Neutral and the transmission indicator comes on. The driver will not be able to select any other gear until the vehicle is turned off and restarted." Dealers were again advised to update the TCM software.

74.    In November 2015, Honda issued several service bulletins regarding software issues with the vehicle's Powertrain Control Module and/or Transmission Control Module. For example, on or around November 15, 2015, Honda issued service bulletin A15110F regarding 2016 Pilot vehicles equipped with the 9-speed automatic transmission. In the service bulletin, Honda acknowledged that its dealerships were seeing "fairly low mileage vehicle(s) with the MIL [malfunction indicator lamp] on, the Gear Position indicator blinking, and A/T DTC [automatic transmission diagnostic trouble code P2638 (torque feedback signal A range/performance). In response, Honda directed its dealerships to reset the Powertrain Control Module with the Honda Diagnostic System and to perform an "idle learn procedure."

75.    Likewise, Honda's November 2015 service bulletin A15110H for the 2016 Pilot equipped with the 9-speed transmission noted that "multiple loss-of-communication" diagnostic trouble codes were occurring in the Transmission Control Module.

76.    On or around January 28, 2016, Honda issued service bulletin 16-008, "Transmission Function Improvements: Sensation of Surge While Braking, Slow Downshift Response at Low Engine Speeds, and Other Listed Symptoms." The service bulletin applied to the 2016 Honda Pilot equipped with the 9-speed transmission. In the service bulletin, as shown

in the image below taken directly from the bulletin, Honda admitted that the vehicles were surging while braking, staying in gear too long, surging out of a stop, hesitating out of a stop, exhibiting poor acceleration or bogging noise, and that the transmission "feels rough at low speeds." In response, Honda directed its dealerships to update both the Powertrain Control Module and the Transmission Control Module software. Honda also admitted that "Failure to update both the PCM and the TCM software at the same time will result in poor shift quality and a comeback."

77.    On October 7, 2016, Honda issued service bulletin No. 16-087, entitled "Transmission End Cover Leaks (9-Speed A/T). The bulletin applied to 2016 Honda Pilot vehicles. In the bulletin, Honda admitted that "The transmission end cover leaks on vehicles with a 9-speed A/T" and that "the transmission end cover sealing gasket was torn." In response, Honda directed its dealerships to replace the transmission end cover sealing gasket.

78.    In December 2016, Honda issued service bulletin No. A16120B, for the 2016 Honda Pilot entitled "Shift Quality Issues in a 9-Speed A/T? Check the ATF Level." In the bulletin, Honda admitted that "In a 9-speed A/T, the ATF [Automatic Transmission Fluid] is *critical*. If it's too high, the transmission could shift hard. If it's too low, the transmission could slip. This transmission also doesn't use a dipstick" [emphasis in original].

79.    On January 24, 2017, Honda issued service bulletin No. A17010D, applicable to the 2016-2017 Honda Pilot. In the bulletin, Honda acknowledged that the 2016-2017 Pilots were failing to go into gear, failures which Honda attributed to debris in the shifter assembly.

80.    On or around February 17, 2016, Honda issued service bulletin No. 16-012 covering 2015-2016 Acura TLX vehicles and informing dealers that "[t]he transmission feels like it stays in gear too long." Dealers were again advised to update the TCM software. The TSB also cautioned that the software update "will change the way the transmission shifts."

81.    On or around February 18, 2017, Honda issued service bulletin no. 17-014, applicable to the 2016 and 2017 Honda Pilot. In the bulletin, which was a follow up to the earlier service bulletin 16-091, Honda again admitted that the vehicles were juddering at speeds between 20 and 60mph due to "deteriorated transmission fluid" which was "deteriorate[ing]

quicker than expected when it is exposed to intermittent high heat loads under specific driving conditions."  In response, Honda issued an automatic transmission software update.

82.     On or around July 26, 2017, Honda issued service bulletin no. A17070C, entitled "Where's the Sealing Bolt in That Reman 9-Speed A/T?" In the bulletin, applicable to the 2017-2017 Honda Pilot Touring and Elite, Honda admitted that a transmission case casting flaw was causing transmission fluid leaks from some of the 9-speed automatic transmissions.

83.     On or around August 4, 2017, Honda issued service bulletin no. 17-009. In the bulletin, applicable to the 9-speed-equipped 2016 Honda Pilot, Honda acknowledge that some 9-speed transmission warmers had been improperly manufactured and were failing to keep separate the engine coolant and automatic transmission fluid, which could cause the engine and transmission to be "permanently damaged and require replacement." In response, Honda directed its dealerships to replace the affected transmissions, transmission warmers, radiators, thermostats, coolant reserve tanks, all of the coolant hoses, ECT sensors, and/or the O-rings, depending on the severity of the damage.

84.     On or around August 25, 2017, Honda issued service bulletin no. 17-001. The bulletin reiterated the problems identified in bulletin no. 17-009, and it added the 2017 Honda Pilot as an affected vehicle.

85.     On or around September 9, 2017, Honda added the 2018 Honda Odyssey to the list of vehicles equipped with 9-speed transmissions subject to leaks due to a torn transmission end cover sealing gasket.

86.     On or around September 18, 2018, Honda added the 2019 Odyssey and then 2019 Pilot to the list of vehicles affected by transmission end cover leaks due to the torn sealing gasket in the 9-speed transmission. The affected vehicles thus included the 2016-2019 Honda Pilot and the 2018-2019 Odyssey.

87.     On or around June 12, 2019, Honda issued service bulletin 19-004. In the bulletin, which applied to the 2016-2017 Pilot vehicles, Honda admitted that during downshifts from the 9th or 8th gear to the 7th gear or lower, a miscalculation in the 9-speed transmission's Transmission Control Module software causes the Malfunction Indicator Lamp to illuminate. In

response, Honda directed its dealerships to update the Transmission Control Module software.

88.     On or around December 23, 2019, Honda issued service bulletin no. 19-124, entitled "9-Speed A/T Hard Upshift with Steady Acceleration or MIL On with DTC P0716." In the bulletin, which applied to the 2018-2019 Honda Odyssey vehicles, Honda admitted that "the transmission has intermittent harsh or jerky upshifts with steady acceleration, or the MIL comes on with DTC P0716." Honda attributed this problem to abnormal Transmission Control Module adaptation values or a miscalculation in the Transmission Control Module software. In response, Honda directed its dealerships to update the Transmission Control Module.

89.     On or around August 21, 2015, Honda issued TSB 15-041 covering 2015 Acura TLX vehicles and informing dealers that the "transmission is stuck in 4th gear, and temporary DTC P0714 is stored (ATF Temperature Sensor (Intermittent failure))."  Dealers were advised to update the TCM software in affected vehicles to correct the ATF temperature sensor circuit. Then, in or around September 2015, Honda issued TSB 15-034, which covered 2015 Acura TLX and 2016 Acura MDX vehicles and informed dealers that "[w]hile driving, the vehicle may shift into Neutral and the transmission indicator comes on. The driver will not be able to select any other gear until the vehicle is turned off and restarted."  Dealers were again advised to update the TCM software.

90.     On or around February 17, 2016, Honda issued TSB 16-012 covering 2015-2016 Acura TLX vehicles and informing dealers that "[t]he transmission feels like it stays in gear too long." Dealers were again advised to update the TCM software. The TSB also cautioned that the software update "will change the way the transmission shifts."

**Class Members' Complaints to the National Highway Traffic Safety Administration and Elsewhere**

91.     Automakers like Honda monitor customers' complaints made to the National Highway Traffic Safety Administration ("NHTSA.") Federal law requires automakers like Honda to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints,

1    and warranty data. *See TREAD Act,* Pub. L. No. 106-414, 114 Stat.1800 (2000).

2         92.    Automakers have a legal obligation to identify and report emerging

3    safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly,

4    automakers monitor NHTSA databases for consumer complaints

5    regarding their automobiles as part of their ongoing obligation to identify potential defects in

6    their vehicles, including safety-related defects. *Id.* Thus, Honda knew or should have known of

7    the many complaints about the Transmission Defect logged by NHTSA Office of Defect

8    Investigation (ODI), and the content, consistency, and large number of those complaints alerted,

9    or should have alerted, Honda to the Transmission Defect.

10        93.    The following are examples of complaints from owners and lessees of the Class

11   Vehicles concerning the Transmission Defect available through NHTSA's website,

12   www.safercar.gov. Unless otherwise specified, spelling and grammar mistakes appear as in

13   original.

14

15        a.  **DATE OF INCIDENT:**  March 3, 2018

16            **DATE COMPLAINT FILED:**  July 29, 2018

17            **NHTSA/ODI ID:** 11114414

18            **SUMMARY:** IF I BUY A NEW 2018 HONDA ODYSSEY AT AROUND 4000

19            MILES START HAVING TRANSMISSION PROBLEMS AT AROUND FIVE

20            TO SIX THOUSAND MILES I START GETTING A HORRIBLE TOXIC

21            BURNING CHEMICAL SMELL COMING FROM INSIDE THE CAR

22            SOMEWHERE DO YOU TAKE IT TO THE DEALERSHIP THEY SAY

23            NOTHING'S WRONG OBVIOUSLY THERE IS SOMETHING WRONG WITH

24            HIS DOING WHAT IT'S DOING.

25

26        b.  **DATE OF INCIDENT:**  June 15, 2018

27            **DATE COMPLAINT FILED:**  August 27, 2018

28            **NHTSA/ODI ID:** 11122827

CLASS ACTION COMPLAINT

1    **SUMMARY:** TL* THE CONTACT OWNS A 2018 HONDA ODYSSEY.
2    WHILE DRIVING APPROXIMATELY 15 MPH, THE VEHICLE JERKED AND
3    THE ENGINE REVVED. THE CONTACT STATED THAT THE ENGINE
4    REMAINED ON, BUT THE VEHICLE DID NOT SHIFT INTO DRIVE OR
5    REVERSE. ALL THE WARNING INDICATORS ILLUMINATED ON THE
6    INSTRUMENT PANEL. PRIOR TO THIS, WHILE DRIVING DIFFERENT
7    SPEEDS, THE VEHICLE DECELERATED, LOST POWER, AND SHUT OFF.
8    THE VEHICLE WAS TAKEN TO PERFECTION HONDA (2603 AMERICAN
9    RD SE, RIO RANCHO, NM 87124, 505-221-5084) WHERE IT WAS
10   DETERMINED THAT THERE WAS NO FAILURE. THE FAILURE
11   RECURRED SEVERAL TIMES AND THE VEHICLE WAS TAKEN TO THE
12   SAME DEALER WHO WAS UNABLE TO DUPLICATE THE FAILURES. THE
13   MANUFACTURER WAS MADE AWARE OF THE FAILURES AND STATED
14   THAT THEY WOULD BE INVESTIGATED. THE CONTACT STATED THAT
15   NOTHING WAS DONE…

