**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| RONDA ANN BROWNING, et al., | Case No. 20-cv-05417-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |
| AMERICAN HONDA MOTOR CO., INC., et al., | [Re: ECF 26] |
| Defendants. | |

This putative class action alleges a defect in 2018-2019 Honda Odysseys equipped with a 9-speed automatic transmission ("ZF 9HP Automatic Transmission" or the "Transmission"). Am. Compl. ("FAC") ¶¶ 1-3, ECF 25. Specifically, Plaintiffs allege the Transmission contains a defect causing "rough, delayed, or sudden shifting or failure to shift; grinding or other loud noises during shifting; harsh engagement of gears; sudden or harsh accelerations/decelerations; and sudden loss of power" in the 2018-2019 Honda Odysseys ("Class Vehicle"). *Id*. ¶¶ 7, 14. Before the Court is Defendant American Honda Motor Co., Inc.'s ("AHM") motion to dismiss. Mot., ECF 26. AHM asserts that the FAC is deficient in several respects. The Court heard oral argument on Defendant's motion on June 17, 2021 (the "Hearing"). *See* Min. Entry, ECF 50. For the reasons discussed below, Defendant's motion is GRANTED IN PART WITH LEAVE TO AMEND.

## I.    BACKGROUND

While Plaintiffs expect an automatic transmission to "start, accelerate, decelerate, and stop immediately in response to the driver's input," they claim that the Class Vehicles "operate

erratically, causing numerous safety concerns." FAC ¶ 9. In 2014, AHM began equipping select vehicle models with a 9-speed "automatic" transmission designed to increase fuel economy. *Id.* ¶ 3. Plaintiffs allege that the improved fuel economy came at a "significant and undisclosed cost: rough and delayed shifting, loud noises during shifting, harsh engagement of gears, sudden, harsh accelerations and decelerations, and sudden loss of power." *Id.*

According to Plaintiffs, traditional automatic transmissions use a set of gears that provide a given number of ratios. FAC ¶ 8. The transmission shifts between gears to provide the most appropriate ratio for a given situation. *Id.* According to Plaintiffs, that normally means the transmission will automatically shift into lower gears for starting, middle gears for acceleration and passing, and higher gears for more fuel-efficient cruising. *Id.* The ZF 9HP Automatic Transmission allegedly differs from traditional automatic transmissions in that it uses a 9.8 ratio spread, as opposed to 6, which "ideally allow[s] for shorter shifts between gears keeping the engine in a narrow, optimal band of RPMs for as long as possible, and contributing to greater fuel-efficiency." *Id.* While the greater-than-average ratio spread of the ZF 9HP Automatic Transmission should allow for shorter shifts between gears and greater fuel efficiency, *id.* ¶ 8, Plaintiffs allege that the Class Vehicles equipped with the Transmission "contain design defects that cause the transmission to exhibit the following: rough, delayed, or sudden shifting or failure to shift; grinding or other loud noises during shifting; harsh engagement of gears; sudden or harsh accelerations/decelerations; and sudden loss of power," *id.* ¶ 7.

The FAC explains that the ZF 9HP Automatic Transmission utilizes "dog clutches," which are more commonly found in manual transmissions. *Id.* ¶ 8. These dog clutches in the ZF 9HP Automatic Transmission are engaged by computer software commands from an electronic control unit. *Id.* The FAC cites automotive journalist Alex L. Dykes for the following explanation in an article about a ZF 9HP 9-speed transmission used in the 2014 Jeep Cherokee (not the Class Vehicle):

2

> The 9HP's software... [unlike other automatics] responds by cutting power initially, then diving as far down the gear-ladder as it can, engaging the dog clutches and then reinstating your throttle command. The result is a somewhat odd delay between the pedal on the floor and the car taking off like a bat out of hell.

*Id*. (alterations in original) (citing Alex L. Dykes, *ZF's 9-Speed 9HP Transmission Puts Dog Clutches On The Leash*, The Truth About Cars (Feb. 8, 2014), http://www.thetruthaboutcars.com/2014/02/zfs-9-speed-9hp-transmission-puts-dog-clutches-on-the-leash/ (last visited July 8, 2021).

Plaintiffs define the transmission defect in the following way:

> the Class Vehicles equipped with the ZF 9HP Automatic Transmission contain design defects that cause the transmission to exhibit the following: rough, delayed, or sudden shifting or failure to shift; grinding or other loud noises during shifting; harsh engagement of gears; sudden or harsh accelerations/decelerations; and sudden loss of power (the "Transmission Defect").

FAC ¶ 7. They allege that "the Transmission Defect causes unsafe conditions, including, but not limited to, delayed acceleration, abrupt forward propulsion, and sudden loss of power, which are hazardous because they severely affect the driver's ability to control the car." *Id.* ¶ 10. Plaintiffs specify that "these conditions may make it difficult to change lanes safely, make turns, merge into traffic, and accelerate from stop at intersections, because Class Members' vehicles can fail to respond correctly to driver's input during these normal traffic conditions." *Id.*

