# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| RONDA ANN BROWNING, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN HONDA MOTOR CO., INC., et al., <br><br> Defendants. | Case No.  20-cv-05417-BLF <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> [Re:  ECF No. 60] |

In this putative class action, Plaintiffs allege two defects in their 2018–2019 Honda Odyssey vehicles, which are equipped with a 9-speed automatic transmission called the ZF 9HP Automatic Transmission.  Plaintiffs allege that the Transmission (1) has two modules in its software that fail to communicate properly and (2) torn sealing gaskets that occur during assembly.  These defects, Plaintiffs claim, cause "rough and delayed shifting, loud noises during shifting, harsh engagement of gears, sudden [and] harsh accelerations and decelerations, and sudden loss of power."  Eight named Plaintiffs seek to represent a nationwide class and seven subclasses, each of which asserts implied warranty, express warranty, and state consumer protection claims.

Before the Court is Defendant American Honda Motor Co., Inc.'s[1] motion to dismiss the Second Amended Complaint on multiple grounds.  *See* ECF No. 60 ("MTD"); *see also* ECF No. 66 ("Reply").  Plaintiffs oppose the motion, *see* ECF No. 65 ("Opp."), and the Court held oral argument on February 3, 2022, *see* ECF No. 68.  For the reasons discussed on the record and

---

[1] The Court will refer to this defendant as "Honda" in this order for simplicity, except where noted.  Codefendant Honda Motor Co., a foreign corporation, remains unserved in this action.

United States District Court<br>Northern District of California

explained below, the Court GRANTS IN PART WITH LEAVE TO AMEND IN PART and DENIES IN PART the motion to dismiss.

### I.   BACKGROUND

As alleged in the Second Amended Complaint, ECF No. 55 ("SAC"), and accepted as true for the purposes of this motion, Honda designs, manufactures, markets, distributes, sells, and services the Honda Odyssey vehicle.  SAC ¶ 1.  Plaintiffs allege that in 2014, Honda began equipping certain of its vehicles with a 9-speed automatic transmission called the ZF 9HP Automatic Transmission ("Transmission").  *Id.* ¶ 3.  The Transmission uses a unique 9.8 ratio spread and computer-controlled shifting that were marketed as a significant technological advancement from previous transmissions.  *Id.* ¶ 5.  The different ratio spread ideally allows for shorter shifts between gears, keeping the engine in a narrow, optimal band of RPMs for as long as possible, and borrows some characteristics of manual transmissions, such as "dog clutches," enabling greater fuel efficiency.  *Id.* ¶¶ 5, 8.

Plaintiffs allege, however, that the Transmission suffers from two defects.  First, Plaintiffs allege that "the transmission end cover sealing gasket was damaged during the manufacturing, assembly, and/or installing process" in the Odyssey vehicles (the "Sealing Gasket Defect").  SAC ¶ 6.  Because of the damaged sealing gasket, the Transmission is not properly sealed and thus leaks fluid.  *Id.*  The leak results in insufficient transmission fluid, which causes the Transmission to fail to maintain necessary hydraulic pressure or properly lubricated parts.  *Id.*  This results in gear slippage, difficulty switching gears, lurching, excess noise from the Transmission, a burning smell, and even transmission failure.  *Id.*

Second, Plaintiffs allege that "there is improper design and/or calibration of the software in control of the [T]ransmission, including the Transmission Control Module and the Powertrain Control Module" in the Odyssey vehicles (the "Software Calibration Defect").  SAC ¶ 7.  The Transmission Control Module and the Powertrain Control Module control the function of the transmission and its interaction with the engine.  *Id.*  While the Transmission may be delivered by a component manufacture with software already programmed, Honda must ensure that the software is properly calibrated to function in its own vehicles.  *Id.*  Plaintiffs allege that Honda has

failed to do this properly, resulting in mistimed gear shifting. *Id.* This causes a rough, delayed, or sudden failure to shift; grinding or other loud noises during shifting; harsh engagement of gears; sudden or harsh accelerations or decelerations; and sudden loss of power. *Id.*

Plaintiffs Ronda Ann Browning, Divina Pappas, Brian Pappas, Kali Wescott, Eric Wescott, Tony Boatwright, Chuen Yong, and Daniel Pina each purchased a Honda Odyssey vehicle in the model years 2018 or 2019. Each of their experiences is summarized below.

Ronda Ann Browning. Plaintiff Ronda Ann Browning, a Florida resident, purchased a new 2019 Honda Odyssey on July 3, 2018 from a Honda dealership in Orlando, Florida. SAC ¶¶ 23–24. Before purchasing her vehicle, she researched the vehicle online, reviewed the window sticker, and test drove and discussed the Odyssey vehicle with a sales representative. *Id.* ¶ 27. Within the first few months after purchase, her vehicle exhibited harsh or delayed shifting, delayed accelerations, "banging into gear," jerking, shuddering, lurching, and lack of power. *Id.* ¶ 28. She returned the vehicle to the dealership on multiple occasions, including at 8,447 miles and 9,746 miles, complaining of these symptoms. *Id.* ¶¶ 30–31. On one repair occasion, she drove the vehicle with a service technician, who acknowledged that he heard the problem. *Id.* ¶ 32. On each occasion, the vehicle was returned to her and the technicians claimed it was "working as designed." *Id.* ¶¶ 30–31, 33.

Divina and Brian Pappas. Plaintiffs Divina and Brian Pappas, Ohio residents, purchased a new 2018 Honda Odyssey on March 6, 2018 from an authorized Honda dealership in their town of Maumee, Ohio. SAC ¶¶ 37–38. Prior to purchasing their vehicle, the Pappases spent time researching it online and reviewed the window sticker. *Id.* ¶ 40. They also test drove the vehicle with a sales representative and specifically asked the salesperson about the Transmission. *Id.* Within the first day of their purchase, the vehicle started exhibiting harsh or delaying shifting or engagement, delayed accelerations, banging into gear, lurching, and a lack of power, "sometimes feeling like it was going to stall." *Id.* ¶ 42. The problems persisted despite repair attempts. *Id.* One of those repair attempts was in July 2019, in which the dealership performed a "ROAD FORCE" update and returned the vehicle claiming it was "OPERATING AS DESIGNED." *Id.* ¶ 43. As recently as August 2020, upon pressing the accelerator to turn left from a stop light, the

vehicle started shaking violently for an elongated period of time.  *Id.*

Kali and Eric Wescott.  Kali and Eric Wescott, residents of Michigan, purchased a new 2019 Honda Odyssey from a dealership in Muskegon, Michigan.  SAC ¶¶ 48–49.  They conducted online research, reviewed the window sticker, and conducted a test drive prior to purchasing.  *Id.* ¶ 51.  Prior to purchase, the dealer representatives told them that the Odyssey "came with a top-of-the-line nine-speed transmission."  *Id.*  Within a few months of their purchase, the vehicle exhibited similar symptoms as did the vehicles of Browning and the Pappases.  *Id.* ¶ 53.  The Wescotts brought their vehicle in for service to the dealership at least three times, on February 27 2019, August 13, 2019, and August 19, 2019.  *Id.* ¶¶ 54–56.  The dealer technicians characterized the behaviors they observed during testing as "normal characteristic[s]" of the Transmission.  *Id* ¶¶ 55–56.  The Wescotts continue to experience the symptoms.  *Id.* ¶ 58.

Tony Boatwright.  Tony Boatright, a South Carolina resident, purchased a new 2019 Honda Odyssey from a dealership in Rock Hill, South Carolina.  SAC ¶¶ 60–61.  Boatwright too researched the Odyssey prior to purchase on Honda's website, the dealer's website, and through discussions with the sales representatives.  *Id.* ¶ 63.  Boatwright's vehicle also experienced issues within the first few months.  *Id.* ¶ 65.  When slowing down and attempting to reaccelerate, the vehicle often fails to get into gear; when it does, it does so with a jerk.  *Id.*  The transmission also independently shifts, causing the vehicle to gain too much speed going downhill and forcing Boatwright to aggressively brake.  *Id.*  Boatwright brought the vehicle to the dealership within three months, but was told that the vehicle was operating normally.  *Id.* ¶ 66.  Boatright also phoned Honda's customer service hotline and filed a complaint with the National Highway Traffic Safety Administration ("NHTSA") relating to the vehicle's issues.  *Id.* ¶¶ 67–68.  The vehicle still exhibits the problems.  *Id.* ¶ 71.

Chuen Yong.  Cheun Yong, a Texas resident, purchased a new 2019 Honda Odyssey from a Honda dealership in Irving, Texas.  SAC ¶¶ 73–74.  Yong, the previous owner of an older Odyssey, researched the vehicle online and test drove it prior to purchase.  *Id.* ¶ 76.  A week or two after purchasing, the vehicle exhibited the problems described above, especially at speeds around 30 miles per hour, making it difficult for Yong to drive at residential speeds.  *Id.* ¶ 78.  In

the spring of 2020, Yong took the vehicle to the dealership from which he purchased it, and service technicians there acknowledged the problem during a test drive. *Id.* ¶ 79. When the dealer technicians reported back to him after a call to Honda, they told him the behavior was normal for the vehicle. *Id.* Yong took the vehicle on two other occasions to a different dealership, but no repairs were conducted. *Id.* ¶ 80. His vehicle problems have continued. *Id.* ¶ 82.