16

17   c.   **DATE OF INCIDENT:**  July 22, 2018
18       **DATE COMPLAINT FILED:**  July 24, 2018
19       **NHTSA/ODI ID:** 11113272
20       **SUMMARY:** HAVING ISSUE OF ACCELERATION AT ROAD SPEED.
21       WHEN DOING ROAD SPEED I HAVE HAD FLAT ACCELERATION WHEN
22       PRESSING GAS PEDAL.
23       ALMOST FEELS AS IF VEHICLE IS ABOUT TO STALL OR DECELERATE.
24       DEALER WITH VEHICLE AND THEY CAN'T FIND ISSUE. DEALER
25       CLAIMS THEY HAVE NOT HAD ANY
26       HONDA COMPANY REPORTS ABOUT THIS.
27       THIS EVENT HAS HAPPENED SEVERAL TIMES.
28       LAST EVENT INTERESTING IS THAT THIS HAS HAPPENED WHEN

DECELERATING TO ENTER EZPASS EXPRESS TOLL AT AT 50MPH AND THEN TRYING TO ACCELERATE TO FLOW OF TRAFFIC.

d. **DATE OF INCIDENT:** August 26, 2018

**DATE COMPLAINT FILED:** November 28, 2018

**NHTSA/ODI ID:** 11154477

**SUMMARY:** TWICE IN THE FIRST YEAR OF OWNERSHIP, THE CAR WAS PARALLEL PARKED AND I PUT THE VEHICLE IN DRIVE (PUSH BUTTON SIFTER). UPON THE VEHICLE BEGINNING TO MOVE IN FORWARD MOTION IT WOULD IMMEDIATELY SHIFT BACK INTO PARK. I REPEATED AN IT DID THE SAME OVER AND OVER AGAIN. EVEN AFTER SHUTTING DOWN THE ENGINE AND RESTARTING; I HAD THE SAME ISSUE. BOTH TIMES THIS OCCURRED, HAD TO GO IN REVERSE FOR A SHORT DISTANCE IN ORDER TO GET THE VAN TO THEN MOVE FORWARD WITHOUT ALMOST INSTANTLY SHIFTING BACK INTO PARK. IN THE SECOND CASE THERE WAS NO VEHICLE PARKED IN FRONT OR BEHIND ME AND I STILL HAD THE SAME ISSUE. I DID RECORD A VIDEO OF THE ERRATIC BEHAVIOR ON 8/26/2018 (SECOND TIME) .

e. **DATE OF INCIDENT:** September 10, 2018

**DATE COMPLAINT FILED:** December 11, 2018

**NHTSA/ODI ID:** 11160764

**SUMMARY:** USUALLY AT LOWER SPEED(15~30MPH),

TRANSMISSION STRUGGLES TO SHIFTING GEAR. AND HESITATES TO SHIFT.

CLASS ACTION COMPLAINT

1    ALSO, THERE IS SHIFT SHOCK AT LOW SPEED.

2

3    IT IS WORST IN THE MORNING.

4

5    I WENT TO DEALER TO CHECK THAT CONDITION AND TECHNICIAN

6    SAID

7

8    THAT IS NORMAL.

9

10    f.    **DATE OF INCIDENT:**  November 1, 2018

11    **DATE COMPLAINT FILED:**  November 19, 2018

12    **NHTSA/ODI ID:** 11152405

13    **SUMMARY:** WITH APPROXINATELY 10,000 MILES ON THE VEHICLE,

14    THE TRANSMISSION UNDER PERFORMS. WHILE DRIVING, USUALLY

15    AT SPEEDS UNDER 30MPH, THE TRANSMISSION STRUGGLES TO SHIFT

16    SMOOTHLY. IT ALSO MAKES A LOUD JERKING SOUND AND MOTION

17    WHEN SHIFTING GEARS. THE TRANSMISSION ALSO SOMETIMES

18    HESITATES TO SHIFT, ALLOWING YOU TO BE ABLE TO FEEL THE VAN

19    SLOW DOWN WHILE IN PROCESS OF SHIFTING, APPROXIMATELY 2

20    SECONDS LATER YOU CAN HEAR AND FEEL IT GO INTO GEAR.

21    LASTLY, THE PICK UP ON THE VAN IS SLOWER THAN MOST CARS I

22    HAVE DRIVEN.

23

24    g.    **DATE OF INCIDENT:**  January 20, 2019

25    **DATE COMPLAINT FILED:**  May 14, 2019

26    **NHTSA/ODI ID:** 11207593

27    **SUMMARY:** AUTO SHIFTING ANYWHERE FROM 20-30MPH RESULTS IN

28    HARD SHIFT OR KNOCK. WHEN VAN IS DOWNSHIFTING THERE IS AN

ACCELERATION OR KNOCK. TRANSMISSION WAS REPLACED AT 22,000 MILES. NO EXPLANATION FOR THE CAUSE. THIS WAS NOTICED ABOUT 3 MONTHS INTO OWNING THE VEHICLE BRAND NEW AT 8 MILES FROM A HONDA DEALERSHIP. IT TOOK THEM 13 MONTHS OF A CONTINUOUS CYCLE OF GOING INTO THE HONDA CERTIFIED SHOP FOR THEM TO BELIEVE US. NOW OUR VEHICLE AT 25,000 MILES CONTINUES TO REPRODUCE THE SAME PROBLEM.

h. **DATE OF INCIDENT:** February 4, 2019
**DATE COMPLAINT FILED:** February 8, 2019
**NHTSA/ODI ID:** 11175742
**SUMMARY:** I'VE HAD MY 2018 HONDA ODYSSEY TOURING FOR 2 MONTHS; IT HAS 2600 MILES.

MY VEHICLE SHIFTED INTO PARK WHILE DRIVING 70MPH ON THE INTERSTATE! THE CAR MADE A POPCORN/GRAVEL SLAMMING AGAINST THE CAR SOUND WHILE FELT AS THOUGH THE BOTTOM HALF OF THE VAN WAS TRYING TO SEPARATE FROM THE TOP!! TALK ABOUT FRIGHTENING! IT BRIEFLY FLASHED ""COLLISION MITIGATION"-SOMETHING,, BUT IT WAS JUST ON THE SCREEN FOR A HALF-SECOND. I PULIED OVER TO THE SIDE OF THE HIGHWAY, PUT MY FOOT ON THE BRAKE AND PRESSED THE DRIVE BUTTON. IT HAPPENED AGAIN MAYBE 10 MINUTES LATER ON A BUSY ROAD TRAVELING AT 45MPH.

I ARRIVED AT MY FIRST DESTINATION, RESEARCHED HOW TO TURN OFF THE COLLISION MITIGATION SYSTEM, AND CONTINUED TO MY SECOND DESTINATION. IT HAPPENED TWICE ON THE HIGHWAY ON

THE WAY TO THAT DESTINATION, FLASHING THE SAME WARNING SO QUICKLY THAT I COULDN'T READ IT, SAME NOISE, VIBRATION.

I CALLED THE DEALERSHIP FROM WHICH I BOUGHT IT. THEY TOWED THE VEHICLE TO THE DEALERSHIP. THEY COULD NOT REPRODUCE THE PROBLEM. "BEST EDUCATED GUESSED" THAT THE BATTERY WAS THE PROBLEM, THOUGH I NEVER RECEIVED A LOW BATTERY WARNING FROM MY VEHICLE, AND THEY PERFORMED A BATTERY RESET PROCEDURE.

THE DEALERSHIP EXPECTS ME TO DRIVE MY FAMILY HOME IN THIS VEHICLE WITHOUT CHANGING OR EVEN INSPECTING THE TRANSMISSION OR PARKING PAWL, WHICH WAS THE CAUSE OF THE LOAD POPCORN/GRAVEL NOISE.

I HAVE CONTACTED HONDA AND A CASE HAS BEEN OPENED.

i.  **DATE OF INCIDENT:** March 29, 2019
    **DATE COMPLAINT FILED:** May 29, 2019
    **NHTSA/ODI ID:** 11210574
    **SUMMARY:** THE VEHICLE IS HAVING INTERMITTENT ISSUES WITH THE TRANSMISSION SHIFTING.  THE SPEED SEEMS TO VARY, THE RANGE IS BETWEEN 24 AND 33 MPH.  IT SEEM TO BE MOST PREVALENT AFTER BEING ON THE HIGHWAY FOR A LONGER PERIOD OF TIME, 45 MINUTES AND LONGER.  THEN WHEN AACCELERATING GENTLY FROM A STOP IT CAN LURCH WHEN SHIFTING, OR SHIFT HARD AND MAKE AN AUDIBLE CLUNK.

OTHER TIMES, NOT HAVING BEEN DRIVEN FOR ANY LENGTH OF TIME, IN THE SAME SPEED RANGE, 24 TO 33 MPH, DURING GENTLE ACCELERATION IT DOES NOT SHIFT EASILY OR SMOOTHLY. THERE IS NOT NECESSARILY A CLUNK (THERE CAN BE), BUT IT DOES NOT SHIFT NORMALLY OR SMOOTHLY, I WOULD DESCRIBE IT A MISS OR LURCH.

IN BOTH CASES IT WILL SHIFT, BUT NOT AS IT SHOULD. THIS BEGAN AROUND 17,000 MILES.