Plaintiffs are residents of Florida, Ohio, Michigan, South Carolina, Texas, and California that purchased 2018-2019 Honda Odysseys equipped with the Transmission. FAC ¶¶ 22, 44, 54, 65, 77, 87. Plaintiff Ronda Ann Browning (FL), Plaintiffs Divina and Brian Pappas (OH), Plaintiffs Kali and Eric Wescott (MI), Plaintiff Tony Boatwright (SC), Plaintiff Chuen Yong (TX), and Plaintiff Daniel Pina (CA) each allege a similar experience with the Class Vehicles. Each Plaintiff bought a new Class Vehicle in 2018 or 2019 in their respective state of residency. *Id.* ¶¶ 23, 45, 55, 66, 78, 88. Within the first few months of purchasing the Class Vehicle or "shortly

thereafter," each Plaintiff other than Mr. Boatwright alleges that their Class vehicle exhibited "harsh or delayed shifting and engagement, delayed accelerations, banging into gear, hesitation, jerking, shuddering, lurching, and lack of power." *Id.* ¶¶ 27, 49, 59, 78, 92. Unique to Mr. Boatwright is the allegation that his Odyssey would fail to get into gear and accelerate when slowing down and attempting to reaccelerate, lurch when the transmission would get into gear when the engine was revving, and shift and gain too much speed when going downhill *Id*. ¶ 70. Ms. Browning, Mr. and Ms. Wescott, Mr. Yong, and Mr. Pina each brought their Class Vehicles to an AHM authorized dealership for repairs on multiple occasions after experiencing the alleged performance issues. *Id.* ¶¶ 29-33, 60-61, 83-84, 93-97. Mr. and Ms. Pappas and Mr. Boatwright brought their Class Vehicles to an AHM authorized dealership for repair only once. *Id* ¶¶ 50, 71. Plaintiffs did not receive any permanent repairs when bringing their Class Vehicles to the AHM authorized dealerships. *Id* ¶¶ 29-33, 50, 60-61, 71, 83-84, 93-97.

Based on the foregoing, Plaintiffs filed suit against AHM, a California corporation and Defendant Honda Motor Company LTD, a Japanese Corporation. *See* FAC. Plaintiffs bring eighteen causes of action against Defendants including the following: violation of consumer protection laws of Florida, Ohio, Michigan, South Carolina, Texas, and California; breach of implied warranty under Florida, Ohio, Michigan, South Carolina, Texas, and California law; breach of express warranty under Michigan, South Carolina, Texas, and California law; a violation of California's Unfair Competition Law ("UCL"); and unjust enrichment. *Id*. ¶¶ 157-439. Each claim is brought on behalf of the Plaintiff residing in the respective state. *Id.* ¶¶ 158-435. The claims are also brought on behalf of a proposed nationwide class of individuals that purchased or leased a Class Vehicle, or, in the alternative, a class comprised of the same said individuals residing in the states of the respective state law claims. *Id.* The only exception is Plaintiffs' fourteenth cause of action for violation of California's Consumer Legal Remedies Act, which is

brought on behalf of Mr. Pina and the CLRA Subclass comprised of individuals defined as consumers within the CLRA. *Id.* ¶ 386.

## II.     LEGAL STANDARD

### A.     Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). In other words, "[a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

In evaluating the complaint, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). At the same time, a court need not accept as true "allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

### B. Rule 9(b)

In addition, because Plaintiffs' consumer protection claims are grounded in fraud, the FAC must also satisfy "the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (holding that claims for false or misleading advertising under the CLRA, FAL, and UCL are "grounded in fraud" and applying Rule 9(b)). To satisfy Rule 9(b), a plaintiff "must set forth *more* than the neutral facts necessary to identify the transaction," *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (emphasis in original); she must "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b). That is, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). However, other circumstances—such as intent, knowledge, and other conditions of a person's mind—"need not be pled with particularity." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016).

## III. DISCUSSION

### A. Request for Consideration of Documents Incorporated by Reference and for Judicial Notice

Generally, a motion to dismiss under Rule 12(b)(6) must rely solely on the contents of the pleadings. *See* Fed. R. Civ. P. 12(d). There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201. *Khoja v. Orexigen*

*Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Defendants have submitted four exhibits that they request the Court review in ruling on the Motion. *See* Req. for Judicial Notice ("RJN"), ECF 26-1. AHM requests that the Court incorporate-by-reference the 2018 Honda Odyssey Warranty, *see* Ex. A, 2018 Warranty, ECF 26-2; the 2019 Honda Odyssey Warranty, *see* Ex. B, 2019 Warranty, ECF 26-3; and Alex L. Dykes's article regarding the ZF 9HP 9-speed automatic transmission's dog clutches in the Jeep Cherokee, *see* Ex. C, Dog Clutch Article, ECF 26-4. RJN at 2-3. Additionally, AHM requests the Court take judicial notice of a Road and Track article titled, "11 things you need to know about the 2015 Acura TLX," which is cited in the complaint. *See* Ex. D, Road and Track Article, ECF 26-5. RJN at 3. Plaintiffs make no objection to these requests. *See* Opp., ECF 32.