<u>Daniel Pina</u>. Daniel Pina, a California resident, purchased a 2019 Honda Odyssey vehicle from a dealership in Fontana, California in October 2019. SAC ¶¶ 84–85. Pina researched the vehicle online and visited a dealership prior to purchase. *Id.* ¶ 87. At the dealership, Pina reviewed the window sticker and spoke with an employee regarding the vehicle's features, including the Transmission. *Id.* Shortly after the purchase, the vehicle exhibited the same symptoms described above. *Id.* ¶ 89. Pina brought his vehicle into dealerships at least four times on February 14, 2019, May 7, 2019, October 20, 2019, and again in October or November 2019. *Id.* ¶¶ 90–93. In each case, the dealer did not perform repairs and the symptoms continued. *Id.* ¶ 90–93, 95.

Based on these allegations, Plaintiffs have filed suit against Honda asserting claims for breach of implied warranty (Florida, Ohio, South Carolina, Texas, California), breach of express warranty (South Carolina, Texas, California), violation of state consumer protection statutes (Florida, Ohio, Texas, California), and fraud by omission / fraudulent concealment (no state law specified). SAC ¶¶ 168–386. Each claim is brought by the Plaintiff or Plaintiffs in that respective state. Plaintiffs further seek to represent a nationwide class of individuals who purchased 2018–2019 Honda Odyssey vehicles equipped with the Transmission. *Id.* ¶ 160. Each Plaintiff (or couple of Plaintiffs) seeks to represent a subclass in their individual state, with Pina seeking to represent both a California subclass and a Consumer Legal Remedies Act ("CLRA") subclass. *Id.*

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts

as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

## III.     DISCUSSION

Honda's motion raises a panoply of issues with Plaintiffs' pleading, some of which apply generally to all claims and others that apply only to specific Plaintiffs or states' laws. The Court considers each of these arguments in turn.

### A.     Adequacy of Defect Allegations

Honda first argues that Plaintiffs do not adequately plead facts to allege defects in their vehicles. MTD at 4–6, 12–13. The Court evaluates each argument regarding the two purported defects.

#### i.     General Adequacy of Allegations

First, Honda argues that Plaintiffs have not adequately pled any defect because the SAC continues to assert that the "fuel-economy design" of the Transmission is the cause of the issues that Plaintiffs experienced. MTD at 4. There is "no connection" between the fuel-efficient design and the two alleged defects, Honda says. The Court finds this argument is based on a mischaracterization of Plaintiffs' allegations. As Plaintiffs urge, *see* Opp. at 3–4, and as the Court concluded in its order on the first motion to dismiss, the allegations about the "fuel-economy

design" only provided background information about the Transmission. *See Browning v. Am. Honda Motor Co., Inc.*, 549 F. Supp. 3d 996, 1007 (N.D. Cal. 2021). Honda itself in its motion identifies the two defects that Plaintiffs have alleged—(1) "a manufacturing defect that results in a torn seal and causes transmission fluid to leak," MTD at 4:13–14; *see also* Compl. ¶ 6; and (2) "defective 'software in control of the transmission' that causes the Transmission Control Module not to 'communicate properly' with the Powertrain Control Module," *id.* at 3:6–8; *see also* Compl. ¶ 7. In the relevant paragraphs of the Complaint, Plaintiffs identify the relevant parts—the sealing gasket and multiple control modules. Compl. ¶¶ 6–7. They also identify the symptoms of those alleged defects. Plaintiffs allege that the Sealing Gasket Defect results in "gear slippage, . . . difficulty switching gears, lurching, excess noise from the transmission, a burning smell, and, after sufficient time has passed, even transmission failure." *Id.* ¶ 6. Plaintiffs allege that the Software Calibration Defect results in "rough, delayed, or sudden shifting or failure to shift; grinding or other loud noises during shifting; harsh engagement of gears; sudden or harsh accelerations/decelerations; and sudden loss of power." *Id.* ¶ 7. The Court finds that these allegations are sufficient to provide "fair notice" to Honda because they "(1) identif[y] the particular part[s] or system[s] affected by the defect, and (2) describe[] the problems allegedly caused by the defect." *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1115 (C.D. Cal. 2021) ("*Clark I*").

Second, Honda argues that a comparison of the operative pleading to the one in *Clark* shows that the defect pled here is implausible because both complaints "purport to describe *different transmission defects* in *different Honda-branded vehicles*," but the complaint here parrots that defect allegations in *Clark*. MTD at 5–6. The Court takes from this argument that Honda is implying that Plaintiffs recycled their allegations from *Clark*, which the Court pointed to as an example of what was sufficient, into this case to try to avoid dismissal. But the Court finds that the better inference to draw is that the allegations in both cases are similar because Honda allegedly has similar issues throughout multiple lines of vehicles. The Court will not penalize Plaintiffs for asserting similar allegations in multiple cases against the same manufacturer. Of course, it will be up to Plaintiffs to actually prove those defects exist in their vehicles.

United States District Court
Northern District of California

1

                    ii.    **Standing to Assert Sealing Gasket Defect**

2           Finally, Honda asserts that Plaintiffs have not plausibly alleged that they experienced the

3   Sealing Gasket Defect.[2]  The Court construes this argument as a challenge to Plaintiffs' standing

4   to assert claims related to the Sealing Gasket Defect, even though it was not briefed in this

5   manner.  *See Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) ("[F]ederal

6   courts are required sua sponte to examine jurisdictional issues such as standing.").

7           A federal court may not adjudicate a case unless the plaintiff has suffered an injury that

8   satisfies the "case or controversy" requirement of Article III of the United States Constitution.  To

9   establish Article III standing, a plaintiff must have suffered an "injury in fact" that is "distinct and

10  palpable;" the injury must be fairly traceable to the defendant's conduct; and the injury must be

11  redressable by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61

12  (1992).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and

13  particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560.  Here, there

14  are no allegations that any Plaintiff actually has a vehicle that experienced the Sealing Gasket

15  Defect.  This means that no Plaintiff has suffered an "injury in fact" as to the Sealing Gasket

16  Defect.  *See Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1279–81 (C.D. Cal. Sep. 30,

17  2016) (no Article III standing where plaintiffs did not plead that they themselves experienced

18  product defect in vehicle).  Without such an alleged injury, these Plaintiffs cannot go forward on

19  the claims as to this defect.

20          At the hearing, the Court discussed with the parties whether it should give leave to amend

21  on this issue.  2/3 Hrg. Tr. at 35:7–36:23.  Plaintiffs' counsel requested leave to amend, arguing

22  that this was the first time Plaintiffs had the benefit of the Court's insight into the sufficiency of

23  their allegations as to the Sealing Gasket Defect.  *Id.* at 35:21–36:2.  Plaintiffs' counsel also

24  represented that if their investigation shows that no Plaintiff experienced the defect, then they

25  ───────────────────

26  [2] Although this argument was made as part of Honda's motion to dismiss the claims for breach of

27  express warranty, *see* MTD at 10–13, the Court finds this issue more appropriate to address in the

28  context of the general pleading sufficiency of the defects because it relates to Article III standing.

would drop the theory.  *Id.* at 36:19–21.  On this representation, and because the Court is granting Plaintiffs leave to amend on some of their statutory fraud claims, the Court will grant Plaintiffs leave to amend on the Sealing Gasket Defect.

Accordingly, Honda's motion to dismiss based on Plaintiffs' inadequate pleading of the Sealing Gasket Defect IS GRANTED WITH LEAVE TO AMEND.  Leave to amend is limited to adding allegations that the vehicle of one or more of the Plaintiffs experienced the Sealing Gasket Defect.  If Plaintiffs cannot so allege, they must remove allegations regarding this defect from their amended complaint.

### B.    Implied Warranty Claims

Honda next challenges Plaintiffs' breach of implied warranty claims.  MTD at 6–10. Honda makes one argument that applies to all of the implied warranty claims and three arguments that apply only to the Florida, Ohio, and Texas claims.  *Id.*  The Court considers the general argument first before examining the Florida, Ohio, and Texas claims.

### i.    Merchantability Allegations

First, Honda argues that Plaintiffs do not plead facts showing that their vehicles are unmerchantable.  MTD at 6–9.  Honda contends that while Plaintiffs plead that their vehicles exhibit a "litany" of issues, no Plaintiff pleads facts supporting the inference that their vehicles are not fit to drive.  *Id.* at 6.  Honda looks to each of the Plaintiffs' allegations about their experience and takes issue with whether the allegations show the vehicles cannot be safely driven.  *Id.* at 6–8. Honda also argues that Plaintiffs have not alleged that they stopped or limited their driving in response to the alleged safety concerns.  *Id.* at 8.  Plaintiffs counter that whether their vehicles are merchantable is a question of fact not suitable for resolution on a motion to dismiss, and that each Plaintiff asserts plausible allegations sufficient for the pleading stage on this claim.  Opp. at 4–6. The Court agrees with Plaintiffs that their allegations are sufficient at this stage of the case.