I AM NOTICING VERY FINE VIBRATIONS IN THE STEERING WHEEL AND THROUGHOUT THE FRONT END, ITS NOT ALL THE TIME, BUT IT DOES NOT SEEM RIGHT. I AM UNABLE TO ASSOCIATE IT WITH ANY PARTICULAR SPEED OR STRETCH OF ROAD, BUT IT DID NOT DO THIS WHEN THE VEHICLE WAS NEW.

j.   **DATE OF INCIDENT:**  April 1, 2019
**DATE COMPLAINT FILED:**  May 11, 2019
**NHTSA/ODI ID:** 11207033
**SUMMARY:** AUTO SHIFTING ANYWHERE FROM 20-30 MPH RESULTS IN HARD SHIFT AND KNOCK. WHEN VAN DOWNSHIFTS AROUND 20-30 MPH THERE IS A JUMP OF ACCELERATION AND KNOCK. SOMETIMES WHEN ACCELERATING AND GEARS SHIFT THERE IS UN EXPECTED JUMP IN ACCELERATION

k.   **DATE OF INCIDENT:**  April 13, 2019
**DATE COMPLAINT FILED:**  April 15, 2019
**NHTSA/ODI ID:** 11196583
**SUMMARY:** WHILE DRIVING ON A 50 MPH, TWO LANE ROAD, THE

VEHICLE ABRUPTLY SHIFTED INTO NEUTRAL AUTONOMOUSLY AFTER EXPERIENCING A TRANSMISSION FAILURE AND PROHIBITED THE DRIVER FROM RETAKING CONTROL OF THE VEHICLE. WITH NO POWER AVAILABLE, THE DRIVER WAS ULTIMATELY FORCED TO COAST TO A STOP ON THE SHOULDER OF THE ROAD. WARNING MESSAGES INDICATED A TRANSMISSION FAILURE, EMISSION CONTROL FAILURE, AND BLIND SPOT MONITORING FAILURE. THE CAR WAS TOWED TO THE NEAREST HONDA DEALER.

l.  **DATE OF INCIDENT:** May 1, 2019

**DATE COMPLAINT FILED:** May 22, 2019

**NHTSA/ODI ID:** 11209239

**SUMMARY:** TL* THE CONTACT OWNS A 2018 HONDA ODYSSEY. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE SHIFTED INTO NEUTRAL GEAR WITHOUT WARNING. THE FAILURE OCCURRED INTERMITTENTLY. THE CHECK ENGINE AND COLLISION WARNING INDICATORS ILLUMINATED. HONDA OF OLATHE (1000 N ROGERS RD, OLATHE, KS 66062, (913) 782-3636) DIAGNOSED THAT THE FUSE AND THE BATTERY NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED, BUT THE FAILURE RECURRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 24,000. THE VIN WAS UNAVAILABLE.

m.  **DATE OF INCIDENT:** May 21, 2019

**DATE COMPLAINT FILED:** July 3, 2019

**NHTSA/ODI ID:** 11229195

**SUMMARY:** TRANSMISSION SLIPPING WHEN ACCELERATING FROM STATIONARY POSITION OR WHENEVER MORE SPEED IS NEEDED.

HAPPENS WHEN GOING UPHILL OR LANE CHANGING WHEN MORE SPEED IS NEEDED.

n. **DATE OF INCIDENT:** July 3, 2019

**DATE COMPLAINT FILED:** October 8, 2019

**NHTSA/ODI ID:** 11266984

**SUMMARY:** VEHICLE EXPERIENCES ROUGH SHIFTING WHEN SLOWING DOWN AND SPEEDING UP IN STOP IN GO TRAFFIC. IT IS LIKE IT FALLS INTO GEAR, AND NOT A SMOOTH SHIFT. VERY DISAPPOINTED FOR A $33,000 PURCHASE. THIS HAPPENS ON THE HIGHWAY, OR ON RESIDENTIAL ROADS.

o. **DATE OF INCIDENT:** August 30, 2019

**DATE COMPLAINT FILED:** August 30, 2019

**NHTSA/ODI ID:** 11252464

**SUMMARY:** WHEN DECELERATING AT THE SPEED AROUND OF 25 MAKES A LOUD KNOCKING SOUND AND SHIFTS ERATTICALLY [spelling corrected].

p. **DATE OF INCIDENT:** November 26, 2019

**DATE COMPLAINT FILED:** December 1, 2019

**NHTSA/ODI ID:** 11283068

**SUMMARY:** OWNER OF 2018 ODYSSEY EXL RESNAV W/ 9SPEED AT

WIFE IS PRIMARY DRIVER AND WE RECENTLY RETURNED FROM A ROAD TRIP. VEHICLE PERFORMS VERY SMOOTHLY 95% OF THE TIME. THE OTHER 5% YOU CAN EXPECT ABRUPT AND VIOLENT UP AND DOWN SHIFTS. FURTHER, THIS IS THE SAFETY VS ANNOYANCE ISSUE,

THE VEHICLE WILL HESITATE WHEN ACCELERATING FROM A STOP. THIS IS A FACTOR THREAT WHEN PULLING INTO TRAFFIC. HESITATION CAN AND WILL CAUSE AN ACCIDENT. HONDA OF NA NEEDS TO GET TO WORK AND TAKE RESPONSIBILITY FOR THIS UNACCEPTABLE SAFETY ISSUE. SOMEONE IS GOING TO BE HURT.

q.   **DATE OF INCIDENT:** December 30, 2019

**DATE COMPLAINT FILED:** January 21, 2020

**NHTSA/ODI ID:** 11300974

**SUMMARY:** I HAVE HAD THIS VERY PROBLEM IN MY 2018 EX WITH NAV RES. I'LL BE ON THE HIGHWAY, GOING 65MPH+, AND I WILL ACCELERATE TO CHANGE LANES OR PASS AND THE ENGINE WILL SEEMINGLY STALL FOR SEVERAL SECONDS. AS I PRESS THE GAS, THE CAR ACTUALLY DECELERATES AS IF IT'S COASTING IN NEUTRAL. AFTER A FEW SECONDS, IT REENGAGES, THE ENGINE REVS A LITTLE, AND THE CAR BEGINS ACCELERATION. I ALSO OFTEN NOTICE THAT THE VAN DOES A SIMILAR THING WHEN I'M ACCELERATING FROM A STOP TO ENTER TRAFFIC OR MAKE A TURN. WHEN I HIT THE GAS, THE CAR COASTS FORWARD FOR A SECOND BEFORE ACTUALLY ACCELERATING. IT IS ACTUALLY DANGEROUS, ESPECIALLY SINCE IT HAS HAPPENED WHEN THERE HAS BEEN ONCOMING TRAFFIC. I HAVE HAD IT INTO THE DEALERSHIP MULTIPLE TIMES AND THEY "CAN'T REPLICATE THE PROBLEM." TODAY MY DEALERSHIP TOLD ME THAT I SHOULD OPEN A CASE WITH HONDA, WHICH I DID. I WAS TOLD THAT THE 9-SPEED TRANSMISSION WAS DISCONTINUED BECAUSE CONSUMERS "COMPLAINED" AND "DIDN'T LIKE IT." THEY FURTHER SAID THAT THEY COULD NOT REPLICATE THE PROBLEM AND THEREFORE COULD NOT FIX IT. IN THE CASE OF MY VAN, IT IS

DEFECTIVE AND DANGEROUS. MY SON IS LEARNING TO DRIVE AND I AM FEARFUL FOR HIS SAFETY. I HAVE FELT IN DANGER IN THIS CAR MYSELF. WHEN I ASKED ABOUT TO WHOM I COULD SPEAK TO ADDRESS MY CONCERNS, I WAS DIRECTED TO "PAGE 2 OF THE ONLINE OWNER'S MANUAL." THIS HAS HAPPENED ON NUMEROUS OCCASIONS AND HAS BEEN INTO THE DEALERSHIP FREQUENTLY WITHOUT RESOLUTION.

r.  **DATE OF INCIDENT:** February 27, 2020

**DATE COMPLAINT FILED:** March 6, 2020

**NHTSA/ODI ID:** 11316579

**SUMMARY:** TL- THE CONTACT OWNS A 2018 HONDA ODYSSEY. THE VIN WAS NOT PROVIDED. THE CONTACT STATED THAT WHILE BACKING UP AT ABOUT 2 MPH, THE TRANSMISSION WENT FROM DRIVE TO PARK WITHOUT WARNING. THE VEHICLE WAS TAKEN TO THE GENTHE HONDA DEALER, LOCATED AT 15100 EUREKA RD, SOUTHGATE, MI 48195, WHERE THE TECHNICIAN WAS UNABLE TO DIAGNOSE THE FAILURE. THE FAILURE RECURRED ON THE SAME DAY AND DID NOT RECUR IN THE FOLLOWING DAYS. . THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 33,000. FE

s.  **DATE OF INCIDENT:** March 2, 2020

**DATE COMPLAINT FILED:** March 6, 2020

**NHTSA/ODI ID:** 11316560

**SUMMARY:** THE TRANSMISSION IN THIS VEHICLE LAGS AND SLIPS REGULARLY WHEN SHIFTING FROM 2ND TO 3RD GEAR. IT IS A MAJOR

1
2
3
4
5
6
7

SAFETY ISSUE. WE TOOK THE VEHICLE IN TO A HONDA DEALER TO SERVICE THIS PROBLEM UNDER WARRANTY AND WERE TOLD THAT THE PERFORMANCE WE ARE EXPERIENCING IS NORMAL FOR THIS SPECIFIC TRANSMISSION. IT US UNACCEPTABLE THAT HONDA WOULD ALLOW THIS TRANSMISSION TO BE USED BY SO MANY IN SUCH AN UNSAFE WAY.