Courts may "take judicial notice of documents on which allegations in the complaint necessarily rely, even if not expressly referenced in the complaint, provided that the authenticity of those documents are not in dispute." *Golub v. Gigamon Inc.*, 2019 WL 4168948, at *6 (N.D. Cal. Sept. 3, 2019). "The Court 'may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true'". *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1070 (N.D. Cal. 2016) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

The incorporation-by-reference doctrine "applies with equal force to internet pages as it does to printed material." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Courts thus routinely consider the "full page [of a] website" where, as here, "[a] portion of the page" is quoted or relied on in the complaint. *Emeco Indus., Inc. v. Restoration Hardware, Inc.*, 2012 WL 6087329, at *1 n.2 (N.D. Cal. Dec. 6, 2012). "[A] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) "The

defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Wong v. Arlo Techs., Inc.*, No. 19-CV-00372-BLF, 2019 WL 7834762, at *4 (N.D. Cal. Dec. 19, 2019) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

Regarding the Warranties, Plaintiffs allege that Defendants breached the "Basic Warranty" and "Powertrain Warranty" that come with the Class Vehicles. FAC ¶¶ 237-262, 290-314, 343-368, 424-433. The Court finds that these Warranty documents are referred to in the FAC, central to Plaintiffs' claims, and not subject to questions of authenticity. Accordingly, the Court GRANTS AHM's request to incorporate these documents by reference into the FAC.

Regarding the Dog Clutch Article, AHM argues that Plaintiffs have selectively quoted from this article in the FAC, *see* FAC ¶ 8 n.3, to support its claim that the Transmission is defective, RJN at 2. Specifically, AHM argues that Plaintiffs' quote about the "somewhat odd delay between the pedal on the floor and the car taking off like a bat out of hell," lacks the context that the author says this happens *when you floor the car*, which is not what Plaintiffs allege to have done when experiencing the defect. RJN at 2-3. Defendants also argue that Plaintiffs omitted the author's conclusion that the shifting sensation experienced by some drivers using the ZF 9HP makes "perfect sense" despite "feel[ing] different" from less fuel-efficient cars. *Id*. at 3. The Court finds it appropriate to GRANT AHM's request to incorporate-by-reference the Dog Clutch Article into the FAC. *See In Re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No. 16-CV-06391-BLF, 2020 WL 7664461, at *4 (N.D. Cal. Dec. 24, 2020) ("The incorporation-by-reference doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.") (internal quotation omitted).

The Court also GRANTS AHM's unopposed request to take judicial notice of the Road and Track Article that is referenced in the FAC, *see* FAC ¶ 4, which was in the public realm at the

time.

### B.    Failure to Adequately Allege a Defect

AHM first argues that all of Plaintiffs' claims should be dismissed because all of Plaintiffs' claims rely on the existence of a defect, and Plaintiffs do not adequately plead a defect. Mot. at 4-6. Citing the Dog Clutch Article referenced in the FAC, ¶ 8 n.3, AHM argues that the symptoms Plaintiffs describe are not symptoms of a defect but instead are expected side effects of the Transmission's fuel-efficient design. Mot. at 4-5. AHM further argues that Plaintiffs fail to satisfy Federal Rule of Civil Procedure 8 because Plaintiffs must plead what they believe the defect to be, but instead they have only pled a conclusory allegation that there is a defect and its attendant symptoms. *Id*. at 5-6. In opposition, Plaintiffs argue that, whether the Class Vehicles are operating as intended is a factual question improperly raised in the Motion. Opp. at 2. Plaintiffs further argue that they sufficiently plead the defect is a malfunction in software and computers controlling the transmission. *Id*. at 4. While Plaintiffs correctly assert that whether the Transmission is operating as intended is a question of fact inappropriate for the Court to rule on at this stage of the litigation, the Court agrees with AHM that Plaintiffs have only pled symptoms of a defect and have not given AHM proper notice of what, exactly, it must defend.

To adequately plead a product defect, the Ninth Circuit has generally instructed that a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Further, a complaint must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*. "In the context of product defect claims, district courts in the Ninth Circuit have often held that a complaint provides fair notice of the defect if it (1) identifies the particular part or system affected by the defect, and (2) describes the problems allegedly caused by the defect."

*Clark v. Am. Honda Motor Co.*, No. CV 20-03147 AB (MRWx), 2021 WL 1186338, at *3 (C.D. Cal. Mar. 25, 2021).

In *Pelayo v. Hyundai Motor America, Inc.*, the court held that the plaintiffs failed to sufficiently plead a defect because they merely pled symptoms of an unspecified malfunction. No. 8:20-cv-01503-JLS, 2021 WL 1808628, at *5 (C.D. Cal. May 5, 2021). There, the plaintiffs alleged that the relevant vehicles were catching fire while driving. *Id.* at *1. The plaintiffs alleged that the engines were "prone to the build-up of carbon residue, excessive oil consumption, and flash burns in the cylinders" as the result of insufficient quality control in production during a spike in demand. *Id.* at *5. On that basis, the plaintiffs argued that that they had sufficiently alleged a defect "because they [had] pleaded *how* the defect occurred." *Id.* (emphasis in original). However, the court in *Pelayo* held the engines being prone to the buildup of carbon residue, excessive oil consumption, and flash burns in the cylinders are "generalized and disparate symptoms [that] fail to put [defendants] on notice of any specific defect." *Id.* The court explained, "[p]laintiffs' theory that [d]efendants . . . failed to prevent *some* defect in the [engines] is, again, insufficient notice of *what* defect is at issue." *Id.* (emphasis in original).