Plaintiffs' breach of implied warranty claims are based on state statutes that adopt U.C.C. § 2–314.  *Accord Clark I*, 528 F. Supp. 3d at 1120.  U.C.C. § 2–314 provides that "a warranty that the goods shall be merchantable is implied in a contract for sale if the seller is a merchant with respect to goods of that kind" and that "[g]oods to be merchantable must be at least such as . . . are

United States District Court
Northern District of California

fit for the ordinary purposes for which such goods are used."  "The mere manifestation of a defect by itself does not constitute a breach. . . .  [T]here must be a fundamental defect that renders the product unfit for its ordinary purpose."  *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010).  But as to vehicle defects, "the ordinary purpose of a car is not just to provide transportation but rather safe, reliable transportation."  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 980 (N.D. Cal. 2014).

As the Court stated in its order dismissing the previous complaint, "[i]f Plaintiffs can adequately allege a defect, it would be difficult for the Court to say as a matter of law that cars suffering from a transmission defect[] in some way are sufficiently safe to be merchantable."  *Browning*, 549 F. Supp. 3d at 1010.  The Court has already found that Plaintiffs have adequately alleged a defect, and it sees no reason to depart from its previous conclusion.  Plaintiffs' allegations regarding the results of the alleged defects prevent the conclusion, as a matter of law, that the vehicles were "safe, reliable transportation."  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 980.  For example, Browning, the Pappases, the Wescotts, and Pina allege that they "cannot predictably accelerate [their] vehicles when turning left across traffic."  SAC ¶¶ 28, 42, 53, 89.  Boatwright alleges that when he slows down and attempts to reaccelerate, the vehicle often fails to get into gear and when it does, the vehicle lurches.  *Id.* ¶ 65.  He also alleges that the transmission independently shifts "such that the vehicle gains too much speed while going downhill," forcing him to "aggressively break in order to avoid a collision."  *Id.*  Yong alleges that he experiences shifting problems at approximately 30 miles per hour, making it "difficult for [him] to drive at residential speeds."  *Id.* ¶ 78.  Other courts have found similar inability to predict behavior of the transmission sufficient to allege claims for breach of warranty.  *See Gregorio v. Ford Motor. Co.*, 522 F. Supp. 3d 264, 291 (E.D. Mich. 2021) (plausible claim of unmerchantability where vehicle's transmission allegedly had "gears slipping, jerking, and clashing" and caused "the inability to shift into certain gears" because "they affect the driver's ability to control the vehicle's acceleration and deceleration"); *Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1065 (C.D. Cal. 2020) (plausible claim of unmerchantability where vehicle's transmission made a "coffee grinder noise" because it caused a "dangerous distraction"

for the driver and other motorists).

Because the Court cannot conclude as a matter of law that Plaintiffs' vehicles were merchantable if their allegations are true, the Court DENIES the motion to dismiss the breach of implied warranty claims on this ground.

### ii.     Florida – Claim 2

The second claim in the SAC—asserted by Plaintiff Browning—is for breach of implied warranty under Florida law.  *See* SAC ¶¶ 177–194.  As Honda argues, the Court previously dismissed this claim without leave to amend due to the lack of privity between her and Honda.  *See Browning*, 549 F. Supp. 3d at 1010–11 ("[T]he Court DISMISSES [Browning's] claim for breach of implied warranty WITH PREJUDICE.").  This claim cannot be reasserted, so Honda's motion to dismiss the claim is GRANTED WITHOUT LEAVE TO AMEND.

### iii.    Ohio – Claim 4

The Pappases assert the fourth claim in the SAC for breach of the implied warranty of merchantability under Ohio law.  *See* SAC ¶¶ 216–233.  For implied warranty claims under Ohio law, privity with the seller is required under Ohio Rev. Code § 1302.27(A).  *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007) ("[P]urchasers of automobiles may assert a contract claim for breach of implied warranty only against parties with whom they are in privity.").  Honda argues that, as the Court agreed in the previous motion to dismiss, the Court should dismiss this claim for lack of privity between Honda and the Plaintiffs, who purchased their vehicles from authorized dealers.  MTD at 9–10.  Honda argues that the additional allegations Plaintiffs have added regarding the existence of the express warranty and agency or third-party beneficiary relationships do not change the previous decision the Court reached.  *Id.*  Plaintiffs argue that those two sets of allegations and their reliance on Honda's advertisements negate the need to show privity.  Opp. at 7–8.  The Court considers each of Plaintiffs' arguments in turn and concludes that the claim must be dismissed.

First, Plaintiffs argue that they can satisfy the privity requirement by proving the existence of an express limited warranty.  Opp. at 7–8.  The cases Plaintiffs cite for that proposition, however, are untenable.  The two Michigan district court cases cited—*In re FCA US LLC*

11

*Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 596 (E.D. Mich. 2018), and *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 677 (E.D. Mich. 2020), both cite without analysis a single Ohio district court case—*Roxy Home Improvement, LLC v. Mercedes-Benz USA, LLC*, 2018 WL 1705800 (N.D. Ohio Apr. 9, 2018). But that case involved an implied warranty in tort, not in contract, and the Court has already concluded that the Pappases assert a claim for implied warranty in contract. *Browning*, 549 F. Supp. 3d at 1011. Plaintiffs provide no authority allowing them to bootstrap a contract-based implied warranty claim onto an express written warranty under Ohio law, and the Court is not aware of any. *Accord Short v. Hyundai Motor Co.*, 444 F. Supp. 3d 1267, 1286 (W.D. Wash. 2020) ("Plaintiffs cite to no Ohio state law authority, and the court is aware of none, under which the mere presence of a *written* warranty overcomes the privity requirement for a claim for breach of an *implied* warranty.").

Second, Plaintiffs contend that there is an exception to Ohio privity requirements for agency or third-party beneficiary relationships. MTD at 8. The Court disagrees. "*Curl* stands for the well-accepted principle that there is no privity between a vehicle's manufacturer and the ultimate consumer because the dealer, generally, does not act as the manufacturer's agent." *Nicholson v. Jayco*, 2016 WL 5463215, at *17 (N.D. Ohio Sep. 29, 2016); *see also Hartman v. Mercedes-Benz, U.S.A., L.L.C.*, 2010 WL 907969, at *6 (N.D. Ohio Mar. 11, 2020) (agency allegations in vehicle product defect cases describe "customary practices in automobile sales and manufacturing").[3] As Honda states, if there was an exception to the privity requirement where parties were in an agency relationship, the strict privity requirement would be swallowed by this exception in every automobile case. Accordingly, the alleged exception to the rule in *Bobb Forest Prod., Inc. v. Morbark Indus., Inc.*, 783 N.E.2d 560, 576 (Ohio App. 2002)—a case involving an implied warranty claim against the manufacturer of a sawmill in which the manufacturer knew it

_____

[3] For this reason, the Court finds that *Wilson v. Volkswagen Grp. of Am., Inc.*, 2018 WL 4623539 (S.D. Fla. Sep. 26, 2018), cited by Plaintiffs for the proposition that an Ohio car buyer can be in privity with an upstream manufacturer, is out-of-step with the weight of Ohio authority. The Court is not aware of any Ohio court following *Wilson*.

United States District Court
Northern District of California

1    was manufacturing the sawmill for the particular downstream customer—has been limited to those

2    facts by other courts, including in vehicle defect cases.  *See, e.g.*, *Rollolazo v. BMW of N. Am.,*

3    *LLC*, 2017 WL 1536456, at *16 (C.D. Cal. Feb. 3, 2017) (distinguishing *Bobb Forest* because the

4    car manufacturer did not know it was manufacturing a particular car for a particular Ohio

5    customer); *accord McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 758 (N.D. Ohio 2010) ("[T]he

6    Court declines to extend the limited privity exception articulated in *Bobb Forest* beyond the facts

7    of that case.").

8          Third and finally, Plaintiffs contend there is an exception to the privity requirement "when

9    the plaintiff relies on written labels or advertisements of a manufacturer."  Opp. at 8 (citing *In re*

10   *Rust-Oleum Restore Mktg. Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 807 (N.D.

11   Ill. 2016)).  But as Honda says, that case did not cite any Ohio law for that proposition, and the

12   cases it relies upon cite only California cases.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d

13   1017, 1023 (9th Cir. 2008) (citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (Cal. 1954)).

14   Without Ohio law supporting application of this purported exception, the Court will not apply it.

15         Accordingly, Plaintiffs have not sufficiently alleged privity between the Pappases and

16   Honda under Ohio law.  Because the Court identified this deficiency in the order on the prior

17   motion to dismiss, *Browning*, 549 F. Supp. 3d at 1011, the instant motion to dismiss the Ohio

18   claim for breach of implied warranty is GRANTED WITHOUT LEAVE TO AMEND.