94.    Class Members also reported the Transmission Defect on online forums:

**www.OdyClub.com[8] – What's the Verdict on the 9-Speed Transmission?**

a.    **March 9, 2018** (posted by salsolomon): Based on reading these comments on the transmission issues with the 2018 Odyssey, I have now almost decided that I will go with the 2019 Subaru Ascent instead of the 5'th generation Odyssey. Honda has given me enough sleepless nights worrying about about the transmission on my 2004 Odyssey. The 2004 Odyssey is a great vehicle, but I could have done without the heartburn that the worries about its transmission caused me. And, Honda really needs to learn a lesson on the Transmission front. Honda has a great 10-speed transmission now. And, yet it is shoving down that problematic ZF transmission down our throats. I used to be a great Honda fan. I am not sure anymore. So sad.

b.    **March 12, 2018** (posted by jrc87): The 9speed is not refined at all, I would consider it garbage (I bought an EX-L with one so, yes, I can say that). It's depressing to drive a brand new car with a transmission that feels worse than your average 10-year old dump.

Unfortunately, when test driving the vehicle you're driving around with a sales guy in the back seat talking about features. You're stunned with all the technology and your brain is more focused on testing what this or that shiny button does instead of

---

[8]Thread available at https://www.odyclub.com/threads/whats-the-verdict-on-the-9-speed-transmission.323474/page-2, *last accessed* March 16, 2020.

1    paying attention to so many other factors.

2

3    After buying the car and letting all things set in, you start noticing that the

4    transmission jerks when shifting gears up or down. It gets confused many times so

5    it has to change gears again which causes the car to jerk yet again. You then start

6    reading that it has presented so many problems in the past and doubt start setting

7    in.... Your 4, 5, 6, 7 hundred dollar car payment starts to hurt a little more when you

8    realize you just got a piece of junk.

9    My previous vehicle was a Kia Sorrento SXL (which was flawless by the way,

10    drove like a 70k SUV). The dealer had this "24hr test drive" where they gave me a

11    sorrento to try for a whole day/night. I wish more dealers did this. I would have

12    probably detected the garbage the 9-speed is before committing to it.

13    So, if you're reading this and you already bought it: sorry, we're all on the same

14    boat now.

15    if you're reading this and you haven't bought it: Skip it. Seriously, save more money

16    to get the 10-speed or go elsewhere (Kia/Toyota). That is my humble opinion.

17    (Note: the Chrysler pacifica uses the SAME transmission built by the SAME

18    manufacturer, so you're not safe there either)

19    Good luck everyone!

20

21    c.  **March 21, 2019** (posted by HondaBox): +10000000 As an ex 2016 Acura MDX

22    owner the ZF 9spd was total garbage. It made me almost walk away from

23    Honda/Acura completely. I've been warning people over and over when I can on

24    this forum to stay away from the 9 spd ZF…

25

26    d.  **July 12, 2018** (posted by FreeRadical): In my opinion, the transmission is a

27    monster. It fights me at every turn.

28    Most of the time on launch, it wants to immediately upshift (since we all have to

worship at the altar of fuel efficiency), and I have to work it to get the acceleration I want. Sometimes, it just acts bizarrely. If I put my foot into it, it seems to go through a bunch of decision-making: it goes to higher RPMs, then briefly upshifts, then downshifts and makes a racket, all the while with not much happening at the tires. It will finally realize that I want to go briskly and will let the excellent engine do its thing.

It mightily resists downshifting if I want to squeeze on the power at mid to high speeds. I have to get into it more than I would like and then it downshifts and makes a racket and lunges ahead. Sometimes it makes a racket and I feel nothing at the tires for quite a while.

When coasting at low speeds, it seems to be in too low a gear and that causes lashing on small throttle changes. And even though it seems like it's in a low gear, it still takes forever to do anything if I want to increase my speed.

The silly "sport" mode makes it drive like a tractor with even more lash than in normal mode. It seems like a CVT, but is supposed to be a 9 speed.

It makes me pine for my beloved 2006 Odyssey that I traded in. That was probably the best auto transmission I have ever driven. It seemed to always be in the right gear, like when I was in a slowing coast and wanted to go faster, or in exiting a turn. It was ready and able to downshift with a bit of added throttle.

Oh, what happened? When did Honda start making Toyotas?

95.    Likewise, owners of predecessor Honda-made vehicles equipped with the ZF 9HP 9-speed transmission had been reporting the 9HP's problems to NHTSA for years before the Class Vehicles were released. Despite these reports, Honda chose to equip the 2018-2019 Honda Odyssey with the defective 9HP transmission. Below is but a small sample of the scores of similar complaints about other vehicles with the 9HP transmission:

**2015 Acura TLX**

(a)    11/10/14 ABNORMAL SHIFTS LOW SPEED

(b)    1/16/15 TRANSMISSION IS JERKY. DOES NOT SHIFT SMOOTHLY IN 2 AND 3 GEARS. SOMETIMES ACCELERATES BEFORE DOWNSHIFTING TRANSMISSION SEEMS OK IN HIGHER GEARS. CAR DOES NOT ACCELERATE PROPERLY IN LOW GEARS. MAKES DRIVING RISKY AND DIFFICULT UNTIL CAR IS IN HIGHER GEARS. *TR

(c)    2/5/15 TRANSMISSION HAS EXTREMELY BAD JERK FROM 2ND TO 3RD GEAR. ALSO, TRANSMISSION TENDS TO MAKE CAR ACCELERATE ON ITS OWN SOMETIMES. ALSO, DOWNSHIFTING IS TOO SLOW TO MAKE AN EFFECTIVE PASS ON A HIGHWAY. HORRIBLE, UNSAFE FEELING TRANSMISSION. *TR

(d)    2/10/15 ISSUES WITH TRANSMISSION SHIFTING. 1. DELAY OF ACCELERATION AT LOW SPEED SUCH AS AT AN INTERSECTION (4 OCCURRENCES) WHERE MAKING A TURN CAR DOES NOT READILY ACCELERATE DUE TO BEING IN TOO HIGH OF A GEAR WHILE IN AUTOMATIC MODE. AFTER ABOUT 2 SECONDS, CAR DOWNSHIFTS AND RESUMES NORMAL ACCELERATION. HAS NOT RECURRED IN AT LEAST A MONTH. 2. ROUGH SHIFT (LAG) WHEN CAR UPSHIFTS FROM 2ND TO 3RD. THIS HAS BEEN PRESENT SINCE PURCHASE AND OCCURS REGARDLESS OF WHAT MODE (AUTO/MANUAL) IS SELECTED. HAS NOT IMPROVED. 3.WITHIN LAST 30 DAYS, VEHICLE IS NOT DOWNSHIFTING CORRECTLY WHEN COMING TO A STOP. CAR DOES NOT ACTUALLY DOWNSHIFT INTO 1ST UNTIL AFTER IT IS AT A COMPLETE STOP RESULTING IN A LURCH. NO MATTER HOW SMOOTHLY THE CAR IS BROUGHT TO A STOP, THE FINAL DOWNSHIFT IN AUTO MODE DOESN'T OCCUR UNTIL AFTER REACHING A STOP. THE PROBLEM DOES NOT START TO HAPPEN

UNTIL ENGINE/CAR IS WARM AS THE FIRST FEW COMPLETE STOPS WHEN COLD ARE 100% OK, THEN AFTER WARMED UP IT WILL OCCUR EVERY TIME THEREAFTER. 4. WHEN ENGAGING DRIVE OR REVERSE, THE VEHICLE WILL BEGIN TO ACCELERATE SLIGHTLY WITHOUT PEDAL INPUT SUCH AS WHEN BACKING OUT OF A PARKING SPACE. CONTACTED DEALER AND DEALER SAID NO INSTRUCTIONS FROM MAKER OR TSB'S YET AND THAT TRANSMISSION WAS NEW MODEL AND MAKER NOT SURE WHAT TO EXPECT. TOLD DEALER I WOULD DRIVE THE CAR FOR A FEW MORE WEEKS TO SEE IF SITUATION IMPROVES. DID NOT TAKE CAR IN FOR CHECK BASED ON DEALER COMMENT THAT THERE WAS NO INSTRUCTION FROM ACURA YET FOR A FIX. VEHICLE IS NOW 3500 MILES AND ISSUES 2, 3, 4 STILL OCCURRING. *TR

(e)     2/10/15 THERE IS A VERY ROUGH UPSHIFT FROM SECOND TO THIRD, ON A LONG RIGHT HAND TURN WHEN TRANSMISSION IS COLD, IN THE MIDDLE OF THE TURN, POWER TO WHEELS DISAPPEARS AND REAPPEARS WHEN ROAD STRAITENS, TRANSMISSION/CAR SURGES FORWARD ON DOWN SHIFT 3 TO 2 (SOMETIMES). *TR

**2016 Acura TLX**

(a)     2/4/16 ACCELERATION FROM LOW GEARS REV RPM UP TO 6000 WHEN MOVING OUT OF A PARKING SPOT. WHEN GOING ONTO HIGHWAY SAME THING ANYTHING LOWER THAN 20 MPH HAS A HESITATION. NOT SURE WHAT MY OPTIONS ARE.

(b)     1. WHEN ACCELERATING FROM A STOP, THE TRANSMISSION OCCASIONALLY FEELS LIKE IT SLIPS INTO NEUTRAL. THE ENGINE RES BUT DOES NOT MOVE FORWARD FOR 1-2 SECONDS. 2. CAR DOWNSHIFTS INTO 1ST GEAR AND LURCHES FORWARD AFTER

COMING TO A STOP. 3. TRANSMISSION SHIFTS VERY ABRUPTLY AND ROUGH DURING ALMOST ALL ACCELERATIONS.