In *Clark*, the court held that the plaintiffs had successfully pled a defect because the complaint "(1) identifie[d] the particular part or system affected by the defect, and (2) describe[d] the problems allegedly caused by the defect." 2021 WL 1186338, at *3. There, the plaintiffs experienced "unintended and uncontrollable deceleration, engine stalls, hesitation upon depressing the gas pedal, abrupt shutdowns, and shifts into neutral while driving" certain Acura vehicles. *Id.* Following a description of the symptoms associated with the relevant defect, the plaintiffs defined their defect as follows:

> *These issues are the result of a miscommunication among the computers and software which control the engine, throttle and transmission* (the "Defect(s)"). Upon information and belief, the Engine Control Module ("ECM") and the Transmission Control Module ("TCM") are some of the components involved. The Defect

10

> causes unsafe driving conditions and affects Plaintiffs' and other drivers' ability to safely accelerate and maintain speeds while on roads, highways, and freeways.

*Id*. at *3 (emphasis added). The court in *Clark* held that the plaintiffs had adequately "identified the components and systems involved in the alleged defect, and the resulting symptoms of the defect." *Id*.

The pleadings here resemble those in *Pelayo* rather than *Clark*. Like in *Pelayo*, Plaintiffs here have failed to plead facts beyond the symptoms of the alleged defects. The FAC defines the "Transmission Defect" as "design defects that cause the transmission to exhibit the following: rough, delayed, or sudden shifting or failure to shift; grinding or other loud noises during shifting; harsh engagement of gears; sudden or harsh accelerations/decelerations; and sudden loss of power." FAC ¶ 7. In the words of the *Pelayo* court, Plaintiffs have pled that Defendants "have failed to prevent *some* defect in the [engine]" which is "insufficient notice of *what* defect is at issue." 2021 WL 1808628, at *5.

Consistent with *Clark*, this Court finds that Plaintiffs must identify the particular part affected by the defect and the defects symptoms. 2021 WL 1186338, at *3. Plaintiffs have fallen short of that standard. Though Plaintiffs identify the Transmission as the system affected by the defect, similarly situated courts have found the same identification to be too general. *See Callaghan v. BMW of N. Am., LLC*, No. 13-CV-04794-JD, 2014 WL 6629254, at *3 (N.D. Cal. Nov. 21, 2014) ("Under the current vague generalities, the scope of discovery arguably would include a request calling for defendants to produce everything relating to the automatic transmissions of the [relevant] vehicles."), *DeCoteau v. FCA US LLC*, No. 2:15-cv-00020-MCE, 2015 WL 6951296, at *3 (E.D. Cal. Nov. 10, 2015) ("Plaintiffs must go further than a conclusory allegation that the Transmission Defect exists and is responsible for the injuries outlined in the FAC because automatic transmissions [] are complicated systems that demand more detailed factual allegations in order to identify a plausible defect."). The Transmission is composed of

11

innumerable component parts and interrelated systems, as evidenced by the FAC, and its cited articles references to numerous parts and systems within or related to the Transmission. *See generally* FAC. Even though the FAC references these parts and systems, Plaintiffs provide no subsequent explanation in the FAC regarding why the symptoms occur or what parts within the Transmission are affected comparable to the plaintiffs' explanation in *Clark*, which identified that the "issues are the result of a miscommunication among the computers and software which control the engine, throttle and transmission . . . ." 2021 WL 1186338, at *3.

In their opposition, Plaintiffs claim the symptoms of the Transmission defect are the result of improper calibration in the electronic control unit's software commands that control "dog clutches" used in the Transmission. Opp. at 4 (citing FAC ¶¶ 7-9, 14). However, no such allegation is made in the FAC. Paragraphs 7, 8, 9, and 14 of the FAC cited in Plaintiffs' opposition simply recite the performance issues experienced by Plaintiffs and describe the mechanics of the Transmission. FAC ¶¶ 7-9, 14. And the allegation in paragraph 8, taken from the Dog Clutch Article written about the ZF's 9HP 9-speed transmission as used in the Jeep Cherokee, cannot support Plaintiffs defect claims, because this allegation describes what the software and dog clutches do "when you floor the car," which is not the activity any Plaintiff alleges. FAC ¶ 8, Dog Clutch Article at 4-5. While the FAC does reference Technical Service Bulletins ("TCBs") regarding software repairs to *other* vehicles equipped with the Transmission, it does not allege a malfunction in the operation of any software or electronic control unit in the Class Vehicles. *Id*. ¶¶ 116-19, 123-24, 130, 132-33. Some of the TCBs in the FAC directed authorized dealers to perform updates to the Transmission Control Module's software in the past. *Id*. However, Plaintiffs do not plead that these are the same parts in the Class Vehicles afflicted by the "design defects that cause the transmission to exhibit" the alleged symptoms. *Id*. ¶ 7. Other TSBs referenced in the FAC address different malfunctions or components related to the Transmission, including the transmission end cover sealing gasket, *Id*. ¶ 120, automatic transmission fluid

temperature sensor, *Id*. ¶ 121, debris in the shifter assembly, *Id*. ¶ 122, a transmission case casting flaw, *Id*. ¶ 125, and improperly manufactured transmission warmers, *Id*. ¶ 126. Without pleading the defect with greater specificity, AHM is open to potentially endless discovery regarding each of these parts and systems. Because this amorphous defect allegation could unfairly subject Defendant to the expense of prolonged discovery and continued litigation, Plaintiffs have failed "to give fair notice and to enable the [Defendant] to defend itself effectively." *Starr*, 652 F.3d at 1216. Further, later in their brief, Plaintiffs explicitly state that "what Plaintiffs have alleged is a problem with the transmission that could well be caused by a defect in the software or hardware during manufacture." Opp. at 10-11. But this argument undermines the notion that the FAC clearly indicates "the result of employing [the] software [controlling the dog clutches] is erratic operation, delayed acceleration, and the other symptoms of the Defect." *Id*. at 4.