19              **iv.    Texas – Claim 9**

20         Yong asserts the ninth claim in the SAC for breach of implied warranty under Texas law.

21   SAC ¶¶ 322–340.  The Court previously dismissed the claim with leave to amend for failure to

22   allege pre-suit notice.  *Browning*, 549 F. Supp. 3d at 1011.  Honda argues that Yong has still failed

23   to plead that he made proper pre-suit notice.  MTD at 9.  Plaintiffs argue that Yong satisfied pre-

24   suit notice when he (1) brought his vehicle to the dealership and complained of the defects, and (2)

25   sent a pre-suit notice letter under Texas law on December 12, 2020, eight months before filing the

26   SAC.  Opp. at 7.

27         The Court finds that Yong's allegations do not satisfy the pre-suit notice requirement under

28   Texas law.  The allegations that Yong points to as satisfying the pre-suit notice requirement—his

United States District Court
Northern District of California

United States District Court
Northern District of California

visit to the dealership and his pre-suit notice letter sent three days before he joined this case as a plaintiff—are the same ones as were in the First Amended Complaint, which the Court found insufficient to satisfy the requirement.  *Compare* FAC ¶ 83 (Yong taking vehicle to dealer), *with* SAC ¶ 79 (identical paragraph); *and* FAC ¶ 342 (describing letter dated December 12, 2020), *with* SAC ¶ 339 (materially similar paragraph).  The Court's conclusion has not changed.  Neither the dealership visit nor the untimely letter would sufficiently give Honda notice "an opportunity to cure" the alleged defects.  *McKay v. Novartis Pharma. Corp.*, 751 F.3d 694, 705 (5th Cir. 2014).  Speaking with unspecified individuals at the dealership is not sufficient to ensure that Honda itself, the defendant here, was "informed that there is a claimed breach of the warranty of fitness." *Id.* at 705–06.  Neither does the letter—sent only three days before Yong joined the case in the First Amended Complaint—give Honda sufficient notice and an opportunity to cure.  Yong's assertion that the letter preceded the Second Amended Complaint by eight months is a red herring.

Yong has thus failed to adequately allege pre-suit notice as required under Texas law.  Because this defect was also identified in the prior order, *Browning*, 549 F. Supp. 3d at 1011, the motion to dismiss the claim for breach of implied warranty under Texas law will be GRANTED WITHOUT LEAVE TO AMEND.

### C.  Express Warranty Claims

Honda next challenges the adequacy of Plaintiffs' pleading for their claims for breach of express warranty.  MTD at 10–14.  The Court considers Honda's three[4] arguments in turn:  first, that the claim for breach of express warranty under Texas law fails to lack of pre-suit notice; second, that the Software Calibration Defect is actually a design defect that is not covered by the express warranty at issue; and third, that Plaintiffs have not pled facts demonstrating a refusal to repair.

---

[4] The Court has already addressed Honda's additional argument that Plaintiffs have not adequately pled that they experienced the Sealing Gasket Defect and found that it presents an Article III standing issue.  *See* MTD at 12–13; *see supra* Section III.A.ii.

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### i.    Texas – Claim 9

The ninth claim in the SAC is for breach of express warranty under Texas law.  SAC ¶¶ 322–339.  This claim also required Yong to provide Honda with pre-suit notice.  *See McKay*, 751 F.3d at 705 (citing Tex. Bus. & Com. Code § 2.607(c)(1)).  The Court has already found Yong's allegations of pre-suit notice insufficient for his breach of implied warranty claim.  *See supra* Section III.B.iv.  That analysis applies equally here.  Because Yong has not adequately alleged pre-suit notice, as the Court's prior order required, the motion to dismiss the Texas claim for breach of express warranty is GRANTED WITHOUT LEAVE TO AMEND.

### ii.    Software Calibration Defect

First, Honda argues that the Software Calibration Defect, which Plaintiffs assert is a manufacturing defect, is actually a design defect.  MTD at 11–12.  This matters because if the Software Calibration Defect is actually a design defect, it is not covered by the written warranties at issue in this case.  *Browning*, 549 F. Supp. 3d at 1011 ("The Court agrees with [Honda] that design defects are not covered by these types of warranties.") (citing *Troup v. Toyota Motor Corp.*, 545 F. App'x 668–69 (9th Cir. 2013)).

The Court finds that, as pled, the Software Calibration Defect is a manufacturing defect.  Plaintiffs plead that there is "improper design and/or calibration of the software in control of the [T]ransmission," including both the Transmission Control Module and the Powertrain Control Module.  SAC ¶ 7.  While the Transmission may be delivered by a component manufacturer, Plaintiffs allege that "it is the responsibility of [Honda] to ensure that the software is properly calibrated for use in its vehicles."  *Id.*  Plaintiffs thus allege that this defect—the improper calibration of the software in control of the modules—is a "workmanship" defect that occurs after Honda receives the Transmission and, during the manufacturing process, calibrates it to work properly for their vehicles.  SAC ¶¶ 8, 136.

To be sure, the Court recognizes Honda's concern that letting both defects proceed opens up Honda to additional discovery.  It may turn out that Honda's software calibration of the transmission control modules is performed pursuant to specifications such that the improper calibration (if true) is actually performed "in accordance with the product's intended

15

specifications" and is thus a design defect. *See Brothers v. Hewlett Packard Co.*, 2007 WL 485979, at \*4 (N.D. Cal. Feb. 12, 2007) ("Unlike defects in materials or workmanship, a design defect is manufactured in accordance with the product's intended specifications."). But the Court cannot say based solely on Plaintiffs' pleading that this is the case.

For now, the Court finds that Plaintiffs have plausibly pled that the Software Calibration Defect is a manufacturing defect, and thus DENIES Honda's motion to dismiss on this ground. Plaintiffs are on notice that if discovery reveals that this defect exists due to the Odyssey's specifications, it will be a design defect for which they cannot sustain a breach of express warranty claim.

### iii.     Refusal to Repair Allegations

Honda's next argument against Plaintiffs' breach of express warranty claim is that Plaintiffs have not adequately pled a refusal to repair. MTD at 13–14. This argument is of two parts. First, Honda says that Boatwright has not adequately alleged a refusal to repair because he only brought his vehicle into the dealer one time. *See id.* at 13. Second, Honda says that Boatwright, Yong, and Pina have not pled a refusal to repair because they do not plead that the dealers identified a problem and refused to repair it. *See id.* at 13–14. Plaintiffs counter by defending the sufficiency of their allegations. *See* Opp. at 11–12.

The Court agrees with Honda, and has already held, that more than one presentation to the dealer is required to plead a refusal to repair. *Browning*, 549 F. Supp. 3d at 1012 ("All Plaintiffs will, at a minimum, need to plead that they brought their Class Vehicles in for repair more than once.") (citing *Clark I*, 528 F. Supp. 3d at 1117–18). Boatwright has not done so. He alleges only that he "returned the vehicle to the dealership within three months of his purchase" and was informed that it was operating normally. SAC ¶ 66. Plaintiffs provide no authority for their argument that his call to the customer service hotline counts as a "repair presentation," and their argument that further visits would have been futile has been roundly rejected by courts. *See Clark v. Am. Honda Motor Co.*, 2021 WL 4260232, at \*4 (C.D. Cal. Sep. 14, 2021) ("*Clark II*") (citing *Stockinger*, 2017 WL 10574372, at \*7).

The Court, however, disagrees with Honda's argument that a dealership does not "refuse"

to repair a vehicle when it does not identify a problem.  It would be too easy to avoid warranty claims if a dealer could merely deny that it identified a problem even if there were symptoms of it.  Here, for Yong and Pina's vehicles, the dealers acknowledged issues during test drives.  Yong brought his vehicle into dealerships twice, and at one of the visits the "service technicians acknowledged" the "jerking and rough or delayed shifting at low speeds" during a test drive.  SAC ¶ 79.  Pina's allegations, although slightly different, also suffice.  Pina brought his vehicle into the dealership four times.  On one of those visits, the dealership conducted a test drive and "refused to make note of [Pina's] complaints regarding the "delayed acceleration, hesitation, and hard jerking." *Id.* ¶ 90.  Honda's citations to *Clark II* and *Cadena v. Am. Honda Motor Co., Inc.*, 2018 WL 8130613, at *7 (C.D. Cal. Nov. 14, 2018), are unpersuasive because in those cases the dealers did not experience the problems of which the plaintiffs complained.  *See Clark II*, 2021 WL 4260232, at *3 (dealership "could not identify the issues during a single presentation despite doing tests in some cases"); *Cadena*, 2018 WL 8130613, at *7 (dealership "could not duplicate the alleged issue").  Plaintiffs' allegations support a plausible inference of a refusal to repair.

Accordingly, Honda's motion to dismiss Boatwright's breach of express warranty claim is GRANTED WITHOUT LEAVE TO AMEND.  *Accord Clark II*, 2021 WL 4260232, at *4 (dismissing express warranty claims without leave to amend where plaintiffs were provided a chance to amend to add additional allegations about repair presentations and refusal to repair).  Honda's motion to dismiss Yong and Pina's breach of express warranty claims is DENIED.