**2016 Acura MDX**

(a)    7/13/15 THE 9 SPEED ZF TRANSMISSION HAS UNPREDICTABLE BEHAVIOR INCLUDING: DELAYED SHIFTING LEADING TO PAUSES IN POWER, DELAYED DOWN SHIFT DURING ATTEMPTS AT HIGHWAY SPEED ACCELERATION, JERKY SHIFTS, CAR REMAINS IN NEUTRAL WHEN SHIFTING FROM DRIVE TO REVERSE. VERY UNSAFE CONDITION DUE TO UNPREDICTABLE EFFECTS ON SPEED AND CAR CONTROL. THIS IS NOW A WIDESPREAD PROBLEM AFFECTING THE SAME TRANSMISSION IN JEEP, CHRYSLER, AND ACURA MODELS. THE ACURA TLX HAS PREVIOUSLY BEEN DESCRIBED WITH THIS PROBLEM. NOW THE SAME TRANSMISSION HAS BEEN INCLUDED IN THE 2016 MDX WITH THE SAME OUT COME......UPDATED 10/20/15 *BF THE CONSUMER STATED THE TRANSMISSION WAS REPLACED. UPDATED 12/17/15.*JB

(b)    8/3/15 WHILE DRIVING, THE MDX SHIFTS INTO NEUTRAL AND CANNOT BE SHIFTED OUT OF NEUTRAL. THIS HAS OCCURRED ON THE HIGHWAY MULTIPLE TIMES. THE INFORMATION DISPLAY SHOWS FIRST EMISSIONS PROBLEM, THEN TRANSMISSION PROBLEM. ACURA HAS A TSB OUT FOR THIS B15-034, BUT WON'T APPLY IT UNTIL THE PROBLEM APPEARS. HAVING YOUR VEHICLE SHIFT INTO NEUTRAL IN A HIGH SPEED ENVIRONMENT IS EXTREMELY DANGEROUS. TSB B15-034 NEEDS TO BE A RECALL BEFORE THEIR MDX SHIFTS INTO NEUTRAL DRIVING ON THE HIGHWAY AND THEY BECOME IMMOBILIZED AND PEOPLE ARE KILLED AS A RESULT....UPDATED 09/22/15 *BF

96.     The Transmission Defect was inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

97.     The existence of the Transmission Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle.  Had they known that the Class Vehicles were equipped with defective transmissions, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles or would have paid less for the vehicles.

98.     Reasonable consumers, like Plaintiffs, expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from defects. Plaintiffs and Class Members further reasonably expect that Honda will not sell or lease vehicles with known safety defects, such as the Transmission Defect, and will disclose any such defects to its consumers when it learns of them.  They did not expect Honda to fail to disclose the Transmission Defect to them and continually to deny the defect.

**Honda Has Actively Concealed the Transmission Defect**

99.     While it has been fully aware of the Transmission Defect in the Class Vehicles, Honda actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase, lease, or repair and thereafter.  Specifically, Honda failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)     any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the ZF 9HP Automatic Transmission;

(b)     that the Class Vehicles, including their ZF 9HP Automatic Transmission, were not in good in working order, were defective, and were not fit for their intended purpose; and

(c)     that the Class Vehicles and their ZF 9HP Automatic Transmission were defective, despite the fact that Honda learned as early as 2014 of such defects through high failure rates, customer complaints, and other internal sources.

100.    As a result of the Transmission Defect, Honda received several complaints regarding the Class Vehicles' ZF 9HP Automatic Transmissions, including customers' experiencing rough, delayed, or sudden shifting or failure to shift, grinding or other loud noises during shifting, harsh engagement of gears, sudden or harsh accelerations/decelerations, and sudden loss of power.

101.    Despite the TSBs discussed above, on information and belief, consumers continued to experience problems with their vehicles, including rough, delayed, or sudden shifting or failure to shift, grinding or other loud noises during shifting, harsh engagement of gears, sudden or harsh accelerations/decelerations, and sudden loss of power, which necessitated additional repairs to the ZF 9HP Automatic Transmission.

102.    On information and belief, the repairs outlined by the various TSBs issued by Honda failed to resolve the Transmission Defect.

103.    When consumers presented the Class Vehicles to an authorized Honda dealer for problems with the vehicle's ZF 9HP Automatic Transmission, rather than repair the problems under warranty, Honda dealers either informed consumers that their vehicles were functioning properly, or "as designed," or performed work or software updates that merely masked the defect.

104.    To this day, Honda still has not notified Plaintiffs and Class Members that the Class Vehicles suffer from a systemic defect that causes the ZF 9HP Automatic Transmission to malfunction.

## CLASS ACTION ALLEGATIONS

105.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

106.    The Class and Sub-Class are defined as:
**Class**:  All individuals in the United States who purchased or leased any 2018-2019 Honda Odyssey vehicle equipped with a 9-speed Automatic Transmission.

**Florida Sub-Class**: All individuals in the State of Florida who purchased or leased any 2018-2019 Honda Odyssey vehicle equipped with a 9-speed Automatic Transmission.

**Michigan Sub-Class**: All individuals in the State of Michigan who purchased or leased any 2018-2019 Honda Odyssey vehicle equipped with a 9-speed Automatic Transmission.

**Ohio Sub-Class**: All individuals in the State of Ohio who purchased or leased any 2018-2019 Honda Odyssey vehicle equipped with a 9-speed Automatic Transmission.

107.    Excluded from the Class and Sub-Classes are: (1) Defendants, any entity or division in which Defendants has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the Transmission Defect alleged herein.  Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

108.    There is a well-defined community of interest in the litigation and each subclass is readily ascertainable.

109.    <u>Numerosity</u>:  Although the exact number of prospective class members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of prospective class members' claims in a single action will provide substantial benefits to all parties and to the Court.  The prospective class members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the departments of motor vehicles of the various states.

110.    <u>Typicality</u>: The claims of the representative Plaintiffs are typical of the claims of the all prospective class members in that the representative Plaintiffs and the prospective class members purchased and leased a Class Vehicle designed, manufactured, and distributed by Honda and equipped with a defective ZF 9HP Automatic Transmission.  The representative Plaintiffs, like all prospective class members, have been damaged by Defendants' misconduct in

that they have incurred or will incur the cost of repairing or replacing the defective transmission. Furthermore, the factual bases of Honda's misconduct are common to all prospective class members and represent a common thread resulting in injury to all prospective class members.

111.    Commonality: There are numerous questions of law and fact common to Plaintiffs and the prospective class members that predominate over any question affecting individual prospective class members.  These common legal and factual issues include the following:

(a)    Whether Class Vehicles contain defects relating to the ZF 9HP Automatic Transmission;

(b)    Whether the defects relating to the ZF 9HP Automatic Transmission constitute an unreasonable safety risk;

(c)    Whether Defendants knew about the defects relating to the ZF 9HP Automatic Transmission and, if so, how long Defendants has known of the defect;

(d)    Whether the defective nature of the ZF 9HP Automatic Transmission constitutes a material fact;

(e)    Whether Defendants has a duty to disclose the defective nature of the ZF 9HP Automatic Transmission to Plaintiffs and prospective class members;

(f)    Whether Plaintiffs and the prospective class members are entitled to equitable relief, including a preliminary and/or permanent injunction;

(g)    Whether Defendants knew or reasonably should have known of the defects relating to the ZF 9HP Automatic Transmission before selling and leasing Class Vehicles to prospective class members;

(h)    Whether Defendants should be declared financially responsible for notifying all prospective class members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective ZF 9HP Automatic Transmission;

(i)    Whether Defendants is obligated to inform prospective class members of

their right to seek reimbursement for having paid to diagnose, repair, or

replace the defective ZF 9HP Automatic Transmission; and

(j)   Whether Defendants breached the implied warranty of merchantability

pursuant to the Song-Beverly Act.

112.   Adequate Representation:  Plaintiffs will fairly and adequately protect the

interests of the Class Members.  Plaintiffs has retained attorneys experienced in the prosecution

of class actions, including consumer and product defect class actions, and Plaintiffs intends to

prosecute this action vigorously.

113.   Predominance and Superiority:  Plaintiffs and Class Members have all suffered

and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful

conduct. A class action is superior to other available methods for the fair and efficient

adjudication of the controversy.  Absent a class action, most Class Members would likely find

the cost of litigating their claims prohibitively high and would therefore have no effective

remedy at law. Because of the relatively small size of the individual Class Members' claims, it

is likely that only a few Class Members could afford to seek legal redress for Defendants'

misconduct.  Absent a class action, Class Members will continue to incur damages, and

Defendants' misconduct will continue without remedy. Class treatment of common questions of

law and fact would also be a superior method to multiple individual actions or piecemeal

litigation in that class treatment will conserve the resources of the courts and the litigants and

will promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**

**(Violation of the Florida Deceptive and Unfair Trade Practices Act**

**F.S.A. §§ 501.201-.213)**

114.   Plaintiffs incorporate by reference the allegations contained in the preceding

paragraphs of this complaint.

115.   Browning brings this cause of action on her own behalf and on behalf of the

members of the Florida Sub-Class.

116.   Honda's business acts and practices alleged herein constitute unfair,

unconscionable and/or deceptive methods, acts or practices under the Florida Deceptive and Unfair Trade Practices Act, § 501.201, *et seq*., Florida Statutes ("FDUTPA").

117.  At all relevant times, Browning and the Florida Sub-Class Members were "consumers" within the meaning of the FDUTPA. F.S.A. § 501.203(7).

118.  Honda's conduct, as set forth herein, occurred in the conduct of "trade or commerce" within the meaning of the FDUTPA. F.S.A. § 501.203(8).

119.  The practices of Honda, described above, violate the FDUTPA for, *inter alia*, one or more of the following reasons:

> (a)  Honda represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;
>
> (b)  Honda provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the ZF 9HP transmissions;
>
> (c)  Honda represented that goods or services were of a particular standard, quality, or grade, when they were of another;
>
> (d)  Honda engaged in unconscionable commercial practices in failing to reveal material facts and information about the ZF 9HP transmissions, which did, or tended to, mislead Browning and the Florida Sub-Class Members about facts that could not reasonably be known by the consumer;
>
> (e)  Honda failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;
>
> (f)  Honda caused Browning and the Florida Sub-Class Members to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct;
>
> (g)  Honda failed to reveal material facts to Browning and the Florida Class with the intent that Browning and the Florida Sub-Class Members rely

1    upon the omission;

2    (h)    Honda made material representations and statements of fact to Browning

3    and the Florida Sub-Class Members that resulted in Browning and the

4    Florida Sub-Class Members reasonably believing the represented or

5    suggested state of affairs to be other than what they actually were;

6    (i)    Honda intended that Browning and the Florida Sub-Class Members rely

7    on their misrepresentations and omissions, so that Browning and the

8    Florida Sub-Class Members would purchase vehicles equipped with the

9    ZF 9HP transmissions.

10    120.    Honda's actions impact the public interest because Browning and the Florida

11    Sub-Class Members were injured in exactly the same way as thousands of others purchasing

12    and/or leasing the vehicles with ZF 9HP transmissions as a result of and pursuant to Honda's

13    generalized course of deception.