At the Hearing, Plaintiffs identified *Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043 (C.D. Cal. 2020) and *Victorino v. FCA US LLC,* 2016 WL 6441518 (S.D. Cal. Nov. 1, 2016) as analogous cases supporting their argument that they have adequately pled a defect. *See* Opp. at 3, 7, 22. However, these cases are distinguishable for several reasons.

In *Parrish*, the plaintiffs filed suit against an auto manufacturer for a defective transmission. 463 F. Supp. at 1048. The plaintiffs specified that Volkswagen "calibrated the Transmission's software to engage higher gears at insufficient speeds and insufficient revolutions per minute ('RPMs') and likewise programmed the torque converter to lock up at insufficient speeds and at insufficient RPMs." *Id.* The plaintiffs alleged that, as a result, the transmission of the relevant vehicles "grates, scuffs, scrapes, grinds, suffers hard and sudden shifts, delayed acceleration, hesitation, banging into gear, and ultimately suffers broken seals and oil leaks, resulting in catastrophic failure." *Id*. Though Plaintiffs pointed the Court to this case as helpful guidance in determining whether Plaintiffs have sufficiently pled a defect, it does not appear that the defendants in *Parrish* challenged whether the plaintiffs had sufficiently pled the relevant

defect. *Id*. at 1049–68. Accordingly, the court in *Parrish* did not analyze similar arguments. However, the level of specificity pled by Plaintiffs pales in comparison to specificity provided by the plaintiffs in *Parrish*. *Id*. at 1053. In *Parrish*, the plaintiffs alleged that "the [d]efect was caused when [d]efendant 'calibrated the Transmission's software to engage higher gears at insufficient speeds and insufficient revolutions per minute ('RPMs') and likewise programmed the torque converter to lock up at insufficient speeds and at insufficient RPMs.'" *Id*. By way of comparison, Plaintiffs here point to "design defects that cause the transmission to exhibit" the alleged symptoms. FAC ¶ 7.

In *Victorino*, the plaintiffs alleged that the transmission at issue "contain[ed] a design defect that caus[ed] the clutch pedal to lose pressure, stick to the floor, and fail to engage/disengage gears." 2016 WL 6441518, at *1. The plaintiffs further explained in great detail that the transmission failure was the result of a

> design flaw in the clutch master cylinder wherein the internal and external seals are ineffective in preventing debris from contaminating and prematurely wearing the seals, resulting in the deprivation of hydraulic fluid to the slave cylinder and, thus, causing collateral damage to the vehicle's clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel. The transmission defect is exacerbated by Defendant's use of a plastic clutch master cylinder, which is prone to corrosion by constant exposure to hydraulic fluid.

*Id*. (internal citation omitted). The court in *Victorino* held that the plaintiffs had alleged a sufficiently specific defect that caused the symptoms at issue and therefore they had "provided specific facts to create a plausible inference of a defect in the transmission." *Id*. at *5. Here, Plaintiffs allege no similarly specific cause. Instead, Plaintiffs plead "allegations regarding the subject transmission's function" without the same level of detail. Opp. at 5. Unlike the plaintiffs in *Victorino,* who specifically identified the defect as a lack of hydraulic fluid in the slave cylinder resulting from design flaw in the clutch master cylinder, both component parts of the vehicles

clutch system, which is in turn part of the vehicle's transmission, Plaintiffs here generally point to a "design defect" in the Transmission as the cause of their injury. FAC ¶ 7.

In their opposition to the Motion, Plaintiffs further cite *Victorino's* holding that plaintiffs need only plead facts to create "a plausible inference of a defect in the transmission." Opp. at 3 (quoting *Victorino*, 2016 WL 6441518, at *5). In *Victorino*, the court distinguished the plaintiffs' allegations from those in *DeCoteau*, 2015 WL 6951296, noting that it was "not enough to conclusorily allege that a transmission defect exists and is responsible for the injuries stated in the FAC" as the plaintiffs had done in *DeCoteau*. *Victorino*, 2016 WL 6441518, at *4 (citing *DeCoteau*, 2015 WL 6951296 at *3).

Plaintiffs argue that, unlike the plaintiffs in *DeCoteau*, they have proffered "allegations regarding the subject transmission's function." Opp. at 5. While it is true that Plaintiffs have proffered allegations regarding the Transmission's function, they have proffered no allegations regarding a specific malfunction. *See generally* FAC. Alleging the underlying functions of the Transmission does not, standing alone, create a plausible inference that the alleged symptoms are the result of a particular defect therein. Here, Plaintiffs have essentially alleged only "that [a] Transmission Defect exist[ed] and [was] responsible] (sic) for their vehicles' symptoms." Opp. at 5 (alterations in original) (quoting *DeCoteau*, 2015 WL 6951296 at *3).