**D.    Consumer Protection Claims**

Plaintiffs assert four claims under the consumer protection statutes in Florida, Ohio, Texas, and California.  *See* SAC ¶¶ 168–176 (Florida Deceptive and Unfair Trade Practices Act); ¶¶ 195– 215 (Ohio Consumer Sales Practices Act); ¶¶ 282–294 (Texas Deceptive Trade Practices-Consumer Protection Act); ¶¶ 341–355 (California Consumer Legal Remedies Act).  These claims are based on Honda's alleged fraud by omission.  A claim for fraud by omission requires that:

> (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would have acted otherwise

if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage.

*Browning*, 549 F. Supp. 3d at 1012 (citing *Clark I*, 528 F. Supp. 3d at 1122).

Honda moves to dismiss these claims on several grounds.  One of those arguments is specific to the Ohio claim and the others apply to all of the consumer protection claims.  *See* MTD at 14–23.

### i.    Ohio – Claim 3

The Court first addresses Honda's argument that is specific to the Ohio consumer protection claim.  Honda argues that the Ohio claim is untimely because the Ohio statute has a strict two-year statute of limitations.  MTD at 23.  Because the Pappases bought their Odyssey more than two years before filing suit, the claim is time-barred, Honda says.  *Id.*  Plaintiffs respond that the Ohio statute is triggered by the occurrence of a violation, not the date of a "consumer transaction" as defined under the statute.  Opp. at 24–25.  The Court agrees with Honda.

The Ohio Consumer Protection Act has a two-year statute of limitations.  *See* Ohio Rev. Code Ann. 1345.10(C).  This statute of limitations is "absolute" and is not subject to tolling or the discovery rule.  *See Gerstle v. Am. Honda Motor Co., Inc.*, 2017 WL 2797810, at *10 (N.D. Cal. Jun. 28, 2017) (citing *Zaremba v. Marvin Lumber & Cedar Co.*, 458 F. Supp. 2d 545, 552 (N.D. Ohio 2006).  The Pappases allege that they purchased their vehicle on March 6, 2018, *see* SAC ¶ 38, but this lawsuit was not filed until August 5, 2020, more than two years later.  The claim is thus time-barred.

Plaintiffs argue that the Ohio statute is "triggered by the occurrence of a violation, not the date of sale or purchase" of the good at issue, and so post-sale deceptive conduct can suffice.  *See* Opp. at 24.  They rely on language in the statute that prohibits deceptive conduct "in connection with a consumer transaction," and argue that the July 2019 visit the Pappases made to the dealer in which the dealership claimed that the vehicle was "OPERATING AS DESIGNED" was "in connection with" the March 2018 purchase of their vehicle.  *See id.* at 25 (citing SAC ¶ 43).  As an initial matter, Plaintiffs are claiming a violation of the Ohio statute based on deception at the time

of purchase, not at the time of repairs.  *See, e.g.*, SAC ¶ 208 (Pappases "would not have purchased or leased the vehicles" had they known about alleged defects).  But even so, Plaintiffs provide no Ohio case authority for the proposition that a repair visit over one year after the transaction at issue—the Pappases purchase of their Odyssey—is fairly characterized as "in connection" with that transaction.[5]  The Court declines to stretch the Ohio statute and the "absolute" statute of limitations without such authority.  The claim is thus barred by the statute of limitations, and Honda's motion to dismiss the claim is GRANTED WITHOUT LEAVE TO AMEND.

### ii.    Rule 9(b)

Honda's other arguments against the consumer protection claims come under the umbrella of Rule 9(b).  When a party pleads a cause of action for fraud or mistake, it is subject to the heightened pleading requirements of Rule 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Id.*  Rule 9(b) demands that the circumstances constituting any alleged fraud be plead "specific[ally] enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citation omitted).  Claims of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct alleged.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), *superseded by statute on other grounds* (internal citation omitted).

The parties agree that all of the consumer protection claims are subject to Rule 9(b).  *See* Opp. at 13 (contending that "[t]he allegations in Plaintiffs' SAC satisfy Rule 9(b)").  With that legal standard in mind, the Court proceeds to analyze Honda's arguments.

### a.   American Honda Motor Co. and Honda Motor Co.

Honda first attacks the particularity of Plaintiffs' allegations concerning the distinct

---

[5] *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *26 (D.N.J. May 8, 2017), cited by Plaintiffs, did not consider whether a later repair visit is "in connection with" the purchase transaction of the vehicle.

1  defendants here.  Plaintiffs have not, Honda says, responded to the Court's admonishment that

2  they "must distinguish what action [American Honda Motor Co. ("AHM")] took from what action

3  [Honda Motor Co. ("HMC")] took in the alleged fraud."  *Browning*, 549 F. Supp. 3d at 1012.

4  Honda says that the SAC only alleges the distinct responsibilities of the corporate entities without

5  delineating their roles in the specific fraud alleged in the complaint.  *See* MTD at 15–17.  Plaintiffs

6  agree that they provided additional detail about the corporate roles and functions of the two

7  entities, but say that they added more allegations about AHM's role as the "primary source of

8  information to consumers regarding the class vehicles."  *See* Opp. at 14–15.

9        The Court finds that Plaintiffs have alleged sufficient facts about each defendant for

10  purposes of Rule 9(b).  Plaintiffs have further specified the different roles of each of AHM and

11  HMC.  AHM was responsible for "marketing, distributing, servicing, and selling" Honda

12  automobiles in the relevant states; "distribut[ing] all technical materials drafted by [HMC];"

13  "oversee[ing] certain automobile product design and market research functions;" and "draft[ing]

14  . . . the [window] stickers" on Honda vehicles.  SAC ¶ 97.  AHM is alleged to be the "primary

15  source of information to consumers" about the Odyssey vehicles; through its website, it "broadly

16  disseminates information regarding the characteristics, benefits, and quality" of the Odyssey

17  vehicles.  *Id.* ¶ 111.  It also controls the information that Honda dealerships provide to the public.

18  *Id.* ¶ 112; *see also id.* ¶¶ 114–119.  AHM also circulates technical service bulletins to its

19  dealerships.  *Id.* ¶ 113.  HMC, in contrast, "designs, manufactures, and distributes" both vehicles

20  and parts for Honda vehicles.  SAC ¶ 98.  "[T]he design and manufacture of Class Vehicles,

21  including their component systems and any repairs or service necessary, is the primary focus of

22  HMC."  *Id.*  HMC also "drafts all technical materials to be distributed by [AHM]" and has

23  "substantial control over the business operations of [AHM], particularly with regards to the

24  communications [AHM] distributes on HMC's behalf."  *Id.*  The Court finds that these allegations

25  are sufficient at this stage of the case.  *See Friedman v. Zimmer*, 2015 WL 6164787, at *2 (C.D.

26  Cal. Jul. 10, 2015) ("Before discovery, Plaintiff has no reasonable means of determining the roles

27  that the [] Defendants played . . . .");  *see also Kearney v. Bayerische Motoren Werke*

28  *Aktiengesellschaft*, 2018 WL 4144683, at *9 (D.N.J. Aug. 29, 2018) ("Plaintiffs have therefore

United States District Court
Northern District of California

20

1    achieved some level of differentiation among Defendants by specifying their corporate

2    relationship, location, and respective responsibilities.").[6]

3                        *b.   Specificity of Omissions Allegations*

4           Honda next challenges the allegations supporting the first element of a fraud by omission

5    claim—whether Honda "concealed or suppressed a material fact."  *See* MTD at 17–22.  Honda

6    says that Plaintiffs have failed to describe what information was not disclosed and where the

7    information should have been made available to Plaintiffs.  *Id.*  Plaintiffs counter by pointing to

8    allegations they say sustain their claims at this stage of the case.  *See* Opp. at 15–23.

9           The proper legal standard applicable to the specificity of the omissions was the subject of

10   much discussion at the hearing on this motion.  Honda urges that the Court apply the standard

11   from *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), as articulated in *Sims v. Kia

12   Motors Am., Inc.*, 2014 WL 12558251 (C.D. Cal. Oct. 8, 2014).  This requires Plaintiffs to

13   "'describe the content of the omission and where the omitted information should or could have

14   been revealed.'"  *Sims*, 2014 WL 12558251, at *4 (C.D. Cal. Oct. 8, 2014) (quoting *Marolda v.