14    121.    Had Browning and the Florida Sub-Class Members known of the defective

15    nature of the ZF 9HP transmissions, they would not have purchased or leased vehicles equipped

16    with the ZF 9HP transmissions or would have paid less for them.

17    122.    The foregoing acts, omissions and practices proximately caused Browning and

18    the Florida Sub-Class Members to suffer actual damages in the form of, *inter alia*, overpaying

19    for the vehicles, as well as diminution in value of the vehicles equipped with ZF 9HP

20    transmissions, and they are entitled to recover such damages, together with all other appropriate

21    damages, attorneys' fees and costs of suit.

**SECOND CAUSE OF ACTION**

**(Breach of Implied Warranty**

**F.S.A. §§ 672.314 and 680.212)**

25    123.    Plaintiffs incorporate by reference the allegations contained in the preceding

26    paragraphs of this complaint.

27    124.    Browning brings this cause of action on her own behalf and on behalf of the

28    members of the Florida Sub-Class.

125.    Honda is and was at all relevant times a "merchant" with respect to motor vehicles under F.S.A. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

126.    With respect to leases, Honda is and was at all relevant times a "lessor" of motor vehicles under F.S.A. § 680.1031(1)(p).

127.    The Class Vehicles are and were at all relevant times "goods" within the meaning of F.S.A. §§ 672.105(1) and 680.1031(1)(h).

128.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under F.S.A. §§ 672.314 and 680.212.

129.    Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Honda directly sold and marketed vehicles equipped with the ZF 9HP transmissions to customers through authorized dealers, like those from whom Browning and the Florida Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. Honda knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Browning and the Florida Sub-Class Members, with no modification to the defective transmissions.

130.    Honda provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

131.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by Honda were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

132.    Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe

transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design or manufacture of their transmissions and the existence of the Transmission Defect at the time of sale or lease and thereafter. Honda knew of this defect at the time these sale or lease transactions occurred.

133.    As a result of Honda's breach of the applicable implied warranties, Browning and the Florida Sub-Class Members of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Browning and the Florida Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

134.    Honda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of F.S.A. §§ 672.314 and 680.212.

135.    Browning and the Florida Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein.

136.    Browning and the Florida Sub-Class Members were not required to notify Honda of the breach because affording Honda a reasonable opportunity to cure its breach of written warranty would have been futile. Honda was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal sources.

137.    As a direct and proximate cause of Honda's breach, Browning and the Florida Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Browning and the Florida Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

138.    As a direct and proximate result of Honda's breach of the implied warranty of

1  merchantability, Browning and the Florida Sub-Class Members have been damaged in an

2  amount to be proven at trial.

**THIRD CAUSE OF ACTION**

3

**(Violation of the Ohio Consumer Sales Practices Act**

4

**OHIO REV. CODE ANN. § 1345.01 *et seq*.)**

5

6  139.    Plaintiffs incorporate by reference the allegations contained in the preceding

7  paragraphs of this complaint.

8  140.    The Pappases bring this cause of action on their own behalf and on behalf of the

9  members of the Ohio Sub-Class.

10  141.    The Pappases and the Ohio Sub-Class Members are "consumers" as defined by

11  the Ohio Consumer Sales Practices Act, OHIO REV. CODE ANN. § 1345.01 ("Ohio CSPA").

12  142.    Honda is a "supplier" as defined by the Ohio CSPA.

13  143.    The Pappases' and the Ohio Sub-Class Members' purchases or leases of Class

14  Vehicles were "consumer transactions" as defined by the Ohio CSPA.

15  144.    The Ohio CSPA, OHIO REV. CODE ANN. § 1345.02, broadly prohibits "an

16  unconscionable act or practice in connection with a consumer transaction." Specifically, and

17  without limitation of the broad prohibition, the Act prohibits suppliers from representing "(1)

18  That the subject of a consumer transaction has sponsorship, approval, performance

19  characteristics, accessories, uses, or benefits that it does not have; [and] (2) That the subject of a

20  consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it

21  is not." OHIO REV. CODE ANN. § 1345.02. Defendants' conduct as alleged above and below

22  constitutes unfair and unconscionable acts or practices in consumer sales transactions in

23  violation of OHIO REV. CODE ANN. § 1345.02. By concealing the known defects in the Class

24  Vehicles, Honda participated in unconscionable acts and practices that violated the Ohio CSPA.

25  145.    Honda participated in misleading, false, or deceptive acts that violated the Ohio

26  CSPA as described below and alleged throughout the Complaint. By failing to disclose the

27  Transmission Defect, by concealing the Transmission Defect, by marketing its vehicles as safe,

28  reliable, easily operable, efficient, and of high quality, and by presenting itself as a reputable

manufacturer that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, Honda knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. Honda systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Transmission Defect in the course of its business.

146.    Honda also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

147.    Honda's unfair and deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

148.    Honda knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

149.    Honda knew or should have known that its conduct violated the Ohio CSPA.

150.    The Pappases and the Ohio Sub-Class Members reasonably relied on Honda's misrepresentations and omissions of material facts in its advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

151.    Had the Pappases and the Ohio Sub-Class Members known that the Class Vehicles would exhibit the Transmission Defect, they would not have purchased or leased the Class Vehicles or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of Honda's misconduct.

152.    Honda owed the Pappases and the Ohio Sub-Class Members a duty to disclose the truth about the Transmission Defect because Honda: (a) possessed exclusive knowledge of the Class Vehicles and the Transmission Defect; (b) intentionally concealed the foregoing from the Pappases and the Ohio Sub-Class Members; and/or (c) made incomplete representations regarding the quality and durability of the Class Vehicles, while purposefully withholding

1   material facts from the Pappases and the Ohio Sub-Class Members that contradicted these

2   representations.

3        153.   Due to Honda's specific and superior knowledge that the transmissions in the

4   Class Vehicles will fail due to the Transmission Defect, its false representations regarding the

5   increased durability of the Class Vehicles, and reliance by the Pappases and the Ohio Sub-Class

6   Members on these material representations, Honda had a duty to disclose to Class members that

7   the ZF 9HP transmissions will cause failure in Class Vehicles, that Class Vehicles do not have

8   the expected durability, reliability, and/or safety over other vehicles or of their predecessor

9   transmissions, that failure of the ZF 9HP transmissions will cause damage to Class Vehicle

10  engines and engine systems, and that Class members would be required to bear the cost of the

11  damage to their vehicles. Having volunteered to provide information to the Pappases and the

12  Ohio Sub-Class Members, Honda had the duty to disclose not just the partial truth, but the entire

13  truth. These omitted and concealed facts were material because they directly impact the value of

14  the Class Vehicles purchased or leased by the Pappases and the Ohio Sub-Class Members.

15  Longevity, durability, performance, and safety are material concerns to Honda consumers.

16  Honda represented to the Pappases and the Ohio Sub-Class Members that they were purchasing

17  or leasing vehicles that were durable, reliable, safe, efficient, of high quality, and containing

18  transmissions of advanced and superior characteristics and technology as alleged throughout this

19  Complaint, when in fact it is only a matter of time before the transmissions fail due to the

20  Transmission Defect.

21       154.   The Pappases and the Ohio Sub-Class Members suffered injury in fact to a

22  legally protected interest. As a result of Honda's conduct, the Pappases and the Ohio Sub-Class

23  Members were harmed and suffered actual damages in the form of the diminished value of their

24  vehicles.

25       155.   As a result of Honda's conduct, the Pappases and the Ohio Sub-Class Members

26  were harmed and suffered actual damages as a result of Honda's misrepresentations and

27  omissions with regard to their Class Vehicles' transmissions because they purchased vehicles

28  which do not perform as advertised.

156.    As a direct and proximate result of Honda's unfair or deceptive acts or practices, the Pappases and the Ohio Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

157.    Defendants' violations present a continuing risk to the Pappases and the Ohio Sub-Class Members as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

158.    Plaintiffs seek actual damages, plus an amount not exceeding $5,000 in noneconomic damages, an order enjoining Honda's deceptive and unfair conduct, court costs and attorneys' fees as a result of Defendants' violations of the Ohio CSPA as provided in OHIO REV. CODE ANN. § 1345.09.

### FOURTH CAUSE OF ACTION

### (Breach of the Implied Warranty of Merchantability

### OHIO REV. CODE ANN. §§ 1302.27 and 1310.19)

159.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

160.    The Pappases brings this cause of action on their own behalf and on behalf of the members of the Ohio Sub-Class.

161.    Honda is and was at all relevant times a "merchant" with respect to motor vehicles under OHIO REV. CODE ANN. §§ 1302.01(5) and 1310.01(A)(20), and a "seller" of motor vehicles under § 1302.01(4).

162.    With respect to leases, Honda is and was at all relevant times a "lessor" of motor vehicles under OHIO REV. CODE ANN. § 1310.01(A)(20).

163.    The Class Vehicles are and were at all relevant times "goods" within the meaning of OHIO REV. CODE ANN. §§ 1302.01(8) and 1310.01(A)(8).

164.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under OHIO REV. CODE ANN. §§ 1302.27 and 1310.19.

165.    Honda knew or had reason to know of the specific use for which the Class

Vehicles were purchased or leased. Honda directly sold and marketed vehicles equipped with the ZF 9HP transmissions to customers through authorized dealers, like those from whom the Pappases and the Ohio Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. Honda knew that the Class Vehicles would and did pass unchanged from the authorized dealers to the Pappases and the Ohio Sub-Class Members, with no modification to the defective transmissions.

166.    Honda provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

167.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by Honda were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

168.    Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design or manufacture of their transmissions and the existence of the Transmission Defect at the time of sale or lease and thereafter. Honda knew of this defect at the time these sale or lease transactions occurred.