At the Hearing, Defendant highlighted *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 483 F. Supp. 3d 838 (C.D. Cal. 2020) ("*DPS6 Powershift*") as helpful guidance regarding the specificity required to successfully plead a defect. *See* Reply at 2, ECF 33. In *DPS6 Powershift*, the plaintiffs allege that the defendant fraudulently omitted information regarding a transmission defect. *Id.* at 846. The complaint claimed that "the DPS6 transmission is defective in design and/or manufacture in that, among other problems, the transmission consistently slips, bucks, kicks, jerks, harshly engages, has premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, difficulty stopping the vehicle,

and, eventually, premature transmission failure." *Id*. at 846-47 (internal quotation omitted). The Court found that "this merely describes performance problems with the vehicle and does not amount to identifying the defect that Ford failed allegedly to disclose." *Id*. at 847. (citing *Callaghan*, 2014 WL 6629254 at *3).

Plaintiffs' counsel argued at the hearing that *DPS6 Powershift* is distinguishable because the court was ruling on a motion for summary judgment after a fully developed discovery process. This is incorrect. First, *DPS6 Powershift* was an order granting the defendant's motion for judgment on the pleadings. 483 F. Supp. 3d at 841. Second, the court in *DPS6 Powershift* specifically noted that it had dismissed identical language in an order issued four months earlier. *Id*. at 847 (citing *DPS6 Powershift*, No. ML-18-02814-AB, 2019 WL 3000646, at *7 (C.D. Cal. May 22, 2019)). In *DPS6 Powershift*, the court rejected the plaintiff's allegation of a defect because the complaint described performance problems without identifying the defect the defendant failed to disclose. *DPS6 Powershift*, 483 F. Supp. 3d at 847. The same standards, and conclusion, apply to Plaintiffs' claims here.

Accordingly, since Plaintiffs have failed to adequately allege a defect in the Transmission, the Court GRANTS AHM's motion to dismiss. Because Plaintiffs could potentially cure their own defect with amendment, the Court dismisses the complaint WITH LEAVE TO AMEND.

As the Court noted at the Hearing, there is some confusion as to whether Plaintiffs are pursuing a design, manufacturing, or materials defect claim. Without an adequately alleged defect, that Court cannot definitely rule on the Parties' arguments regarding the alleged express and implied warranty claims, as well as the statutory fraud claims, which must meet the Rule 9(b) particularity pleading standard, and the equitable relief claims, which require Plaintiffs to establish that they have no adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841-44 (9th Cir. 2020). The Court does briefly address these issues to provide Plaintiffs with guidance for their amended complaint.

## C. Implied Warranty Claims

AHM argues that Plaintiffs' breach of implied warranty claims fail because they have not alleged facts showing that the Class Vehicles are unmerchantable, or unfit for sale and ordinary use. Mot. 7-9. As in *Clark*, it appears Plaintiffs' breach of implied warranty claims are based on state statutes adopting UCC § 2–314. *See Clark*, 2021 WL 1186338, at *7. UCC § 2–314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind" and that "[g]oods to be merchantable must be at least such as ... are fit for the ordinary purposes for which such goods are used." UCC § 2–314. "The mere manifestation of a defect by itself does not constitute a breach ... there must be a fundamental defect that renders the product unfit for its ordinary purpose." *Tietsworth v. Sears, Roebuck & Co.*, 720 F.Supp.2d 1123, 1142 (N.D. Cal. 2010) (quotation omitted). But, in the context of vehicle defects, courts have observed that "the ordinary purpose of a car is not just to provide transportation but rather safe, reliable transportation." *In re MyFord Touch Consumer Litig.*, 46 F.Supp.3d 936, 980 (N.D. Cal. 2014). If Plaintiffs can adequately allege a defect, it would be difficult for the Court to say as a matter of law that cars suffering from a transmission defective in some way are sufficiently safe to be merchantable.

For Ms. Browning's specific breach of implied warranty claim under Florida law, Courts have reached differing conclusions as to whether there is a third-part beneficiary exception to the contractual privity requirement. *Compare Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1182-83 (S.D. Fla. 2019), *with Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1117 n.3, 1118-19 (S.D. Fla. 2019). The Court finds the cases holding that Florida law does not recognize a third-party beneficiary exception in vehicle defect cases more persuasive and adopts that holding here.

The Court finds the analysis in *Murphy v. Toyota Motor Sales, U.S.A., Inc.* to be

17

instructive. No. 2:20-cv-05892, 2021 WL 2801452 (C.D. Cal. July 1, 2021). In *Murphy*, the court faced the same question regarding Florida's privity requirement and held that the "overwhelming weight of Florida law" indicates that a plaintiff must purchase the vehicle directly from the defendant to establish the contractual privity required state a breach of implied warranty claim. *Id.* at *8 (quoting *Padilla*, 391 F. Supp. 3d at 1116); *see also Cerasani v. Am. Honda Motor Co.*, 916 So. 2d 843, 847 (Fla. Dist. Ct. App. 2005); *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005)). The court in *Murphy* weighed these cases against another line of cases acknowledging the exception to Florida's privity requirement in the same context. *Murphy*, 2021 WL 2801452 at *9 (citations omitted). Following a recent decision of the Eleventh Circuit, the court in *Murphy* held that "[u]nder Florida law, a consumer must enjoy privity of contract with a supplier to recover for breach of an implied warranty." *Murphy*, 2021 WL 2801452 at *9 (quoting *Kelly v. Lee Cty. RV Sales Co.*, 819 F. App'x 713, 717 (11th Cir. 2020)). Accordingly, the Court concludes Florida law does not recognize a third-party beneficiary exception to the privity of contract requirement for a breach of implied warranty claim.