15   Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)); *see also Heber v. Toyota Motor

16   Sales U.S.A., Inc.*, 2018 WL 3104612, at *6 (C.D. Cal. Jun. 11, 2018), *aff'd in relevant part*, 823

17   F. App'x 512, 515 (9th Cir. 2020) (insufficient to "merely state in conclusory fashion that Toyota

18   fraudulently failed to disclose the defect").  In Honda's view, this standard also requires Plaintiffs

19   to plead more than just that Honda should have disclosed the defect.  MTD at 17–18.  Plaintiffs

20   must plead the exact words of what Honda should have disclosed and a precise location where

21   _____

22   [6] The decisions Honda cites in reply are distinguishable because the operative complaints in those

23   cases had far less detail.  For example, in *Zakikhan v. Hyundai Motor Co.*, 2021 WL 4805454, at

24   *8 (C.D. Cal. Jun. 28, 2021), the operative complaint referred to the two Hyundai entities as

25   "Hyundai" and the two Kia entities as "Kia" throughout the pleading.  *See also Drake v. Toyota

26   Motor Corp.*, 2020 WL 7040125, at *10–11 (C.D. Cal. Nov. 23, 2020) ("Plaintiffs almost

27   exclusively refer to Defendants collectively as 'Toyota.'").  Plaintiffs do not do so here, describing

28   the responsibilities of AHM and HMC specifically and separately.

they should have disclosed it, Honda says.  *Id.*

Plaintiffs disagree.  While they do not appear to contest that *Kearns* provides the general Rule 9(b) standard, they point the Court to cases stating that a fraud by omission claim "can succeed without the same level of specificity required by a normal fraud claim" because "requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission."  Opp. at 13 (quoting *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010)).  Plaintiffs also provided the Court with multiple cases holding that plaintiffs need not identify with precise words or point to specific advertisements in which the alleged omissions should have appeared in vehicle defect cases.  *See* 2/3 Hrg. Tr. at 21:14–22:10 (citing *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015), and *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840 (N.D. Cal. 2018) ("*Sloan II*"), among other cases).

Defendants are correct that *Kearns*—itself a case regarding representations made in the course of selling vehicles—provides the general governing standard for Rule 9(b) claims.  *Kearns*, for example, faulted the plaintiff for not specifying what materials he was exposed to or relied upon for his purchase, who made certain representations to him about the subject vehicles, and when he was exposed to certain representations.  *Kearns*, 567 F.3d at 1126.  But district court decisions post-*Kearns* provide important examples of application of that doctrine, particularly regarding omissions claims in vehicle defect cases like this one.  *Kearns* itself is not the end of the inquiry.

Although the Court cited *Sims* and *Marolda* for a general proposition of law in its previous order, *see Browning*, 549 F. Supp. 3d at 1012, on further review, the Court finds the analysis in *Sloan II* to be instructive as to the applicable legal standard here.  In *Sloan II*, the plaintiffs alleged that the Gen IV Vortec 5300 engine—installed in multiple vehicle models manufactured by General Motors—consumed excess amounts of oil, resulting in engine damage that presented a risk of sudden engine shutdowns or fires.  *Sloan II*, 287 F. Supp. 3d at 851.  Plaintiffs identified five defects that contributed to the "Oil Consumption Defect."  *Id.*  Among other claims, Plaintiffs

asserted fraud and consumer protection claims under multiple states' laws.  *Id.* at 864–65.  GM argued that the plaintiffs' pleading did not satisfy Rule 9(b) because it did not identify particular advertisements or provide specific wording of what GM should have disclosed, citing the *Marolda* language that Honda has cited in this case.  *Id.* at 877–78.  Judge Chen rejected these arguments.  "[A] plaintiff in alleging an omission-based fraud claim will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation action."  *Id.* at 877 (quoting *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014)).  Instead, plaintiffs only needed to allege that they "would have received the information in some way had [d]efendant exercised reasonable care."  *Id.* at 877–78 (citing *Daniel*, 806 F.3d at 1226).  Plaintiffs' pleading in *Sloan II* was sufficient, Judge Chen held, because it identified the "who" (GM), the "what" should have been disclosed (the Oil Consumption Defect), the "when" (prior to the sale of class vehicles), and the "where" ("the channels of information through which Ford sold Class Vehicles").[7]  *Id.*

Judge Chen specifically rejected GM's argument that *Marolda* provided the proper standard.  *Marolda* was distinguishable, the court held, because the plaintiff had said that one particular advertisement was misleading but "failed to include any identifying information about that advertisement or its purported omissions in the complaint."  *Id.*  Judge Chen noted that "[v]irtually every court to consider of *Marolda*" in vehicle defect cases asserting omission claims "has rejected its applicability" because it concerned a single specific advertisement.  *Id.* (citing *MacDonald*, 37 F. Supp. 3d at 1096; *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *12 (N.D. Cal. 2015); and *Velasco v. Chrysler Grp. LLC*, 2014 WL 4187796, at *3 (C.D. Cal. Aug. 22, 2014)).  Furthermore, both *Sims* and *Marolda* pre-date the Ninth Circuit's opinion in *Daniel*, which provided further clarification that the focus in omissions claims is "on the defendant's

---

[7] A subset of the plaintiffs in *Sloan II* had not purchased their vehicles through dealerships and failed to allege that they would have received information about the Oil Consumption Defect (had it been disclosed).  *Id.*  That issue is not present here because each Plaintiff has alleged that they purchased their vehicle through a Honda dealership.

1   opportunity to disseminate the information to the plaintiff[s], *not* whether the plaintiff[s] ha[ve] in

2   fact viewed any advertisements." *See Sloan II*, 287 F. Supp. 3d at 878 (citing *Daniel*, 806 F.3d at

3   1226).

4       The Court agrees with multiple courts in this district that have applied the legal framework

5   outlined in *Sloan II* to fraudulent omission claims in vehicle defect cases. *See In re Toyota RAV4*

6   *Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1097 (N.D. Cal. 2021); *Baranco v. Ford Motor*

7   *Co.*, 294 F. Supp. 3d 950, 969 (N.D. Cal. 2018).  Looking to Plaintiffs' amended pleading, the

8   Court finds that it now meets that standard.  Plaintiffs have sufficiently identified the "what" and

9   "where" of the purportedly omitted information.  On the "what," the Court has already found that

10  Plaintiffs have now adequately pled the alleged defects and symptoms that they say should have

11  been disclosed to them at the time of purchase.  *See supra* Section III.A; *see also* SAC ¶¶ 110

12  (Honda "failed to disclose that the Class Vehicles' [Transmission] contained defects that caused

13  the [T]ransmissions to exhibit rough, delayed, or sudden shifting or failure to shift; grinding or

14  other loud noises during shifting; harsh engagement of gears; sudden or harsh

15  accelerations/decelerations; and sudden loss of power").  On the "where," Plaintiffs have

16  identified a number of outlets through which Honda releases information in which it could have

17  disclosed the defects.  *See* SAC ¶ 155 (identifying marketing, "such as press releases, public

18  comments, commercials, and vehicle brochures," window stickers, and through personnel at

19  authorized dealerships[8]).  Plaintiffs have alleged that they viewed these materials and would have

20  been exposed to any disclosure in them prior to purchase.  *See, e.g.*, SAC ¶ 26 (Browning

21  _____

22  [8] The Court need not resolve whether an opportunity for disclosure through personnel at

23  dealerships is relevant under each state's law because the other sources of information Plaintiffs

24  allege would be sufficient to sustain their claims.  *Compare* MTD at 18 (citing cases about general

25  agency principles between parent companies and dealerships), *with Sloan II*, 287 F. Supp. 3d at

26  875 (finding adequate allegations to infer an agency relationship between parent company and

27  dealership such that interactions with dealerships were an opportunity through which omitted

28  information could have been disclosed by parent company).

United States District Court
Northern District of California

1     researched the Odyssey online at both the dealership and manufacturer's websites, reviewed the

2     window sticker, and spoke with a sales representative at the dealer during a test drive); *id.* ¶¶ 40,

3     51, 63, 76, 87 (similar allegations for the other Plaintiffs).  This information is more than

4     sufficient to plausibly allege that Plaintiffs would have "had the opportunity to receive" the

5     omitted information.  *See Sloan II*, 287 F. Supp. 3d at 874–75 (citing *Daniel*, 806 F.3d at 1225–

6     26).

7            Plaintiffs have thus satisfied Rule 9(b) with respect to specificity of their omissions

8     allegations.

9                         *c.   Duty to Disclose – Exclusive Knowledge and Active Concealment*

10           Honda next presents two arguments that go to whether Honda had a duty to disclose the

11    defects to Plaintiffs.  A duty to disclose may arise "(1) when the defendant is in a fiduciary

12    relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts

13    not known to the plaintiff; (3) when the defendant actively conceals a material fact from the

14    plaintiff; and (4) when the defendant makes partial representations but also suppresses some

15    material fact."  *Sloan II*, 287 F. Supp. 3d at 865 (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th

16    326, 337 (1997)).  No party alleges that the first circumstance arises, but Honda contests that any

17    of the other three theories apply.  *See* MTD at 19–22 (exclusive knowledge), 22 (active

18    concealment), 23 (partial representation).  Plaintiffs argue that theories two and three—exclusive

19    knowledge and active concealment—are adequately pled.  Opp. at 17–23 (exclusive pre-sale

20    knowledge), 23–24 (active concealment); *see also id.* at 24 n.2 (conceding that no partial

21    representation theory is alleged).  The Court will accordingly evaluate whether the SAC pleads

22    facts sufficient to find a duty to disclose under exclusive knowledge or active concealment

23    theories of a duty to disclose.[9]

24    _____

25    [9] The parties do not frame the active concealment and partial representation inquiries as part of

26    whether Honda had a duty to disclose, but the cases they cite do.  *See, e.g.*, *Herron v. Best Buy*,

27    924 F. Supp. 2d 1161, 1176–77 (E.D. Cal. 2013) (case cited by Honda discussing active

28    concealment and partial representation as possible grounds for duty to disclose); *Victorino v. FCA*

United States District Court
Northern District of California

1                                       1.   Knowledge of Material Facts

2         Honda first argues that Plaintiffs have not pled facts to support a finding that it had

3 "exclusive knowledge" of the alleged defects. *See* MTD at 19–22. Plaintiffs say that they have

4 amended their complaint to address the deficiencies the Court identified in its order dismissing the

5 First Amended Complaint. Opp. at 17–23.

6         In its order dismissing the First Amended Complaint, the Court held that Plaintiffs had not

7 pled Honda's pre-sale knowledge of the defects. *Browning*, 549 F. Supp. 3d at 1012–13.