169.    As a result of Honda's breach of the applicable implied warranties, the Pappases and the Ohio Sub-Class Members of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, the Pappases and the Ohio Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

170.    Honda's actions, as complained of herein, breached the implied warranty that the

1    Class Vehicles were of merchantable quality and fit for such use in violation of OHIO REV.

2    CODE ANN. §§ 1302.27 and 1310.19.

3          171.    The Pappases and the Ohio Sub-Class Members have complied with all

4    obligations under the warranty, or otherwise have been excused from performance of said

5    obligations as a result of Honda's conduct described herein.

6          172.    The Pappases and the Ohio Sub-Class Members were not required to notify

7    Honda of the breach because affording Honda a reasonable opportunity to cure its breach of

8    written warranty would have been futile. Honda was also on notice of the Transmission Defect

9    from the complaints and service requests it received from Plaintiffs and the Class Members,

10    from repairs and/or replacements of the transmissions or components thereof, and through other

11    internal sources.

12          173.    As a direct and proximate cause of Honda's breach, the Pappases and the Ohio

13    Sub-Class Members suffered damages and continue to suffer damages, including economic

14    damages at the point of sale or lease and diminution of value of their Class Vehicles.

15    Additionally, the Pappases and the Ohio Sub-Class Members have incurred or will incur

16    economic damages at the point of repair in the form of the cost of repair.

17          174.    As a direct and proximate result of Honda's breach of the implied warranty of

18    merchantability, the Pappases and the Ohio Sub-Class Members have been damaged in an

19    amount to be proven at trial.

20                       **FIFTH CAUSE OF ACTION**

21               **(Violation of the Michigan Consumer Protection Act**

22                  **MICH. COMP. LAWS § 445.903 *et seq.*)**

23          175.    Plaintiffs incorporate by reference the allegations contained in the preceding

24    paragraphs of this complaint.

25          176.    The Wescotts ("The Wescotts") brings this cause of action on their own behalf

26    and on behalf of the members of the Michigan Sub-Class.

27          177.    The Wescotts and the Michigan Sub-Class Members are "person[s]" within the

28    meaning of the MICH. COMP. LAWS § 445.902(1)(d).

178.   Honda is a "person" engaged in "trade or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d).

179.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including: "(c) Representing that goods or services have . . . characteristics . . . that they do not have;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1).

180.   Honda participated in misleading, false, or deceptive acts that violated the Michigan CPA as described below and alleged throughout the Complaint. By failing to disclose the Transmission Defect, by concealing the Transmission Defect, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, Honda knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. Honda systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Transmission Defect in the course of its business.

181.   Honda also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

182.   Honda's unfair and deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

1    183.    Honda knew that the Class Vehicles and their transmissions suffered from an

2    inherent defect, were defectively designed or manufactured, and were not suitable for their

3    intended use.

4    184.    Honda knew or should have known that its conduct violated the Michigan CPA.

5    185.    The Wescotts and the Michigan Sub-Class Members reasonably relied on

6    Honda's misrepresentations and omissions of material facts in its advertisements of the Class

7    Vehicles and in the purchase of the Class Vehicles.

8    186.    Had the Wescotts and the Michigan Sub-Class Members known that the Class

9    Vehicles would exhibit the Transmission Defect, they would not have purchased or leased the

10    Class Vehicles or would have paid less for them. Plaintiffs did not receive the benefit of their

11    bargain as a result of Honda's misconduct.

12    187.    Honda owed the Wescotts and the Michigan Sub-Class Members a duty to

13    disclose the truth about the Transmission Defect because Honda: (a) possessed exclusive

14    knowledge of the Class Vehicles and the Transmission Defect; (b) intentionally concealed the

15    foregoing from the Wescotts and the Michigan Sub-Class Members; and/or (c)  made

16    incomplete representations regarding the quality and durability of the Class Vehicles, while

17    purposefully withholding material facts from the Wescotts and the Michigan Sub-Class

18    Members that contradicted these representations.

19    188.    Due to Honda's specific and superior knowledge that the transmissions in the

20    Class Vehicles will fail due to the Transmission Defect, its false representations regarding the

21    increased durability of the Class Vehicles, and reliance by the Wescotts and the Michigan Sub-

22    Class Members on these material representations, Honda had a duty to disclose to Class

23    members that the ZF 9HP transmissions will cause failure in Class Vehicles, that Class Vehicles

24    do not have the expected durability, reliability, and/or safety over other vehicles or of their

25    predecessor transmissions, that failure of the ZF 9HP transmissions will cause damage to Class

26    Vehicle engines and engine systems, and that Class members would be required to bear the cost

27    of the damage to their vehicles. Having volunteered to provide information to the Wescotts and

28    the Michigan Sub-Class Members, Honda had the duty to disclose not just the partial truth, but

the entire truth. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased or leased by the Wescotts and the Michigan Sub-Class Members and could not reasonably be known by the consumer. Longevity, durability, performance, and safety are material concerns to Honda consumers. Honda represented to the Wescotts and the Michigan Sub-Class Members that they were purchasing or leasing vehicles that were durable, reliable, safe, efficient, of high quality, and containing transmissions of advanced and superior characteristics and technology as alleged throughout this Complaint, when in fact it is only a matter of time before the transmissions fail due to the Transmission Defect.

189.    The Wescotts and the Michigan Sub-Class Members suffered injury in fact to a legally protected interest. As a result of Honda's conduct, The Wescotts and the Michigan Sub-Class Members were harmed and suffered actual damages in the form of the diminished value of their vehicles.

190.    As a result of Honda's conduct, the Wescotts and the Michigan Sub-Class Members were harmed and suffered actual damages as a result of Honda's misrepresentations and omissions with regard to their Class Vehicles' transmissions because they purchased vehicles which do not perform as advertised.

191.    As a direct and proximate result of Honda's unfair or deceptive acts or practices, The Wescotts and the Michigan Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

192.    Defendants' violations present a continuing risk to the Wescotts and the Michigan Sub-Class Members as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

193.    The Wescotts and the Michigan Sub-Class Members seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 per each Plaintiff; and reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws MICH. COMP. LAWS damages against Honda because it carried out despicable conduct with willful and conscious disregard of

the rights and safety of others. Honda's conduct constitutes malice, oppression, and fraud warranting punitive damages.

## SIXTH CAUSE OF ACTION

### (Breach of Express Warranty

### MICH. COMP. LAWS §§ 440.2313 and 440.2860)

194.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

195.   The Wescotts brings this cause of action on their own behalf and on behalf of the members of the Michigan Sub-Class.

196.   Honda is and was at all relevant times a "merchant" with respect to motor vehicles under MICH. COMP. LAWS §§ 440.2104(1) and a "seller" of motor vehicles under § 440.2103(1)(c).

197.   With respect to leases, Honda is and was at all relevant times a "lessor" of motor vehicles under MICH. COMP. LAWS § 440.2803(1)(p).

198.   The Class Vehicles are and were at all relevant times "goods" within the meaning of MICH. COMP. LAWS §§ 440.2105(1) and 440.2803(1)(h).

199.   Honda provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

200.   Honda provided all purchasers and lessees of Cadillac-branded Class Vehicles with the Cadillac Warranty and all purchasers and lessees of Chevrolet or Honda-branded Class Vehicles with the Chevrolet/Honda Warranty.

201.   Under the Warranties, Honda expressly warranted the following: This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Honda." Likewise, Honda's Powertrain Warranty provides in relevant part that "This warranty covers repairs needed to correct defects in materials or workmanship of any component listed below and in the next column and supplied by Honda." The "transmission and transaxle" are among the parts covered by the Powertrain Warranty."

202.   According to Honda, the Basic Warranty coverage for Honda models "is for 36

1  months or 36,000 miles, whichever occurs first…" The Powertrain warranty coverage "is for 60

2  months or 60,000 miles, whichever occurs first."

3      203.    Honda manufactured and/or installed the ZF 9HP transmissions and the

4  transmissions' component parts in the Class Vehicles, and the ZF 9HP transmissions and their

5  component parts are covered by the express Warranties.

6      204.    The Transmission Defect at issue in this litigation was present at the time the

7  Class Vehicles were sold or leased to the Wescotts and the Michigan Sub-Class Members.

8      205.    Plaintiffs relied on Honda's express warranties, which were a material part of the

9  bargain, when purchasing or leasing their Class Vehicles.

10     206.    Under the express Warranties, Honda was obligated to correct the Transmission

11 Defect in the vehicles owned or leased by the Wescotts and the Michigan Sub-Class Members.

12     207.    Although Honda was obligated to correct the Transmission Defect, none of the

13 attempted fixes to the transmissions are adequate under the terms of the Warranties, as they did

14 not cure the defect.

15     208.    Honda breached the express Warranties by performing illusory repairs. Rather

16 than repairing the vehicles pursuant to the express Warranties, Honda falsely informed

17 Michigan Sub-Class Members that there was no problem with their Class Vehicles, performed

18 ineffective procedures including software updates, and/or replaced defective components in the

19 ZF 9HP transmissions with equally defective components, without actually repairing the Class

20 Vehicles.

21     209.    Honda and its agent dealers have failed and refused to conform the ZF 9HP

22 transmissions to the express Warranties. Honda's conduct, as discussed throughout this

23 Complaint, has voided any attempt on its part to disclaim liability for its actions.

24     210.    Moreover, Honda's attempt to disclaim or limit these express Warranties vis-à-

25 vis consumers is unconscionable and unenforceable under the circumstances here. Specifically,

26 Honda's warranty limitation is unenforceable because it knowingly sold a defective product

27 without informing consumers about the defect.

28     211.    The time limits contained in Honda's warranty period were also unconscionable

and inadequate to protect the Wescotts and the Michigan Sub-Class Members. Among other things, the Wescotts and the Michigan Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and the Class members, and Honda knew or should have known that the Class Vehicles were defective at the time of sale.

212.    The Wescotts and the Michigan Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein.

213.    The Wescotts and the Michigan Sub-Class Members were not required to notify Honda of the breach because affording Honda a reasonable opportunity to cure its breach of written warranty would have been futile. Honda was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal and external sources.