The FAC alleges Ms. Browning purchased her Class Vehicle from Coggin Honda of Orlando, not from Defendants. FAC ¶ 23. Thus "no privity exists between [Plaintiffs] and [Defendants]." *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107, 2014 WL 1745050, at *7-8 (S.D. Fla. Apr. 30, 2014). Because any amendment of this claim would be futile, the Court DISMISSES Ms. Browning's claim for breach of implied warranty WITH PREJUDICE.

Regarding Mr. and Mrs. Pappas and their implied warranty claims under Ohio law, the Court finds that privity with the seller is required under Ohio Rev. Code § 1302.27(A). *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 865 (S.D. Ohio 2012). Mr. and Ms. Pappas have not brought a tort-based implied warranty claim in the current version of the complaint, and therefore they must be able to allege privity to bring a contract-based implied warranty claim.

For Mr. Yong's Texas implied warranty claim and Mr. and Mrs. Wescott's Michigan

18

implied warranty claim, the Court finds they must properly plead pre-suit notice. *See First Reid v. Gen. Motors LLC*, 491 F. Supp. 3d 268, 274 (E.D. Mich. 2020), *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 705 (5th Cir. 2014) (finding allowing a seller the opportunity to cure a requisite for notice under Texas law) (internal citation omitted). The Court notes that "each named Plaintiff's claim must be pled individually, and will stand or fall individually" *Clark*, 2021 WL 1186338, at *5, so Mr. Yong and Mr. and Mrs. Wescott must plead their own notice claims and not rely on notice given by any other person.[1]

### D. Express Warranty Claims

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. Accordingly, the 'requirement[s]' imposed by an express warranty claim are not 'imposed under state law,' but rather imposed by the warrantor." *Clark*, 2021 WL 1186338, at *4 (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525, (1992)).

As a threshold matter, AHM argues that the warranties do not cover design defects. Mot. 12-15; *see also* 2018 Warranty at 9-10, 2019 Warranty at 9-10 ("Honda will repair or replace any part that is defective in material or workmanship under normal use"). The Court agrees with AHM that design defects are not covered by these types of warranties. *See Troup v. Toyota Motor Corp.*, 545 F. App'x 668-69 (9th Cir. 2013) ("The Toyota Prius's alleged design defect does not fall within the scope of Toyota's Basic Warranty against 'defects in materials or workmanship.'") If Plaintiffs want to pursue express warranty claims, they must adequately plead a defect other than a design defect.

Additionally, Plaintiffs such as Mr. and Mrs. Pappas and Mr. Boatwright, who only allege

---

[1] The same notice requirement applies to the Texas and Michigan breach of express warranty claims as well. *See Reid*, 2020 WL 5819579, at *4, *McKay*, 751 F.3d at 695, 705.

that they brought their Class Vehicles in for repair once, *see* FAC ¶¶ 50, 71, cannot pursue express warranty claims as currently pled. *See Clark*, 2021 WL 1186338, at \*5 ("First, those Plaintiffs who bought their vehicle for repair only once or not at all cannot maintain a breach of warranty claim. This is because unless the purchaser presents the vehicle for repair more than once, it cannot be found that the dealer "refused" to satisfy its obligations under the warrant to repair the Vehicle."); *see also Snyder v. TAMKO Building Prods.*, No. 1:15-CV-01892-TLN-KJN, 2019 WL 4747950, at\*4 (E.D. Cal. Sep. 30, 2019) ("A limited warranty fails of its essential purpose only if, after multiple attempts, the warrantor fails to repair the defects in a reasonable timeframe."), *Ross Neely Sys., Inc. v. Navistar, Inc.*, No. 3:13-cv-1587, 2015 WL 12939110, at \*2 (N.D. Tex. May 28, 2015) (no failure of essential purpose where plaintiff did not allege that seller "willfully failed or refused to make repairs"). All Plaintiffs will, at a minimum, need to plead that they brought their Class Vehicles in for repair more than once.

### E. Statutory Fraud Claims

Plaintiffs bring fraud claims based on alleged omissions on the part of AHM.[2] A claim for fraud based on concealment or omission requires that:

> (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would have acted otherwise if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage.

*Clark*, 2021 WL 1186338, at \*9 (citing *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 248, (Cal. Ct. App. 2011). Fraud-based allegations are subject to the Rule 9(b) pleading

---

[2] Plaintiffs clarify in their opposition brief that they are not pursuing fraud claims based on misrepresentation. Opp. at 14 n.1.

standard. *Clark*, 2021 WL 1186338, at *9. "When a claim rests on allegations of fraudulent omission ... the Rule 9(b) standard is somewhat relaxed because 'a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act.'" *Clark*, 2021 WL 1186338, at *9 (quoting *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013). "To meet Rule 9(b)'s requirements in this case, Plaintiffs at a minimum must 'describe the content of the omission and where the omitted information should or could have been revealed.'" *Sims v. Kia Motors Am., Inc.*, No. SACV 13-1791-AG (DFMx), 2014 WL 12558251, at *4 (C.D. Cal. Oct. 8, 2014) (quoting *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)).

As an initial matter, Plaintiffs must distinguish what action AHM took from what action Defendant Honda Motor Company LTD took in the alleged fraud. *See In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("In an amended pleading, Plaintiffs 'must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole.'") (quoting *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011)).