8 "Because Plaintiffs have failed to adequately plead a defect, they have necessarily failed to plead

9 exactly what [Honda] had knowledge of concerning the Class Vehicle." *Id.* The Court further

10 noted that Plaintiffs had not alleged that Honda was aware of the online complaints they alleged,

11 and that post-sale complaints to NHTSA could not support pre-sale knowledge. *Id.* (citing *In re*

12 *Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 908–09 (N.D. Cal. 2018)).

13         Plaintiffs allege five possible sources of Honda's exclusive knowledge[10] of the defects:

14 testing of both predecessor vehicles and pre-release Class Vehicles; consumer complaints made to

15 Honda and posted online; complaints filed with the NHTSA; technical services bulletins

16 ("TSBs"); and dealership repair orders. SAC ¶¶ 121–122. The Court evaluates each piece of

17 evidence in turn.

18         <u>Pre-Sale Testing</u>. The Court finds that Plaintiffs' allegations of pre-sale testing do not

19 _____

20 *US LLC*, 2016 WL 6441518, at *7 (S.D. Cal. Nov. 1, 2016) (cased cited by Plaintiffs doing the

21 same). The Court will accordingly analyze those arguments under a duty to disclose.

22 [10] Plaintiffs are correct that some courts "have not defined 'exclusive' literally," and have instead

23 found a duty to disclose "if the defendant had 'superior' knowledge of a defect that was not

24 readily apparent and there is no or only . . . limited publicly available information about the

25 defect." *Mosqueda v. Am. Honda Motor Co.*, 443 F. Supp. 3d 1115, 1133 (C.D. Cal. Mar. 6,

26 2020) (quoting *Salas v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 7486600, at *10 (C.D. Cal.

27 Sep. 27, 2016)). The Court's conclusions in this section are not affected by the level of

28 exclusivity of Honda's knowledge.

United States District Court
Northern District of California

plausibly plead exclusive knowledge.  Plaintiffs' allegations about the knowledge Honda gained

from the testing are improperly couched; Plaintiffs allege that Honda "knew or should have

known" about the defects through data from other vehicles and pre-release testing that it

performed on the Odyssey vehicles at issue here.  SAC ¶ 123 ("[F]rom testing at these facilities,

[Honda] knew or should have known that the subject Transmissions were defective . . . .").  As

Honda argues, because Plaintiff's theory is grounded in fraud, "should have known" is not

sufficient for liability.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012)

(plaintiff must allege that defendant "was aware" of a defect at the time of sale for exclusive

knowledge).  Plaintiffs must allege that Honda *knew* of the specific defects asserted in this case

through pre-sale testing or experiences with other vehicles.

Consumer Complaints.  Plaintiffs' allegations of consumer complaints are similarly

insufficient.  Plaintiffs only allege that Honda "should have learned" of the defects "from the sheer

number of reports received from dealerships and from customer complaints directly to Honda" and

from online postings.  SAC ¶¶ 124–125; *see also id.* ¶ 147 (listing some online complaints).  For

the complaints made directly to Honda, Plaintiffs have not pled the content of the complaints and

what exactly Honda was told prior to the sales of vehicles to the Plaintiffs.  *See Cadena*, 2018 WL

8130613, at *11 (allegations regarding complaints to dealer insufficient where complaints did not

"indicate with any level of specificity what was actually reported to Honda and how").  For the

online complaints, as with their pre-sale testing allegations, Plaintiffs have not pled that Honda

actually became aware of these complaints and the relevant defects prior to the sales of the

vehicles to Plaintiffs.  These allegations thus cannot show exclusive knowledge.

NHTSA Complaints.  As currently pled, the allegations regarding complaints to NHTSA

about the Odyssey are also insufficient.  Plaintiffs plead the same NHTSA complaints about the

Odyssey that they did in the First Amended Complaint.  *Compare* ECF No. 25 ("FAC") ¶ 136,

*with* SAC ¶ 146.  The Court already found that these complaints were insufficient because they

largely post-date each Plaintiff's purchase of his or her vehicle.  *Browning*, 549 F. Supp. 3d at

1012–13.  No alleged NHTSA complaint predates the Pappases' March 2018 purchase of their

vehicle, and thirteen of the nineteen alleged complaints post-date each of the Plaintiff's respective

vehicle purchases.  Plaintiffs urge the Court to "infer" that additional complaints reached Honda throughout the class period and that their "sampling" of complaints are sufficient to establish pre-sale knowledge.  *See* Opp. at 22 (citing *Rivera v. Ford Motor Co.*, 2017 WL 3485815, at *9 (E.D. Mich. Aug. 15, 2017)).  The Court declines to draw that inference here, especially given that the vast majority of the complaints Plaintiffs plead post-date all the Plaintiffs' purchases, and no complaint pre-dates the earliest vehicle purchase.

Repair Requests.  Plaintiff makes a reference to "repair requests made at dealerships," SAC ¶ 124, but provides no allegations regarding which specific repairs would establish Honda's knowledge of the defects prior to the sales of the vehicles to Plaintiffs.  Without such allegations, this cannot form the basis for pre-sale knowledge.

Technical Service Bulletins.  Finally, Plaintiffs provide allegations about TSBs issued about the Honda Odyssey and other vehicles with the Transmission.  Plaintiffs offer allegations about TSBs that purportedly go to both the Sealing Gasket Defect and the Software Calibration Defect.  As to the Sealing Gasket Defect, Plaintiffs allege that Honda first issued TSBs related to a sealing gasket issue for this specific Transmission in 2015 for other vehicles.  SAC ¶¶ 127–128. Plaintiffs allege that the TSB was extended to the 2018 and 2019 Odyssey vehicles in September 2017 and September 2018, right as those vehicles went on sale.  *Id.* ¶ 129.  The Court finds that this TSB makes it plausible that Honda had pre-sale knowledge of the Sealing Gasket Defect during assembly of the Transmission from its experience with other vehicles and the extension of those TSBs to the Odyssey vehicles.  *See Hardt v. Chrysler Grp. LLC*, 2015 WL 12683963, at *5– 6 (C.D. Cal. Mar. 16, 2015) (TSBs issued for other vehicles that had same transmission made it plausible that manufacturer had pre-sale knowledge of defect in same transmission in different vehicle).  The TSB describes the same defect Plaintiffs allege—"[d]uring assembly, the transmission cover sealing gasket was torn."  SAC ¶ 127.  While the Court has held that no Plaintiff has pled that they have standing to assert claims on this defect, if a Plaintiff can allege facts sufficient to support standing, these TSBs would plausibly plead pre-sale knowledge of the defect.

In contrast, Plaintiffs' allegations about TSBs that purportedly relate to the Software

Calibration Defect are not adequately pled at present.  As with the Sealing Gasket Defect, Plaintiffs allege that Honda issued TSBs starting in August 2015 regarding the Software Calibration Defect in other vehicles and later extended it to the Odyssey vehicles.  SAC ¶¶ 132–142.  But as the Court noted in its order dismissing the First Amended Complaint, Plaintiffs' allegations regarding these TSBs "address different malfunctions or components related to the Transmission," and Plaintiffs have not specifically connected what they describe to the Software Calibration Defect.  *Browning*, 2021 WL 322007, at *7.  The TSBs purportedly related to the Software Calibration Defect describe a transmission stuck in 4th gear, SAC ¶ 132; a vehicle independently shifting into neutral, *id.* ¶ 133; malfunctioning indicator lights for the gear position indicator, *id.* ¶ 134; "loss-of-communication" issues with the Transmission, *id.* ¶ 135; slow downshifting at low speeds and surging while breaking, *id.* ¶ 136; the Transmission "stay[ing] in gear too long," *id.* ¶ 137; "juddering" at speeds between 20 and 60 mph due to "deteriorated transmission fluid," *id.* ¶ 138; misinterpretation of sensor inputs by a control module, *id.* ¶¶ 139–140; incorrect calculation of battery current, *id.* ¶ 141; and harsh or jerky upshifting, *id.* ¶ 142.  In most of these cases, Honda issued software updates to fix the issue.  *Id.* ¶¶ 132–142.  While at least some of these TSBs describe symptoms that some Plaintiffs have experienced, Plaintiffs have failed to connect these TSBs to the *specific* defect asserted here—that during manufacturing, Honda fails to properly calibrate the software that controls the Transmission Control Module and Powertrain Control Module.  *See Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) ("*Sloan I*") (inadequate allegations of knowledge where TSBs "only discussed general problems with the windows and did not explicitly mention the alleged window regulator defect").  Plaintiffs must connect the issues described in the TSBs—*i.e.*, incorrect battery current, malfunctioning indicator lights, independent shifting, or "loss-of-communication" issues—to Honda's failure to properly calibrate the control modules interacting with the Transmission during manufacturing.  As currently pled, Plaintiffs do not do so.