214.    Because Honda, through its conduct and exemplified by its own service bulletins, has covered repairs of the Transmission Defect if Honda determines the repairs are appropriately covered under the Warranties, Honda cannot now deny that the Warranties cover the Transmission Defect.

215.    Because Honda has not been able to remedy the Transmission Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

216.    As a direct and proximate cause of Honda's breach, the Wescotts and the Michigan Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, the Wescotts and the Michigan Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

217.    As a direct and proximate result of Honda's breach of express warranties, the Wescotts and the Michigan Sub-Class Members have been damaged in an amount to be

1    determined at trial.

2                              **SEVENTH CAUSE OF ACTION**

3                  **(Breach of the Implied Warranty of Merchantability**

4                  **MICH. COMP. LAWS §§ 440.2314 and 440.2860)**

5    218.    Plaintiffs incorporate by reference the allegations contained in the preceding

6    paragraphs of this complaint.

7    219.    The Wescotts brings this cause of action on their own behalf and on behalf of the

8    members of the Michigan Sub-Class.

9    220.    Honda is and was at all relevant times a "merchant" with respect to motor

10   vehicles under MICH. COMP. LAWS §§ 440.2104(1) and a "seller" of motor vehicles under §

11   440.2103(1)(c).

12   221.    With respect to leases, Honda is and was at all relevant times a "lessor" of motor

13   vehicles under MICH. COMP. LAWS § 440.2803(1)(p).

14   222.    The Class Vehicles are and were at all relevant times "goods" within the meaning

15   of MICH. COMP. LAWS §§ 440.2105(1) and 440.2803(1)(h).

16   223.    A warranty that the Class Vehicles were in merchantable condition and fit for the

17   ordinary purpose for which vehicles are used is implied by law under MICH. COMP. LAWS §§

18   440.2314 and 440.2862.

19   224.    Honda knew or had reason to know of the specific use for which the Class

20   Vehicles were purchased or leased. Honda directly sold and marketed vehicles equipped with

21   the ZF 9HP transmissions to customers through authorized dealers, like those from whom the

22   Wescotts and the Michigan Sub-Class Members bought or leased their vehicles, for the intended

23   purpose of consumers purchasing the vehicles. Honda knew that the Class Vehicles would and

24   did pass unchanged from the authorized dealers to the Wescotts and the Michigan Sub-Class

25   Members, with no modification to the defective transmissions.

26   225.    Honda provided Plaintiffs and Class Members with an implied warranty that the

27   Class Vehicles and their components and parts are merchantable and fit for the ordinary

28   purposes for which they were sold.

226.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by Honda were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

227.    Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design or manufacture of their transmissions and the existence of the Transmission Defect at the time of sale or lease and thereafter. Honda knew of this defect at the time these sale or lease transactions occurred.

228.    As a result of Honda's breach of the applicable implied warranties, the Wescotts and the Michigan Sub-Class Members of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, the Wescotts and the Michigan Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

229.    Honda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of MICH. COMP. LAWS §§ 440.2314 and 440.2862.

230.    The Wescotts and the Michigan Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein.

231.    The Wescotts and the Michigan Sub-Class Members were not required to notify Honda of the breach because affording Honda a reasonable opportunity to cure its breach of written warranty would have been futile. Honda was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members,

from repairs and/or replacements of the transmissions or components thereof, and through other internal sources.

232.    As a direct and proximate cause of Honda's breach, the Wescotts and the Michigan Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, the Wescotts and the Michigan Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

233.    As a direct and proximate result of Honda's breach of the implied warranty of merchantability, the Wescotts and the Michigan Sub-Class Members have been damaged in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**

**(Violation of California Business & Professions Code § 17200, *et seq.*)**

234.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

235.    Plaintiffs bring this cause of action on behalf of themselves and the Class.

236.    As a result of their reliance on Defendants' omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

237.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

238.    Plaintiffs and Class Members are reasonable consumers who do not expect their transmissions to exhibit problems such as: rough, delayed, or sudden shifting or failure to shift; grinding or other loud noises during shifting; harsh engagement of gears; sudden or harsh accelerations/decelerations; and sudden loss of power.

239.    Defendants knew the Class Vehicles and their transmissions suffered from

1    inherent defects, were defectively designed or manufactured, would fail prematurely, and were

2    not suitable for their intended use.

3        240.    In failing to disclose the defects with the transmission, Defendants has

4    knowingly concealed material facts and breached its duty not to do so.

5        241.    Defendants was under a duty to Plaintiffs and Class Members to disclose the

6    defective nature of the Class Vehicles and their transmissions:

7            (a)    Defendants was in a superior position to know the true state of facts about

8                the safety defect in the Class Vehicles' transmissions;

9            (b)    Defendants made partial disclosures about the quality of the Class

10               Vehicles without revealing the defective nature of the Class Vehicles and

11               their transmissions; and

12           (c)    Defendants actively concealed the defective nature of the Class Vehicles

13               and their transmissions from Plaintiffs and the Class.

14       242.    The facts regarding the Transmission Defect that the Defendants concealed from,

15   or failed to disclose to, Plaintiffs and Class Members are material in that a reasonable person

16   would have considered them to be important in deciding whether to purchase or lease Class

17   Vehicles.  Had they known that the Class Vehicles' ZF 9HP Automatic Transmissions were

18   defective and posed a safety hazard, then Plaintiffs and Class Members would not have

19   purchased or leased Class Vehicles equipped with ZF 9HP Automatic Transmissions or would

20   have paid less for them.

21       243.    Defendants continued to conceal the defective nature of the Class Vehicles and

22   their transmissions even after Class Members began to report problems.  Indeed, Defendants

23   continues to cover up and conceal the true nature of the problem.

24       244.    Defendants' conduct was and is likely to deceive consumers.

25       245.    Defendants' acts, conduct and practices were unlawful, in that they constituted:

26           (a)    Violations of the California Consumers Legal Remedies Act;

27           (b)    Violations of the Song-Berry Consumer Warranty Act;

28           (c)    Breach of Express Warranty

1          (d)      Violations of the Magnuson-Moss Warranty Act

2          246.    By its conduct, Defendants has engaged in unfair competition and unlawful,

3    unfair, and fraudulent business practices.

4          247.    Defendants' unfair or deceptive acts or practices occurred repeatedly in

5    Defendants' trade or business and were capable of deceiving a substantial portion of the

6    purchasing public.

7          248.    As a direct and proximate result of Defendants' unfair and deceptive practices,

8    Plaintiffs and the Class have suffered and will continue to suffer actual damages.

9          249.    Defendants has been unjustly enriched and should be required to make restitution

10   to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

11                              **NINTH CAUSE OF ACTION**

12                               **(For Unjust Enrichment)**

13         250.    Plaintiffs incorporate by reference the allegations contained in the preceding

14   paragraphs of this complaint.

15         251.    Plaintiffs bring this cause of action on behalf of themselves and the Class.

16         252.    As a direct and proximate result of Honda's failure to disclose known defects,

17   Honda has profited through the sale and lease of the Class Vehicles.  Although these vehicles

18   are purchased through Honda's agents, the money from the vehicle sales flows directly back to

19   Honda.

20         253.    Additionally, as a direct and proximate result of Honda's failure to disclose

21   known defects in the Class Vehicles, Plaintiffs and Class Members have vehicles that require

22   repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit

23   upon Honda.

24         254.    Honda has been unjustly enriched due to the known defects in the Class Vehicles

25   through the use money paid that earned interest or otherwise added to Honda's profits when said

26   money should have remained with Plaintiffs and Class Members.

27         255.    As a result of the Honda's unjust enrichment, Plaintiffs and Class Members have

28   suffered damages.

**RELIEF REQUESTED**

256.    Plaintiffs, on behalf of themselves and all others similarly situated, requests that the Court to enter judgment against Defendants, as follows:

    (a)    An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representative of the Class, and designating the undersigned as Class Counsel;

    (b)    A declaration that Defendants is financially responsible for notifying all Class Members about the defective nature of the ZF 9HP Automatic Transmission, including the need for periodic maintenance;

    (c)    An injunction:

    (d)    Ordering Defendants to disclose the Transmission Defect adequately with respect to Class Vehicles;

    (e)    Ordering Defendants to recall the Class Vehicles pursuant to state law;

    (f)    Ordering Defendants to repair the Class Vehicles by repairing and/or replacing the Class Vehicles' ZF 9HP Automatic Transmissions with suitable alternative product(s) that do not contain the defects alleged herein;

    (g)    Ordering Defendants to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

    (h)    A declaration requiring Defendants to comply with the various provisions of the Song-Beverly Act alleged herein and to make all the required disclosures;

    (i)    An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

    (j)    Any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794; the Magnuson-Moss Warranty Act, and for Breach of Express Warranty.

(k)     A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles, or make full restitution to Plaintiffs and Class Members;

(l)     An award of attorneys' fees and costs, as allowed by law;

(m)     An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

(n)     An award of pre-judgment and post-judgment interest, as provided by law;

(o)     Leave to amend the Complaint to conform to the evidence produced at trial; and

(p)     Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

257.     Plaintiffs demand a trial by jury of any and all issues in this action so triable.

Dated:  August 5, 2020                              Respectfully submitted,

                                                    Capstone Law APC

                                                    By: /s/ Tarek H. Zohdy
                                                    Steven R. Weinmann
                                                    Tarek H. Zohdy
                                                    Cody R. Padgett
                                                    Trisha K. Monesi

                                                    Russell D. Paul
                                                    (*pro hac vice* to be sought)
                                                    Amey J. Park
                                                    (*pro hac vice* to be sought)
                                                    Abigail J. Gertner
                                                    (*pro hac vice* to be sought)
                                                    BERGER MONTAGUE PC
                                                    1818 Market Street
                                                    Suite 3600
                                                    Philadelphia, PA 19103
                                                    Tel: (215) 875-3000
                                                    Fax: (215) 875-4604
                                                    rpaul@bm.net
                                                    apark@bm.net
                                                    agertner@bm.net

                                                    *Attorneys for Plaintiffs*