Additionally, Plaintiffs have not specifically alleged the content of the omission and where the omitted information should or could have been revealed. *See Shamamyan v. FCA US LLC*, No. CV 19-5422-DMG (FFMx), 2020 WL 3643481, at *7-8 (C.D. Cal. Apr. 1, 2020) (quoting *Marolda*, 672 F. Supp. 2d 992 at 1002). Based on the complaint, the Court cannot tell what, exactly, Plaintiffs wanted AHM to disclose.

Plaintiffs have also not sufficiently alleged that AHM had pre-sale knowledge of any alleged defect. Since Plaintiffs have failed to adequately plead a defect, they have necessarily failed to plead exactly what AHM had knowledge of concerning the Class Vehicle. Plaintiffs have not alleged that AHM was aware of any online complaints, and complaints to the National Highway Traffic Safety Administration (NHTSA) after the purchase date of the Class Vehicles

cannot support pre-sale knowledge. *See In re Nexus*, 293 F. Supp. 3d at 908–09 ("Plaintiffs do not allege that Huawei ever saw or responded to these online complaints, let alone that Huawei knew about them before Plaintiffs purchased their phones") (quoting *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) ("[C]ourts have rejected undated customer complaints offered as a factual basis for a manufacturer's knowledge of a defect because they provide no indication whether the manufacturer was aware of the defect *at the time of sale*.")). While Plaintiffs purport to provide a "sampling" of complaints, *see* FAC ¶¶ 136-138, Plaintiffs need to be more specific to satisfy Rule 9(b). Statements such as "instinctively responsive," "firmly planted," and "incredibly nimble," *see* FAC ¶¶ 4, 108, are not actionable partial disclosures triggering a duty to disclose. *See In Re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No. 16-CV-06391-BLF, 2020 WL 7664461, at *9 (N.D. Cal. Dec. 24, 2020) ("claims of 'reliability' and 'durability' have been held to be "mere sales puffery" and thus unactionable statements") (citing *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 877 (N.D. Cal. 2019)).

Specifically regarding the class claim under the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. § 1345.01 *et seq*, by Mr. and Mrs. Pappas, the Court finds that "a consumer may qualify for class-action certification under [the OCSPA] only if the defendant's alleged violation of the Act is substantially similar to an act or practice previously declared to be deceptive by" a rule adopted by the Attorney General or an Ohio court decision holding such deceptive conduct unlawful. *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St. 3d 5, 6 (2006). Contrary to Plaintiffs' arguments that the Court should wait for class certification to address this issue, Opp. at 22-23, the Court finds that Plaintiffs must provide this information in the complaint. *See In re Nexus*, 293 F. Supp. 3d at 958 (dismissing class action OCSPA claim at the pleading stage), *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 693 (S.D. Ohio 2012) (same). To proceed on their individual claims, Plaintiffs must address the statute of limitations in their amended pleading. *See Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2017

WL 2797810, at *10 (N.D. Cal. June 28, 2017) (finding Ohio law does not allow tolling of the two-year statute of limitations for the OCSPA).

Regarding the claim by Mr. and Mrs. Wescott under the Michigan Consumer Protection Act ("MCPA"), the Court agrees with Defendants that claims related to "the manufacture, sale, and lease of automobiles" cannot form the basis for a claim under the MCPA. *Cyr v. Ford Motor Co., No. 345751*, 2019 WL 7206100, at *2 (Mich. Ct. App. Dec. 26, 2019), *appeal denied* 506 Mich. 950 (2020). Thus, the Court DISMISSES Mr. and Mrs. Wescott's claim under the MCPA WITH PREJUDICE because any amendment would be futile.

Additionally, the Court finds that Mr. Boatwright's claim under South Carolina Manufacturers, Distributors, and Dealers Act, S.C. Code Ann. § 56-15-10, *et seq.*, fails because, according to the statute, "In an action brought pursuant to this article, venue is in the State of South Carolina. A provision of a franchise or other agreement with contrary provisions is void and unenforceable." *Id.* § 56-15-140. Accordingly, any amendment of this claim would be futile, and the Court DISMISSES Ms. Boatwright's claim under South Carolina Manufacturers, Distributors, and Dealers Act WITH PREJUDICE.

### F.     Equitable Claims

Finally, the Court finds that, since Plaintiffs have not pled that they lack an adequate remedy at law, all their equitable claims, including those for restitution and prospective injunctive relief, fail. *See Clark*, 2021 WL 1186338, at *8 (C.D. Cal. Mar. 25, 2021) (finding that the recent Ninth Circuit case *Sonner* applies to both past harm and prospective relief); *see also In re California Gasoline Spot Market Antitrust Litig.*, No. 20-CV03131-JSC, 2021 WL 1176645, at *7-8 (N.D. Cal. Mar. 29, 2021) (same), *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (collecting cases). For Plaintiffs to proceed with any claims for equitable relief, they must allege facts showing that they lack an adequate

remedy at law.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that AHM's motion to dismiss is GRANTED. The claims alleging breach of implied warranty under Florida law, a violation of the Michigan Consumer Protection Act, and a violation of the South Carolina Manufacturers, Distributors, and Dealers Act are DISMISSED WITH PREJUDICE. All other claims are DISMISSED WITHOUT PREJUDICE. Plaintiffs may only amend the existing claims of the current parties and shall file an amended complaint within thirty (30) days of the date of this Order.

Dated: July 16, 2021

BETH LABSON FREEMAN
United States District Judge