### 2.   Active Concealment

Honda also argues that Plaintiffs have failed to plead an active concealment theory of Honda's duty to disclose.  MTD at 22.  Plaintiffs respond by defending the sufficiency of their

1    allegations of Honda's affirmative acts to prevent them from learning of the defects.  Opp. at 23.

2         The Court finds that Plaintiff's allegations are insufficient to plausibly plead active

3    concealment.  "Mere nondisclosure does not constitute active concealment."  *Herron v. Best Buy*

4    *Co. Inc.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013).  To plead active concealment, Plaintiffs

5    must point to specific affirmative acts Honda took "in hiding, concealing or covering up the

6    matters complained of."  *Id.*; *see also Szep v. Gen. Motors LLC*, 491 F. Supp. 3d 280, 298 (N.D.

7    Ohio 2020) ("[C]oncealment by mere silence is not enough.  There must be some trick or

8    contrivance intended to exclude suspicion and prevent injury.").

9         Plaintiffs have not provided factual allegations to support their conclusory statements that

10   Honda "actively concealed and failed to disclose the Defects."  SAC ¶ 152.  Plaintiffs argue that

11   they alleged that Honda "failed to disclose the defects" despite receiving "numerous complaints"

12   about them and that Honda "performed ineffective repairs" on Plaintiffs' vehicles.  Opp. at 23.

13   Neither of these allegations suffices.  The first argument rests on mere nondisclosure of the

14   complaints Honda received, which is insufficient.  *Herron*, 924 F. Supp. 2d at 1176.  Second, even

15   if Plaintiffs' allegations could be fairly read to claim that Honda "performed ineffective repairs"

16   (although Plaintiffs allege that some dealerships did not perform repairs because they found no

17   issues with the vehicles, *see* SAC ¶¶ 30–31, 66), these acts alone do not suffice for active

18   concealment.  The repairs occurred after Plaintiffs purchased their vehicles, and courts have found

19   "failure to repair" allegations insufficient to support active concealment unless paired with other

20   allegations.  *See Blissard v. FCA US LLC*, 2018 WL 6177295, at *14 (C.D. Cal. Nov. 9, 2018)

21   (active concealment not plausibly pled where plaintiffs alleged that repair shops failed to remedy

22   defect); *Kahn v. FCA US LLC*, 2019 WL 3955386, at *5 (C.D. Cal. Aug. 2, 2019) (active

23   concealment not plausibly pled where plaintiffs alleged that repairs "masked" the alleged defect);

24   *compare, e.g.*, *In re Toyota*, 534 F. Supp. 2d at 1192 (active concealment plausibly pled where

25   Toyota also allegedly "hid defect from regulators and consumers" by withholding information

26   from NHTSA, excluded relevant categories of incidents when regulatory investigations were

27   underway, and misled the public as to the true reason for a recall of the subject vehicles).

28   Plaintiffs accordingly do not plausibly plead active concealment.

1

*     *     *

2     While Plaintiffs have not provided plausible allegations establishing Honda's pre-sale

3   knowledge or Honda's active concealment, the Court finds that leave to amend is warranted.

4   Plaintiffs may be able to address some of these defects with amendment, and so the Court cannot

5   say that leave to amend would be futile.  Given that this is the Court's first detailed analysis of the

6   various bases Plaintiffs assert for Honda's duty to disclose, Plaintiffs will be given leave to amend.

7     Honda's motion to dismiss Plaintiffs' consumer protection claims is GRANTED WITH

8   LEAVE TO AMEND, with the exception of the motion to dismiss the claim under Ohio's

9   consumer protection statute, which is GRANTED WITHOUT LEAVE TO AMEND.

10     **E.     Fraud Claim and the Ohio and Michigan Plaintiffs and Subclasses**

11     The Court finally addresses two other arguments Honda makes as to specific claims and

12   Plaintiffs.  First, Plaintiffs for the first time in their Second Amended Complaint assert a common

13   law claim for "fraud by omission and/or fraudulent concealment."  SAC ¶¶ 374–386.  Honda

14   argues that this claim must be dismissed because the Court's previous order restricted amendments

15   to "the existing claims of the current parties."  MTD at 23 (quoting *Browning*, 549 F. Supp. 3d at

16   1014).  Plaintiffs do not respond to this argument.  While Honda also makes substantive

17   arguments against the fraud claim, the Court need not reach them because it agrees that adding the

18   fraud claim exceeded the scope of permissible amendment as specified in the previous order.

19   Accordingly, the common law fraud claim is DISMISSED as improperly added to the Second

20   Amended Complaint.

21     Second, Honda argues that because Michigan plaintiffs Kali and Eric Wescott no longer

22   assert claims, they should be dismissed from the case and the Michigan subclass stricken.  MTD at

23   25.  Plaintiffs also do not respond to this argument.  The Court agrees with Honda that both

24   Wescotts should be dismissed and the Michigan subclass stricken because the operative complaint

25   does not assert any claims on their behalf.  The Court previously dismissed with prejudice their

26   claim for violation of the Michigan Consumer Protection Act.  *Browning*, 549 F. Supp. 3d at 1013.

27   The Court also dismissed with leave to amend their claim for breach of express and implied

28   warranties under Michigan law for failure to allege pre-suit notice, *id.* at *10 & n.1, but the

Wescotts have not reasserted that claim.  With no claims left, the Wescotts are DISMISSED, and without Michigan residents left to represent the Michigan subclass, that subclass is STRICKEN. Because this order also dismisses the only two claims asserted by Divina and Brian Pappas, *see supra* Sections III.B.iii, III.D.i, they are also DISMISSED from this case, and the Ohio subclass they sought to represent is STRICKEN.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Honda's motion to dismiss is:

- DENIED, as to Honda's argument that the Software Calibration Defect is not adequately pled;

- GRANTED WITH LEAVE TO AMEND, as to Honda's argument that the Sealing Gasket Defect is not adequately pled, with leave to amend limited to alleging that the vehicles of one or more Plaintiffs exhibited the Sealing Gasket Defect;

- GRANTED WITHOUT LEAVE TO AMEND, as to the second claim for breach of implied warranty under Florida law;

- GRANTED WITHOUT LEAVE TO AMEND, as to the fourth claim for breach of implied warranty under Ohio law;

- DENIED, as to the sixth claim for breach of implied warranty under South Carolina law;

- GRANTED WITHOUT LEAVE TO AMEND, as to the ninth claim for breach of implied warranty under Texas law;

- DENIED, as to the eleventh cause of action for breach of implied warranty under the Song-Beverly Consumer Warranty Act;

- GRANTED WITHOUT LEAVE TO AMEND, as to the fifth claim for breach of express warranty under South Carolina law;

- DENIED, as to the eighth claim for breach of express warranty under Texas law;

- DENIED, as to the twelfth claim for breach of express warranty under California law;

- GRANTED WITH LEAVE TO AMEND, as to the first claim for violation of the Florida Deceptive and Unfair Trade Practices Act;

- GRANTED WITHOUT LEAVE TO AMEND, as to the third claim for violation of Ohio

1    Consumer Sales Practices Act;

2    • GRANTED WITH LEAVE TO AMEND, as to seventh claim for violation of the Texas

3    Deceptive Trade Practices-Consumer Protection Act;

4    • GRANTED WITH LEAVE TO AMEND, as to the tenth claim for violation of the

5    California Consumer Legal Remedies Act; and

6    • GRANTED WITHOUT LEAVE TO AMEND, as to the thirteenth claim for fraud by

7    omission and/or fraudulent concealment.

8    Additionally, because the Court has dismissed all of their claims, Plaintiffs Divina Pappas, Brian

9    Pappas, Kali Wescott, and Eric Wescott are DISMISSED from this case.  The Michigan and Ohio

10   subclasses they purported to represent are STRICKEN.

11       Plaintiffs SHALL file an amended complaint within 45 days of this order, .  Failure to

12   meet the deadline to file an amended complaint or failure to cure the deficiencies identified on the

13   record or in this order will result in a dismissal of the deficient claims with prejudice.  Plaintiffs'

14   amendments shall not exceed the scope allowed by the Court in this order.  In the event that a

15   further motion to dismiss is filed, it SHALL be limited to the claims amended pursuant to this

16   order and briefing SHALL NOT exceed 15–15–7 pages.

17

18   Dated:  March 18, 2022

19

20   BETH LABSON FREEMAN
     United States District Judge

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

33